# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| HARRIS CORPORATION,  )  <br> ) <br> Plaintiff,  ) <br> ) <br> v.  ) <br> ) <br> HUAWEI DEVICE USA, INC., HUAWEI  ) <br> DEVICE CO., LTD., HUAWEI  ) <br> TECHNOLOGIES USA INC., HUAWEI  ) <br> TECHNOLOGIES CO. LTD., AND  ) <br> HUAWEI DEVICE (SHENZHEN) CO.,  ) <br> LTD.  ) <br> ) <br> Defendants.  ) | CIVIL ACTION NO. 2:18-cv-00439-JRG <br><br> **JURY TRIAL DEMANDED** |

## **PLAINTIFF HARRIS CORPORATION'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1

II. HUAWEI APPLIES INCORRECT LEGAL ANALYSIS ................................................... 2

    A. Huawei ignores the technical advances claimed in the patents ............................. 2

    B. Huawei has not met its burden to show any claim is representative ..................... 4

III. THE ASSERTED PATENTS ARE PATENT ELIGIBLE ................................................... 5

    A. The '678 and '690 Patents ...................................................................................... 5

    B. The '227 Patent ...................................................................................................... 7

    C. The '986 Patent ...................................................................................................... 9

    D. The '537 Patent .................................................................................................... 10

    E. The '426 Patent .................................................................................................... 11

    F. The '572 Patent .................................................................................................... 12

IV. CONCLUSION .................................................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018) ................................................................................................ 6

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ........................................................................................................ 4, 6, 7

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016) ................................................................................................ 8

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018) ................................................................................................ 7

*CXT Systems, Inc. v. Academy Ltd., D/B/A Academy Sports + Outdoors*,
    No. 2:18-cv-00171-RWS-RSP, 2019 WL 1375175 (E.D. Tex.
    March 27, 2019) ............................................................................................................... 4, 5, 8

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ................................................................................................ 4

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ................................................................................................ 1

*Finjan, Inc. v. Blue Coat Systems, Inc.*,
    879 F.3d 1299 (Fed. Cir. 2008) ......................................................................................... 1, 3, 4

*Huawei Technologies Co. Ltd. v. T-Mobile US, Inc.*,
    2017 WL 4118383 (E.D. Tex. Aug. 29, 2017) ......................................................... 2, 3, 4

*Intellectual Ventures I LLC v. T-Mobile USA, Inc.*,
    No. 2:17-CV-00577-JRG, 2018 WL 6584486 (E.D. Tex. Sept. 4,
    2018) ........................................................................................................................................ 4

*SimpleAir, Inc. v. Google, Inc.*,
    136 F. Supp. 3d 745 (E.D. Tex. 2015) .............................................................................. 1, 3, 7

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    No. 2017-2223, 2019 WL 1271160 (Fed. Cir. March 20, 2019) .......................... 1, 4, 6, 10

*Sycamore IP Holdings LLC v. AT&T Corp.*,
    294. F. Supp. 3d 620 (E.D. Tex. 2018) .............................................................................. 4, 10

*Trading Techs. Int'l, Inc. v. CQG, Inc.*,
    675 Fed. Appx. 1001 2017 (Fed. Cir. 2017) ............................................................................ 3

*Two-Way Media Ltd. v. Comcast Cable Commc'ns LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ....................................................................................... 10

Case 2:18-cv-00439-JRG   Document 48   Filed 04/05/19   Page 4 of 18 PageID #:  911

I.      INTRODUCTION

Harris Corporation asserted seven patents that claim specific technical solutions to specific technical problems in wireless networking.  The patented claims are patent eligible, because each is directed to "an improvement in computer network technology" or "a technological solution to a technological problem."  *See, e.g.*, *SRI Int'l, Inc. v. Cisco Sys., Inc.*, No. 2017-2223, 2019 WL 1271160, at *4 (Fed. Cir. March 20, 2019) (approving computer networking claims as not abstract); *see also* Opp. [Dkt. 40] at 9-10.  Harris carefully explained each such claimed advance in its Opposition, highlighting example claim language and specification passages that detail the technical problem as well as describe (and claim) technical solutions to it.  Opp. at 12-15, 17-19, 22-23, 26-27, 29-30, 31-33.  These facts establish the patentability of the claimed improvements— and as facts, are not subject to debate on this Motion on the pleadings.

