# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| HARRIS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 2:18-cv-00439-JRG |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| HUAWEI DEVICE USA, INC., HUAWEI | ) | |
| DEVICE CO., LTD., HUAWEI | ) | |
| TECHNOLOGIES USA INC., HUAWEI | ) | |
| TECHNOLOGIES CO. LTD., AND | ) | |
| HUAWEI DEVICE (SHENZHEN) CO., | ) | |
| LTD. | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF HARRIS CORPORATION'S MOTION TO SEVER DEFENDANTS' INFRINGEMENT COUNTERCLAIMS

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ......................................................................................... 1

II.     HUAWEI'S INFRINGEMENT COUNTERCLAIMS PRESENT A
        COMPLETELY SEPARATE SET OF FACTS ................................................ 2

        A.      The two cases do not share common factual background or facts to be
                determined.......................................................................................... 2

        B.      Huawei has not identified any practical benefit to litigating the two cases
                together other than distraction and limitation of Harris's claims. ......................... 4

III.    THIS COURT HAS PREVIOUSLY SEVERED IN LIKE CIRCUMSTANCES ............ 7

IV.     CONCLUSION.......................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Anderson v. Red River Waterway Comm'n*,
    231 F.3d 211 (5th Cir. 2000) ............................................................................ 8

*Arteris S.A.S. v. Sonics, Inc.*,
    No. C 12–0434 SBA, 2013 WL 3052903 (N.D. Cal. June 17, 2013)................................ 8

*Broadcom Corp. v. Sony Corp.*,
    No. SACV 16-1052-JVS (JCGx), 2016 WL 9108039 (N.D. Cal.
    Dec. 20, 2016)........................................................................................... 8

*Huawei Technologies Co. Ltd. v. T-Mobile US, Inc.*,
    No. 2:16-cv-00052-JRG-RSP, 2016 WL 7191855 (E.D. Tex. July
    11, 2016) ............................................................................................ 1, 7

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008).......................................................................... 8

*Intel Corp. v. Commonwealth Scientific and Indus. Research Corp.*,
    Nos. 6:06–cv–551 *et al.*, 2008 WL 5378037 (E.D. Tex. Dec. 23,
    2008).................................................................................................. 9

*ROY-G-BIV Corporation v. FANUC Ltd.*,
    No. 2:07-CV-418 (DF), 2009 WL 10677443 (E.D. Tex. April 14,
    2009).................................................................................................. 7

*Spectra-Physics Lasers, Inc. v. Uniphase Corp.*,
    144 F.R.D. 99 (N.D. Cal. 1992)......................................................................... 9

*Wyndham Assoc. v. Bintliff*,
    398 F.2d 614 (2d Cir. 1968)............................................................................ 8

## RULES

Fed. R. Civ. P. 21 ......................................................................................... 1, 8

Fed. R. Civ. P. 42(b) ...................................................................................... 9

## I.       INTRODUCTION

Huawei's Counterclaims for infringement, brought six months after this case was filed and over a year after Harris first notified Huawei of its infringement, attempt to inject a completely separate case into these proceedings—a case with little to no common operative facts.  Huawei's surprise assertion of five Power over Ethernet and LTE patents here will over-burden and confuse the factfinder, disrupt the schedule and proceedings, and will be prejudicial to Harris's own assertion of its Wi-Fi and Zigbee networking and security patents.  Huawei's infringement counterclaims concern different networking technologies and standards, accuse different categories of products in different markets, implicate no common witnesses or evidence, and will require completely separate analyses for claim construction, infringement, validity, and damages—including because Huawei's asserted patents are subject to FRAND obligations whereas Harris's asserted patents are not.

Accordingly, Harris respectfully moves this Court to sever Huawei's Fifteenth through Nineteenth Counterclaims for patent infringement into a separate action, pursuant to the Court's discretion under Federal Rule of Civil Procedure 21.[1]

Courts in this district have generally not allowed plaintiffs' patents and defendants' distinct technology counterclaim patents to proceed to trial together.  For example, as discussed below Huawei successfully moved this Court in a recent case to sever LTE patent counterclaims due to the lack of factual commonality between the claims.  *Huawei Technologies Co. Ltd. v. T-Mobile US, Inc.*, No. 2:16-cv-00052-JRG-RSP, 2016 WL 7191855, Dkt. 54 at 2-3 (E.D. Tex. July 11, 2016) (severing "the counterclaims against Huawei Tech to reduce the complexity of the

---

[1] Harris also opposes Huawei's Motion to Amend the DCO in this case (Dkt. 60), for the reasons given herein and in Harris's Opposition to that Motion to be filed today at the Court's request.  *See* Order, Dkt. 62.

cases.").  The same result is appropriate here.  Where there is no commonality of issues, there is

no efficiency gain from forcing those issues to be discovered, briefed, heard, or tried together.