Huawei fails to properly analyze the asserted patents.  "Instead of starting with the claimed improvement of the patent, Huawei over-simplifies the field it claims the patent is 'directed to' until that generalization encompasses some example cases finding ineligibility.  ***This is an error*** that courts, and Huawei, have singled out for criticism in the past."  Opp. at 11 (emphasis added).  Here, and throughout its Opposition, Harris disputes Huawei's over-simplified formulations of what the patents are directed to.  *See, e.g.*, *id.*  Huawei's inexplicable assertions to the contrary are wrong.

"Accordingly, the patents-in-suit here should be judged on their claimed advances rather than the broad conceptual categories suggested in the Motion."  Opp. at 9 (*citing Finjan, Inc. v. Blue Coat Systems, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2008); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016); *SimpleAir, Inc. v. Google, Inc.*, 136 F. Supp. 3d 745, 750-71 (E.D. Tex. 2015)).  "Each 'claimed advance as a whole' is 'directed to a particular technical

problem' of wireless communication networks at the time—and is not an abstract idea under step one." Opp. at 10 (*citing Huawei Technologies Co. Ltd. v. T-Mobile US, Inc.*, 2017 WL 4118383, at *3 (E.D. Tex. Aug. 29, 2017)).

At step two, Huawei compounds its error. Huawei focuses exclusively on claim elements it seeks to characterize as "conventional," raising numerous fact disputes in the process. Huawei then attempts to justify ignoring each of the other inventive concepts in the claims by sweeping them under the rug of its over-broad abstract concept allegations. *See* Reply at 1-2. But that improper approach collapses the step two analysis, rejecting legitimate inventive concepts merely because Huawei can allege they are linked to its over-simplified abstract concept for the claims.

Finally, Huawei completely failed to meet its burden to demonstrate representativeness, or to prove by clear and convincing evidence the ineligibility of any claim as an ordered combination. Huawei's Motion failed to address any claim as an ordered combination. *See* Opp. at 11. In Reply, Huawei improperly tries to shift the burden to Harris to rebut a showing that Huawei never made. Reply at 2. The Motion must be denied—if the Court reaches step two—for each of these reasons.

## II. HUAWEI APPLIES INCORRECT LEGAL ANALYSIS

Harris's Opposition describes in detail the proper section 101 analysis of claims under the Court's precedents—as well as the flaws in Huawei's contrary Motion argument. *See* Opp. at 3-12. Huawei's Reply does nothing to correct those flaws, and instead adds on still more.

### A. Huawei ignores the technical advances claimed in the patents

Huawei brought this Motion asserting that 362 patent claims were unpatentable on the pleadings. Huawei then dropped its Motion as to 235 of those claims the evening before Harris's

present Sur-reply was due. Notice [Dkt. 47] at fn. 1.[1] That Huawei seems to believe dropping hundreds of claims would not materially affect its Motion merely highlights the lack of substantive analysis of the asserted patents in Huawei's result-oriented briefs. But in the end, Huawei's analysis remains incorrect whether applied 362 claims, 127 asserted claims, or the few claims Huawei discusses substantively in its Motion.