Instead there is only risk of prejudice to litigants and of factfinder confusion.

## II.   HUAWEI'S INFRINGEMENT COUNTERCLAIMS PRESENT A COMPLETELY SEPARATE SET OF FACTS

### A.   The two cases do not share common factual background or facts to be determined.

Harris's seven Asserted Patents claim distinct innovations in routing, clustering, and

scheduling, as well as security (including cryptography and intrusion detection) for wireless

networks.  *See, e.g.*, Harris's Response in Opposition to Defendants' Motion to Dismiss, Dkt. 40

at 12-15, 17-19, 22-23, 26-27, 29-30, 31-33 (describing the claimed advances of Harris's

asserted patents).  Harris accuses various Huawei commercial products, including many of its

wireless routers, access points, gateways, switches, and consumer Wi-Fi or Zigbee products.

Am. Complaint, Dkt. 13 at ¶¶ 26-42.  Harris's infringement contentions provide extensive

documentation, based on public materials,[2] of Huawei's use of the claimed inventions—

including by Huawei's advertised compliance with certain IEEE 802.11 Wi-Fi standard

amendments, as well as IEEE 802.15.4 Low-Rate Wireless Personal Area Network standards and

Zigbee Alliance specifications, provisions of which are implicated in infringement here.  Harris

does not believe its Asserted Patents are subject to FRAND restrictions, and Huawei has

provided no facts suggesting otherwise.  *See generally* Answer and Counterclaims, Dkt. 56.

---

[2] To date, Huawei has not produced non-public technical documentation for the Accused Products, including for those numerous products identified by model number in Harris's original Complaint on October 24, 2018.  Declaration of Denise De Mory in Support of Harris's Motion to Sever ("De Mory Decl."), ¶ 3.

Harris initially informed Huawei of its infringement of the Asserted Patents via letter on March 12, 2018.  *See, e.g.*, Dkt. 13 at ¶¶ 53, 130.  After Huawei failed to even acknowledge any of the four letters Harris sent between March and October (*id.* at ¶ 130), Harris filed its initial Complaint on October 24, 2018, further informing Huawei of the basis for its claims.  Dkt. 1.  Harris then agreed to a lengthy extension on service (90 days) and time to answer (45 days), and also amended its Complaint merely to adjust the Defendant party entities, both at Huawei's request.  Huawei then filed, and the parties briefed, its Motion to Dismiss, and the parties proceeded through initial disclosures, service of Harris's Infringement Contentions with nearly 700 pages of claim charts, and negotiation of the various proposed case management orders.  During this time, Huawei provided no notice to Harris or the Court that it would be filing infringement counterclaims related to its LTE patents.[3]

Huawei's infringement counterclaims assert five distinct patents related to aspects of Power over Ethernet ("PoE") technology or of Long-Term Evolution ("LTE") mobile phone communications.  Dkt. 56 at Counterclaims, ¶¶ 12-35.  Huawei asserts that its asserted PoE patent is practiced by and/or essential to aspects of IEEE 802.3af, at, or bt standards, and that its LTE patents are practiced by and/or essential to aspects of versions of 3GPP standards for LTE.  *See, e.g.*, *id.* at ¶¶ 116, 128.  Huawei does not allege any commonality or overlap between these

---

[3] After Harris filed its Complaint, Huawei finally responded to Harris's requests to engage in discussions.  Huawei did eventually mention its LTE patents during negotiations between the parties, specifically suggesting that they be treated on a separate negotiation track because discussions about a license to the Huawei patents are "not related to the pending lawsuit."  De Mory Decl., ¶ 1, Exhibit A.  Huawei makes several counter-factual allegations concerning Harris's responses, both in its Counterclaims (Dkt. 56 at ¶ 36) and in its Motion to Amend the DCO (Dkt. 60).  In fact, Harris did respond to Huawei's March 31, 2019 letter, contrary to statements in ¶ 36 of the Counterclaims, including via email days later expressing willingness to "includ[e] the LTE patents as part of the discussions."  De Mory Decl., ¶ 2, Exhibit B.  Whatever strategic reasons Huawei had for filing its infringement Counterclaims when it chose to, its unsupported assertions that Harris failed to respond or lacked good faith are wrong and should be disregarded.