Huawei ignores the actual claimed advances, and any claim elements that don't fit its mischaracterizations about the concepts that claims are allegedly directed to. This is error. *See, e.g.*, *Finjan*, 879 F.3d at 1303 ("first examine the [] patent's 'claimed advance' to determine whether the claims are directed to an abstract idea"); *Huawei*, 2017 WL 4118383, at *3 ("[Defendants'] characterization ignores the other limitations of the challenged claims"). Huawei's entire argument at both steps is premised on these over-broad formulations of the purported abstract concepts. As explained at length in Harris's Opposition, because those formulations fail to start from—or even consider—the claimed technical solutions of the patents, Huawei's Motion must fail. *See, e.g.*, Opp. at 7-11; *Trading Techs. Int'l, Inc. v. CQG, Inc.*, 675 Fed. Appx. 1001, 1004–05, 2017 (Fed. Cir. 2017) ("Precedent has recognized that specific technologic modifications to solve a problem or improve the functioning of a known system generally produce patent-eligible subject matter."); *SimpleAir*, 136 F. Supp. 3d at 750-51.

Huawei fails to distinguish these cases. *See* Reply at 2. Neither the Federal Circuit nor this Court have ever required patent claims to "effect" an "override'" in order to be patent eligible, as Defendants now suggest. Rather, the Federal Circuit in *DDR* found that the patent-eligible "claimed solution [was] necessarily rooted in computer technology in order to overcome a problem

---

[1] Huawei's Notice [Dkt. 47] expressly removes non-asserted claims from the scope of this Motion. Because there is no longer any motion to dismiss pending against them, the Court should not reach the issue of whether those claims are patent-eligible.

specifically arising in the realm of computer networks." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). "Overriding" the normal operation is at most just one way to "improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 226 (2014).[2]

### B. Huawei has not met its burden to show any claim is representative

Similarly, Huawei's representative claim argument is impermissibly conclusory whether applied to all 362 claims or 127 asserted claims here. *See* Reply at 3. As in the *Sprint Spectrum* case, and another Order adopted in this district just last week, Defendants here have presented no more than "superficial reasoning" and "high level, conclusory statements." *Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*, No. 2:17-CV-00661-JRG, 2018 WL 6804804, at *3 (E.D. Tex. Sept. 24, 2018); *CXT Systems, Inc. v. Academy Ltd., D/B/A Academy Sports + Outdoors*, No. 2:18-cv-00171-RWS-RSP, 2019 WL 1375175, at *2 (E.D. Tex. March 27, 2019). Huawei's entire discussion in this regard of the '678 and '690 patents fits in 8 lines and a footnote. Mot. at 6-7. Its conclusory discussions are insufficient to shift the burden to Harris to substantively respond.

Harris rebutted Huawei's conclusory assertions via descriptions of the various claimed advances of the patents. *See, e.g.*, Opp. at 12-14 (discussing the many "novel techniques claimed in the patents"), 26-28 (explaining the novel techniques of different asserted '537 patent claims).

---

[2] Courts have often described the inquiry as looking to the claims as a whole for an improvement to computers or networks, *i.e.*, a specific technical solution to a specific technical problem. *SRI Int'l*, 2019 WL 1271160, at *4 ("an improvement in computer network technology" or "a technological solution to a technological problem") *Finjan*, 879 F.3d at 1303 ("specific asserted improvement in computer capabilities"); *Sycamore IP Holdings LLC v. AT&T Corp.*, 294. F. Supp. 3d 620, 652-54 (E.D. Tex. 2018) ("a specific technical solution to a specific problem in telecommunications."); *Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, No. 2:17-CV-00577-JRG, 2018 WL 6584486, at *2-3 (E.D. Tex. Sept. 4, 2018) ("a technical solution to a technical problem"); *Huawei Technologies Co. Ltd. v. T-Mobile US, Inc.*, No. 2:16-CV-00052-JRG-RSP, 2017 WL 4118383, at *3 (E.D. Tex. Aug. 29, 2017), *report and recommendation adopted*, 2017 WL 4117897 (E.D. Tex. Sept. 15, 2017) ("Huawei responds the claims are directed to a particular problem found in wireless communications networks").

Huawei indisputably has the burden to prove representativeness. *See, e.g.*, *CXT Systems*, 2019 WL 1375175, at *2. Huawei failed to do so.