standards or the issues raised by their application, beyond the fact that some of them fall under the umbrella of the IEEE.  Dkt. 60 at 4.  On information and belief, Huawei's participation in these standards and its assertion of allegedly essential patents will subject it to FRAND obligations under the relevant patent policies of those standards organizations.  *See, e.g.*, Dkt. 56 at ¶¶ 6, 123, 134, 144, 156.

Huawei's infringement counterclaims accuse commercial sales of various military-grade battlefield and tactical communications equipment, including the "Falcon III RF-7850A-TM001 Roll-on/Roll-off Airborne System" and several of Harris's Tactical and Vehicle Based Radios. *Id*. at ¶¶ 37, 42.  In its single paragraph on allegedly common issues, Huawei does not allege any commonality or overlap between these products or the markets they are sold to, and the corresponding products or markets of Harris's infringement accusations.  Dkt. 60 at 4.  Huawei merely alleges that the patents are all related to "networking arrangements and communications." *Id*.

In short, there are no identified factual issues in common between claim construction, infringement, validity, or damages for Harris's Asserted Patents and Huawei's counterclaim patents.  There are no identified common witnesses, evidence, or claim terms to be construed. Accordingly, there are no issues that could be reduced or avoided by treating the groups of patents together.

### B. Huawei has not identified any practical benefit to litigating the two cases together other than distraction and limitation of Harris's claims.

In its Motion to Amend the DCO, Huawei does not support its conclusory assertion that proceeding under a common schedule will "reduce costs" or promote efficiency.  Dkt. 60 at 3-4. Indeed, because there is no overlap of issues, there is no reason to expect that Huawei's counterclaims will not simply double the parties' collective need for access to judicial and

factfinder resources to resolve all of the issues and claims.  Huawei's only alleged justification for treating the indisputably distinct allegations together in one hearing or trial, rather than two hearings or trials, is Huawei's stated hope that the additional issues derived from its counterclaims will force Harris to drop aspects of its claims in order to fit them within the briefing pages, hearing time, or trial days allotted to one case instead of two.  *Id.* at 4-5.  Put another way, Huawei expects that access to judicial resources will not double if the two cases proceed together, and so merely by asserting counterclaims it will have reduced Harris's ability to fairly litigate and try its own claims.

Harris fully expects that both its claims, and Huawei's counterclaims, will be narrowed through the course of discovery, claim construction, and dispositive motions—in the ordinary course according to the established procedures of this Court, with which both sides' counsel are well familiar.  Huawei's attempt to apply *further* narrowing pressure through the untimely assertion and proposed joint treatment of disparate counterclaims should be rejected as prejudicial.

In addition, Huawei's proposed combined schedule prejudices Harris even with respect to the Counterclaims alone, by denying Harris time to investigate and prepare defenses.  Huawei has known of Harris's specific patent infringement counts and dozens of Accused Products since October 24, 2018 when the original Complaint was filed.  Harris has known of Huawei's specific patent infringement assertions and accused products for less than three weeks.  Yet under Huawei's proposed common schedule, Harris would have to serve Invalidity Contentions less than six weeks after Huawei does.  *See* Dkt. 60-1 at 4.  Defendants in this district under this Court's procedures are not asked to proceed so quickly.  Because Harris had no prior notice of the Counterclaims, and because they assert completely factually distinct claims and raise

separate issues, Harris is in the same position as if the Counterclaims were a newly filed Complaint.