Finally, because Huawei's formulations of its alleged abstract ideas are wrong, its conclusory assertions that groups of claims are "linked to the same abstract idea" cannot be credited. Reply at 3. It is difficult to imagine a claim in a network security patent that an enterprising defendant could not allege was linked to Huawei's purported concept of "monitoring and analyzing information to detect suspicious behavior and generating an alert." *See* Mot. at 7. But this is merely an example of an improper question containing its own answer. Each of the abstract concepts Huawei seeks to "link" to are impermissibly over-simplified, divorced from the claims, and leave out significant claim elements. *See, e.g.*, *Huawei*, 2017 WL 4118383, at *3.

### III. THE ASSERTED PATENTS ARE PATENT ELIGIBLE

#### A. The '678 and '690 Patents

Huawei's purported abstract concept for all claims of the '678 and '690 patents is over-simplified and improper. *See* Reply at 4 ("monitoring communications to detect suspicious behavior and generating an alert"). Harris disputes this formulation, and disputes Huawei's application of it to all claims without individualization. *See* Opp. at 13. As Harris shows, the various claims are each directed to distinct "technical improvements in computer networks that improve security via specific intrusion detection techniques" and "particular, innovative detection methods using particular kinds of data." *Id.* at 12-13; '678 and '690 patents at 2:2-6, 2:23-34, 2:40-42, Figs. 11-21.

The claims are not directed to mere results, and "the specification explains and teaches ***how***

to implement these specific techniques." Opp. at 14, 16 (emphasis added).[3] Harris provided specific example citations to claims, figures, and specification passages that explain how the claimed techniques are accomplished. Opp. at 12-13, 14-15. For example, how to detect intrusions by monitoring "collisions of predetermined packet type" in the context of asserted claim 71 of the '690 patent. *Id.* at 13; '690 patent Figs. 9 & 19, 8:41-53 ("if two such packet types are transmitted too close together (i.e., with less than the requisite delay time between them), this would be considered a collision"), 18:1-12.[4] Courts properly look to the specification to inform their analysis of challenged claims. *See, e.g.*, SRI Int'l, 2019 WL 1271160, at *4 ("The specification bolsters our conclusion that the claims are directed to a technological solution to a technological problem."); *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1129 (Fed. Cir. 2018). Huawei ignores all of Harris's citations to specification passages and looks only at certain figures in isolation. *See* Reply at 4 & fn. 2.

The Court need not credit Huawei's circular suggestion at step two about removing all inventive elements from the claims merely because they might relate in some way to Huawei's over-simplified abstract concept allegation. *See* Reply at 5. This is not what the Supreme Court did in *Alice*. *See* 573 U.S. at 217 ("we consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application"). Rather than "consider the elements of each claim," Huawei improperly seeks to remove inventive elements from consideration.

Huawei's approach intentionally collapses the step two analysis into its over-simplified,

---

[3] Huawei's repetitive bolding of the word **how** throughout its Reply does not make its allegations less conclusory or less incorrect.

[4] As further examples, what is meant by "collisions of a same MAC address" is discussed in the '690 patent at Fig. 20, 10:34-43. The '678 patent explains how to "detect failed attempts to authenticate MAC addresses" at Fig. 2 & 12, 6:45-60, 9:13-23.

contrived formulation for the concept of the claim at step one—something that the Supreme Court, this Court, and Huawei itself have warned against and criticized. *See, e.g.*, *Alice*, 573 U.S. at 217 ("tread carefully in construing this exclusionary principle lest it swallow all of patent law. . . . At some level, 'all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas'") (citation omitted); *SimpleAir*, 136 F. Supp. 3d at 750-51 ("examine the Patents-in-Suit" rather than "reach into a patent and extract an abstract idea," because "every invention can be reduced to some form of an abstract idea."); *Huawei*, 2017 WL 4118383, at *3 (noting and agreeing with Huawei's criticism of Defendant for "oversimplifying the claimed inventions" and ignoring specific claim limitations). Opp. at 9-11.