Huawei's voluntary early service of contentions or disclosures, as well as its stated willingness to enter claim construction days after seeing Harris's contentions (*see* Dkt. 60 at 3), fail to cure the burden it seeks to impose on Harris by compressing the ordinary early course of what is (in practical effect) a completely separate litigation.  In addition, the compressed proposed schedule fails to allow time to address, and exacerbates the harm from, any deficiencies in Huawei's contentions, disclosures, or document productions.[4]  Huawei also does not mention or address the shortened period for fact discovery before claim construction that arises under its proposal with respect to the Counterclaim patents, a shortened period that would now need to accommodate discovery related to twelve patents instead of seven.  The additional claims, as well as the different accused products, will likely also require that the parties negotiate new discovery limits and Protective Order provisions, whether the Counterclaims are severed or not. The need to do so immediately, whilst also preparing contentions and disclosures under Huawei's compressed proposed schedule, only increases the harm to Harris.

Huawei has not identified any practical benefit to its proposed treatment of its Counterclaims together with and on the same schedule as Harris's claims.  But the harm to Harris would be substantial, because of the compressed early schedule for responding, Huawei's hoped-for reduction in access to judicial and factfinder resources, and likely jury confusion of complex distinct issues at trial.

---

[4] Huawei served Infringement Contentions on May 13, 2019.  Harris is evaluating those materials—which appear to only cite to three Harris documents in one of the five claim charts among unexplained quotations from industry standards—and will seek to confer with Huawei regarding any deficiencies that are identified.  De Mory Decl., ¶ 4.

## III.    THIS COURT HAS PREVIOUSLY SEVERED IN LIKE CIRCUMSTANCES

In a recent prior case before this very Court, Huawei asserted several of its LTE patents, Nokia intervened and asserted counterclaims alleging infringement of other LTE patents, and Huawei sought severance.  Huawei argued: "There is no technical efficacy to be gained by tying these patents together because the issues for infringement, validity, and damages will have little in common."  *Huawei Technologies Co. Ltd. v. T-Mobile US, Inc.*, No. 2:16-cv-00052-JRG-RSP, Dkt. 35 at 4-5 (E.D. Tex. June 6, 2016).  This Court agreed, finding that: "Trying these technologically disparate patents in one case creates no efficiency gains.  A fact-finder's understanding of one patent will not inform her understanding of the other patent."  *Id.*, Order, 2016 WL 7191855, Dkt. 54 at 2-3 (E.D. Tex. July 11, 2016).  This Court noted that while the patents on both sides in that case related to LTE and presented issues of FRAND encumbrances, they covered distinct aspects of LTE with no factual overlap, and damages in FRAND cases "raise highly patent-specific issues."  *Id.*  Here, as discussed above, the patents are not even in the same networking technology categories or standards, and only Huawei has relevant FRAND commitments.  This case presents even stronger reasons to sever the infringement counterclaims.

Other courts in this district have granted severance when a defendant seeks to inject technologically dissimilar patents into ongoing litigation.  *See ROY-G-BIV Corporation v. FANUC Ltd.*, No. 2:07-CV-418 (DF), 2009 WL 10677443 at *1 (E.D. Tex. April 14, 2009) ("Given the different technology embodied in Defendants' patents, this Court believes that a severance would simplify an already complex matter.").  In its motion proposing a combined schedule and opposing severance, Huawei fails to cite any Eastern District of Texas authority supporting litigation or trial of separate counterclaim patents together with plaintiffs' claims.

Dkt. 60.[5]  Huawei also fails to even mention its own prior case before this Court—where LTE

counterclaim patents were severed from other asserted LTE patents at its request.  *Id.*

The Court has broad discretion in deciding whether to sever.  *Anderson v. Red River*

*Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000).[6]  Rule 21 of the Federal Rules of Civil

Procedure provides that: "On a motion or on its own, the court may at any time, on just terms, . .

. sever any claim against a party."  Fed. R. Civ. P. 21.  Rule 21 "authorizes the severance of any

claim, even without a finding of improper joinder, when there are sufficient other reasons for

ordering a severance."  *Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968).

Here, there are no common issues supporting any alleged need to align the case schedule

or deal with Harris's and Huawei's patents at the same time.  Any logistical benefit from having

the proceedings in the same Court, with the same counsel, could just as easily be realized with

Huawei's counterclaims trailing in a separate action.  Finally, and most importantly, there is no

benefit from trying Harris's and Huawei's patents before the same jury, with all of the

complications and risk of jury confusion that doing so would raise.  *See, e.g.*, *Huawei*, 2016 WL

7191855 at *1 ("A fact-finder's understanding of one patent will not inform her understanding of

the other patent.").