Finally, Huawei's allegation about what Harris "does not contest" (*see* Reply at 5) is disingenuous and can be rebutted simply by reading from Harris's Opposition. *See* Opp. at 16 ("Huawei does not assert, and could not establish in contradiction to the pleadings, that the claimed advances in how that monitoring occurs—such as detecting "collisions of the same MAC address"—were stated to be generic or conventional at the time of the patent. Those elements (in Huawei's "[X]" grouping) are presumptively unconventional inventive concepts here"). This factual dispute precludes dismissal on the pleadings here.

The claims are not abstract. And even if the Court were to disagree, each claim contains inventive concepts that render them patent eligible. Huawei has not clearly and convincingly proven otherwise, including because it has ignored the very claim limitations that capture the inventive concepts, and has for all claims failed to consider the claim as an ordered concept. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1366 (Fed. Cir. 2018).

**B.     The '227 Patent**

The '227 patent teaches and claims specific techniques to more efficiently determine or

establish the "security posture" of a network by correlating disparate results, including by employing a "system object model database." Opp. at 19 (citing '227 patent at Figs. 3-6, 3:11-16, 7:55-58, 16:10-26 (asserted claim 1: "after a security posture of the network has been established by correlating a system object model database that supports information data requirements of disparate network vulnerability analysis programs with any data results obtained from the programs"). Harris detailed how this approach offered specific technical solutions to known technical problems with prior approaches to integrated risk assessment—even prior computerized approaches. Opp. at 17-18. Factual evidence from the patent is incontrovertible on the pleadings.

Huawei mischaracterizes specification passages concerning the potential use of Windows or other third-party software tools. *See* Reply at 5. These tools are no more than one small part of the potential solution and are neither the entirety of the invention nor its inventive elements. Opp. at 17-18. Once again, Huawei picks off individual elements to allege conventionality, while ignoring other elements and the claim as a whole. This is the incorrect analysis, as Huawei well knows. Opp. at 11-12; *see also Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) ("an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.").[5]

In its Reply, Huawei also makes claim construction arguments unsuitable for resolution at this stage. *See* Reply at 6 ("And the claims do not require . . ."); *see also* Dkt. 37-1 at 4; Opp. at 22 (suggesting that "determining the security posture" may need to be construed); Dkt. 37-1 at 6 (disputing that there is any plausible construction that could change Huawei's position). Arguments like this have been recently rejected in this district. *See, e.g., CXT Systems*, 2019 WL

---

[5] Huawei's Motion only uses the word "combination" twice, and never in connection with the '227 patent. Huawei's suggestion that Harris "fails to rebut Huawei's showing"—a showing it never even tried to make, on an issue Huawei must prove with clear and convincing evidence—is absurd. *See* Reply at 7.

1375175, at *2 (rejecting argument that "dismissal is appropriate because no plausible reading exists to enable [the patents] to survive" because "the specifications of both asserted patents suggest that the claimed inventions were not 'well-understood, routine and conventional.'"). The claims of the '227 patent are patent eligible, and Huawei fails to meet its burden to prove otherwise.

      C.      **The '986 Patent**

Huawei's purported abstract concept for all claims of the '986 patent is broader than even the patent's title. *Compare* Reply at 7 ("adjusting a schedule based on acquired information") *with* '986 patent at 1 ("Wireless communication system with enhanced time slot allocation and interference avoidance/mitigation features and related methods"). Harris disputes Huawei's formulation, in part because it ignores important claim elements and differences between the claims. *See* Opp. at 22-23. Here, Huawei acknowledges that the proper analysis looks to "specific improvement to the way computers [or other technologies] operate." *See* Reply at 8. But Huawei cannot rebut on the pleadings the '986 patent's own assertions about the specific "advantages" of its claimed "link utilization metrics," or its "demand-assigned time slot" and "semi-permanent time slot" allocations. *See, e.g.*, '986 patent at 1:65-2:33, 3:53-58, 57:9-10 (asserted claim 1), 60:7-18 (asserted claim 25); *see also id.* at Title ("enhanced time slot allocation").