---

[5] Huawei mentions one Northern District of California case that denied a motion to sever infringement counterclaims.  Dkt. 60 at 4.  But even in that case the court found that several factors favored severing.  *Broadcom Corp. v. Sony Corp.*, No. SACV 16-1052-JVS (JCGx), 2016 WL 9108039, at *3-5 (N.D. Cal. Dec. 20, 2016) (noting "large factual differences," and the need for "different evidence and witnesses").  The *Broadcom* court also noted that there, unlike here, prejudice was reduced because defendant "disclosed its intent to pursue infringement counterclaims in the parties' Rule 26(f) discussions and in pre-suit negotiations." *Id.* at *5.  Other courts in California have separated claims on distinct sets of patents.  *See Arteris S.A.S. v. Sonics, Inc.*, No. C 12–0434 SBA, 2013 WL 3052903 at * 7-8 (N.D. Cal. June 17, 2013) (severing remaining declaratory judgment claims into one action and consolidating infringement counterclaims into a separate action in which the counterclaim patents had been asserted).  Huawei provides no basis for overturning what has been common practice in this district in favor of a factually distinguishable result in another circuit and district.

[6] Because motions to sever do not involve substantive issues of patent law, precedent from the Fifth Circuit controls.  *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

Huawei has not shown otherwise.  *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99 (N.D. Cal. 1992), cited by Huawei, concerned bifurcation of liability and damages and did not involve separate counterclaim patent assertions.  In comparison, courts in this district frequently bifurcate or sever when there are no common issues predominating.  *See, e.g.*, *Intel Corp. v. Commonwealth Scientific and Indus. Research Corp.*, Nos. 6:06–cv–551 *et al.*, 2008 WL 5378037 at *1-2 (E.D. Tex. Dec. 23, 2008) (ordering separate trials on damages, and noting that "'any separate issue' may be severed for trial 'in furtherance of convenience or to avoid prejudice, or to expedite and economize.'") (*quoting* Fed. R. Civ. Proc. 42(b)).  Despite being informed of Harris's intention to move to sever and/or proceed on a different schedule for Huawei's infringement Counterclaims (*see* Dkt. 60 at 1), Huawei failed to point to any relevant authority in this district, ignored countervailing authority including from this Court, and presented no common issues or facts that would justify the result it seeks here.  Huawei's infringement Counterclaims should be severed into a separate action and proceed there according to an appropriate schedule based on the Court's model.  *See also* Harris's Opposition to Huawei's Motion to Amend the DCO, which will be filed on May 15, 2019 in accordance with the Court's May 9, 2019 Order (Dkt. 62).

## IV.    CONCLUSION

Plaintiff Harris respectfully requests that the Court sever Huawei's counterclaims for patent infringement (Counterclaim Nos. 15-19) into a separate action.

Dated:  May 15, 2019                          Respectfully Submitted,

By:  /s/ *Corey Johanningmeier*

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
**CAPSHAW DERIEUX, LLP**
114 E. Commerce Ave.
Gladewater, TX 75467
Telephone: 903-845-5770
Email: ccapshaw@capshawlaw.com
Email: ederieux@capshawlaw.com

Henry C. Bunsow
Denise De Mory
Christina Finn
Robin Curtis
Corey Johanningmeier
Nicolas Mancuso
**BUNSOW DE MORY LLP**
701 El Camino Real
Redwood City, CA 94063
Telephone: (650) 351-7248
Facsimile: (415) 426-4744
hbunsow@bdiplaw.com
ddemory@bdiplaw.com
cfinn@bdiplaw.com
rcurtis@bdiplaw.com
cjohanningmeier@bdiplaw.com
nmancuso@bdiplaw.com

Attorneys for Plaintiff
HARRIS CORPORATION

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Plaintiff have complied with the meet and confer requirement of Local Rule CV-7(h).  This motion is opposed.  The conference required by Local Rule CV-7(h) was conducted on May 7, 2019, by telephone, among the following participants: Corey Johanningmeier for Harris; and Andrew Radsch for Huawei.  The parties' discussions on this issue have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

Dated:  May 15, 2019

By: _/s/ Corey Johanningmeier_
Corey Johanningmeier

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) with a copy of this document via the Court's CM/ECF system.

Dated:  May 15, 2019

By: _/s/ Corey Johanningmeier_
Corey Johanningmeier