The passages of the specification cited by Huawei do not make admissions as to conventionality or support Huawei's conclusory arguments. *See* Reply at 8. Rather, the specification details at length how the claimed advances in time slot allocation and other inventive aspects are performed. *See* Opp. at 22-23; '986 patent at 1:65-2:33; Figs. 14-16 and accompanying descriptions, 14:1-16:8, 38:18-22, 57:9-10 (asserted claim 1), 60:7-18 (asserted claim 25). Huawei has failed to address these detailed claim elements and disclosures other than with conclusory assertions that, even if credited, at most impermissibly challenge incontrovertible facts here. *See*

Reply at 8. Huawei's Motion should be denied with respect to the '986 patent claims.

### D. The '537 Patent

As detailed at length in Harris's Opposition, the '537 patent teaches and claims innovations in the clustering of nodes in ad hoc wireless networks as the network changes—innovations that address known problems with such networks (*see, e.g.*, Opp. at 26; '537 patent at 1:40-50, 3:41-4:15), and create specific improvements for such networks (*see, e.g.*, Opp. at 26-27; '537 patent at 4:26-54, 28:32-36 (asserted claim 30), 29:15-42 (asserted claim 36)). By their own terms as described in the '537 patent itself, these claimed advances are "an improvement in the functioning of the system." *Two-Way Media Ltd. v. Comcast Cable Commc'ns LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017); *see also SRI Int'l*, 2019 WL 1271160, at *4 ("an improvement in computer network technology" or "a technological solution to a technological problem"). Specific technical improvements to computer or networking functionality are upheld—including when such improvements are to the "efficiency" of communications. *See, e.g.*, *Sycamore IP Holdings*, 294. F. Supp. 3d at 652 ("The specific function of the recited encoding scheme is to add efficiency to the process in a particular manner.").

Huawei agrees that this is the test. *See* Reply at 8 ("specific improvement to the way computers [or other technologies] operate.") (brackets in original). But its Reply fails to discuss at step one any of the specific improvements described in the above specification passages. *Id.* at 9-10.[6] This is fatal to Huawei's Motion, which should be denied with respect to the '537 patent.

Huawei cannot meet its burden to show invalidity by clear and convincing evidence on the pleadings simply by stating at step two that there is nothing inventive in the claims. *See* Reply at

---

[6] Huawei instead draws vague analogies to the claims in *Two-Way*, which were invalidated, but ignores the comparable claims in *SRI Int'l*, which were deemed not abstract and patentable.

11. Huawei's factual assertions are disputed, including by the incontrovertible disclosures of the '527 patent as described here and in the Opposition. Opp. at 26-28; '537 patent at 23:12-21 ("novel method and apparatus for communication network cluster formation and transmission of node link status messages with reduced protocol overhead traffic").

    E.    **The '426 Patent**

Huawei's Reply reveals that its step one argument with respect to the '426 patent is nothing more than an impermissible dispute with the factual statements in the patent, concerning the claimed technical solution to a known technical problem in ad hoc wireless networks. As the '426 patent explains: "the bandwidth of a typical ad-hoc network is limited. Conventional mobile ad-hoc network routing protocols assume that all nodes are on the same channel permanently." Opp. at 29-30; '426 patent at 2:28-36 ("conventional mobile ad-hoc networks do not utilize multiple channels for transmitting packet data"), 4:67-5:2 ("Contrary to conventional mobile ad-hoc networks, the communication links 32 exist over a plurality of channels"). The patent then teaches and claims improvements in establishing new routes in ad hoc wireless networks "to efficiently make use of a plurality of [electrically separate] channels." '426 patent at 2:40-3:11, 8:12-17 (asserted claim 8). This inventive technical solution is not abstract. *See* Opp. at 30.[7]

---

*See* Reply at 9-10. The valid claim in *SRI Int'l* also included functional language, such as "deploying," "detecting," generating," and "receiving." *See SRI Int'l*, 2019 WL 1271160, at *2. This inability of Huawei's approach to distinguish between claims that will be deemed patentable or unpatentable counsels against relying on it. Rather, the proper approach starts with analysis of the claimed advance as described in the patent. Opp. at 7-11.

    [7] As with each of the many such assertions in Huawei's Reply, its claim that Harris "does not dispute" aspects of its analysis here is demonstrably false. *See, e.g.*, Opp. at 30-31 ("Huawei's over-simplification of the claims to "sending information" (*see* Motion at 25) applies the wrong approach and wrongly ignores the claimed advances of the '426 patent, as these cases aptly demonstrate"). Harris does not agree with any such claim in the Reply.

### F. The '572 Patent

Keeping with pattern, Huawei's argument with respect to the '572 patent also mischaracterizes the patent and completely ignores the technical advances in the field of secure wireless local area networks described and claimed therein. As Harris explained, the '572 patent describes a hole in existing wireless encryption using algorithms known at the time. Opp. at 31-32; '572 patent at 1:51-54 (the prior approach "only protects the data packet information and does not protect the physical layer header," creating a problem of "a reduced level of security"). The patent then taught, and claimed, methods for improving the encryption coverage to also include "address and control portions of the transmitted packet contained within the MAC generated header," which was "not encrypted in conventional LAN cryptographic devices." '572 patent at 2:1-16, 4:20-24, 7:52-64 (asserted claim 1), 11:1-12 (asserted claim 47). The specification detailed how the claimed improvement could be implemented. *See, e.g.*, *id.* at Figs. 7 & 8, 5:26-30, 2:32-35, 8:22-26. Harris then explained at length why such an improvement to computer security on wireless networks is not abstract under controlling cases. Opp. at 33-34.

Huawei unhelpfully retorts that "shielding information from prying eyes" is not a unique concern. Reply at 12. But that is an improper formulation of what the claims are directed to. *See, e.g.*, *Huawei*, 2017 WL 4118383, at *3 ("oversimplifying the claimed inventions and ignoring the claim limitations").

### IV. CONCLUSION

Plaintiff Harris respectfully requests that the Court deny the Motion in its entirety.

Dated:  April 5, 2019                                Respectfully Submitted,


                                      By: /s/ *Denise De Mory*

          Henry C. Bunsow
          Denise De Mory
          Christina Finn
         Robin Curtis
         Corey Johanningmeier
         Nicolas Mancuso
         **BUNSOW DE MORY LLP**
         701 El Camino Real
         Redwood City, CA 94063
         Telephone: (650) 351-7248
         Facsimile: (415) 426-4744
         hbunsow@bdiplaw.com
         ddemory@bdiplaw.com
         cfinn@bdiplaw.com
         rcurtis@bdiplaw.com
         cjohanningmeier@bdiplaw.com
         nmancuso@bdiplaw.com

         S. Calvin Capshaw
         State Bar No. 03783900
         Elizabeth L. DeRieux
         State Bar No. 05770585
         **CAPSHAW DERIEUX, LLP**
         114 E. Commerce Ave.
         Gladewater, TX 75467
         Telephone: 903-845-5770
         Email: ccapshaw@capshawlaw.com
         Email: ederieux@capshawlaw.com

         Attorneys for Plaintiff
         HARRIS CORPORATION

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) with a copy of this document via the Court's CM/ECF system.

Dated: April 5, 2019

By: /s/ *Denise De Mory*

Henry C. Bunsow
Denise De Mory
Christina Finn
Robin Curtis
Corey Johanningmeier
Nicolas Mancuso
**BUNSOW DE MORY LLP**
701 El Camino Real
Redwood City, CA 94063
Telephone: (650) 351-7248
Facsimile: (415) 426-4744
hbunsow@bdiplaw.com
ddemory@bdiplaw.com
cfinn@bdiplaw.com
rcurtis@bdiplaw.com
cjohanningmeier@bdiplaw.com
nmancuso@bdiplaw.com

Attorneys for Plaintiff
HARRIS CORPORATION