## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| HARRIS CORPORATION, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO. 2:18-cv-00439-JRG |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| HUAWEI DEVICE USA, INC., HUAWEI ) | |
| DEVICE CO., LTD., HUAWEI ) | |
| TECHNOLOGIES USA INC., HUAWEI ) | |
| TECHNOLOGIES CO. LTD., AND ) | |
| HUAWEI DEVICE (SHENZHEN) CO., ) | |
| LTD. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF HARRIS CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION
TO AMEND DOCKET CONTROL ORDER**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................................ 1

II.   HUAWEI'S INFRINGEMENT COUNTERCLAIMS PRESENT A COMPLETELY SEPARATE SET OF FACTS THAT SHOULD RECEIVE ITS OWN SCHEDULE ................................................................................................. 3

    A.    The two cases do not share common factual background or facts to be determined ............................................................................................................. 3

    B.    Huawei has not identified any practical benefit to litigating the two cases together other than distraction from and limitation of Harris's claims .................. 5

III.  CONCLUSION .................................................................................................................. 8

I.      INTRODUCTION

There are no meaningful common factual issues between Harris's claims with respect to its seven asserted Wi-Fi and Zigbee networking and security patents, and Huawei's Counterclaims for infringement of five Power over Ethernet and LTE patents.  Huawei does not point to any common witnesses, evidence, claim terms, accused products, prior art references, or damages theories, because none exist.  Because there are no common facts to be determined by the factfinder, there is no efficiency gain to proceeding on the same schedule with what amounts to a completely separate patent infringement case, which Huawei filed more than a year after Harris first put Huawei on notice of infringement.  Instead there is only prejudice to Harris—both in preparing its defenses to Huawei's claims and as to its affirmative claims filed more than six months ago after Huawei ignored four separate Harris attempts to engage Huawei in licensing discussions (Dkt. 13 at ¶ 53)—as well as significant unwarranted risk of factfinder burden and confusion.

Courts in this district, including this Court, have recognized that there is no benefit to briefing, construing, hearing, and trying two disparate cases at once, and have severed factually disparate infringement counterclaims into a separate action.  For example, in a recent prior case before this very Court, that Huawei failed to mention here, Huawei asserted several of its LTE patents, and then successfully argued for severance of interveners' counterclaims alleging infringement of other LTE patents.  Huawei argued: "There is no technical efficacy to be gained by tying these patents together because the issues for infringement, validity, and damages will have little in common." *Huawei Technologies Co. Ltd. v. T-Mobile US, Inc.*, No. 2:16-cv-00052-JRG-RSP, Dkt. 35 at 4-5 (E.D. Tex. June 6, 2016).  This Court agreed, finding that: "Trying these technologically disparate patents in one case creates no efficiency gains.  A fact-finder's

understanding of one patent will not inform her understanding of the other patent." *Id.*, Order, 2016 WL 7191855 at *1-2, Dkt. 54 at 2-3 (E.D. Tex. July 11, 2016) (severing "the counterclaims against Huawei Tech to reduce the complexity of the cases.").[1]

The same rationale is even more true here, where the parties' respective claims concern different networking technologies and standards, accuse different categories of products in different markets, implicate no common witnesses or evidence, and will require completely separate analyses for claim construction, infringement, validity, and damages—including because Huawei's asserted patents are subject to FRAND obligations whereas Harris's asserted patents are not. As courts recognize, damages in FRAND cases "raise highly patent-specific issues." *Huawei*, 2016 WL 7191855 at *2.

Accordingly, Harris has separately moved this Court to sever Huawei's Fifteenth through Nineteenth Counterclaims for patent infringement into a separate action, pursuant to the Court's discretion under Federal Rule of Civil Procedure 21. Dkt. 65. For all of the same reasons, Harris opposes Huawei's proposed amendment to the Court's Docket Control Order. At a minimum, even if Huawei's infringement Counterclaims remain under this action, they should proceed under a parallel, trailing schedule with separate dates for contentions, claim construction, dispositive motions, and trial of Huawei's infringement Counterclaims, with dates in accord with

---

[1] *See also ROY-G-BIV Corporation v. FANUC Ltd.*, No. 2:07-CV-418 (DF), 2009 WL 10677443 at *1 (E.D. Tex. April 14, 2009) ("Given the different technology embodied in Defendants' patents, this Court believes that a severance would simplify an already complex matter."); Dkt. 65 at 6-9, and cases cited therein. Harris believes that severance of Huawei's infringement Counterclaims (Nos. 15-19) is the appropriate and best approach here, and has separately moved for that affirmative relief. Dkt. 65. Harris incorporates that Motion here by reference. In contrast, Huawei's affirmative defenses and Counterclaims for declaratory judgment (Nos. 1-14) do have factual overlap with Harris's assertions and Harris does not object to treating those matters on the present schedule.

the Court's model Docket Control Order based on the date of Huawei's filing.[2]

## II. HUAWEI'S INFRINGEMENT COUNTERCLAIMS PRESENT A COMPLETELY SEPARATE SET OF FACTS THAT SHOULD RECEIVE ITS OWN SCHEDULE

### A. The two cases do not share common factual background or facts to be determined.

Harris's seven Asserted Patents claim distinct innovations in routing, clustering, and scheduling, as well as security (including cryptography and intrusion detection) for wireless networks. *See, e.g.*, Harris's Response in Opposition to Defendants' Motion to Dismiss, Dkt. 40 at 12-15, 17-19, 22-23, 26-27, 29-30, 31-33 (describing the claimed advances of Harris's asserted patents). Harris accuses various Huawei commercial products, including many of its wireless routers, access points, gateways, switches, and consumer Wi-Fi or Zigbee products. Am. Complaint, Dkt. 13 at ¶¶ 26-42. Harris's infringement contentions provide extensive documentation, based on public materials, of Huawei's use of the claimed inventions—including by Huawei's advertised compliance with certain IEEE 802.11 Wi-Fi standard amendments, as well as IEEE 802.15.4 Low-Rate Wireless Personal Area Network standards and Zigbee Alliance specifications, provisions of which are implicated in infringement here. Harris does not believe its Asserted Patents are subject to FRAND restrictions, and Huawei has provided no facts suggesting otherwise. *See generally* Answer and Counterclaims, Dkt. 56.

Harris initially informed Huawei of its infringement of the Asserted Patents via letter on March 12, 2018. *See, e.g.*, Dkt. 13 at ¶¶ 53, 130. After Huawei failed to even acknowledge any of the four letters Harris sent between March and October (*id.* at ¶ 130), Harris filed its initial

---

[2] The specifics of such an Order would depend of course on the Court's availability for *Markman* and trial of Huawei's infringement Counterclaims, but should begin with a date for filing any proposed amendments to the Discovery Order and Protective Order shortly after the entry of an Amended DCO, and should provide for Invalidity Contentions no earlier than 10 weeks after that date.

Complaint on October 24, 2018, further informing Huawei of the basis for its claims. Dkt. 1. Harris then agreed to a lengthy extension on service (90 days) and time to answer (45 days), and also amended its Complaint merely to adjust the Defendant party entities, both at Huawei's request. Huawei then filed, and the parties briefed, its Motion to Dismiss, and the parties proceeded through initial disclosures, service of Harris's Infringement Contentions with nearly 700 pages of claim charts, and negotiation of the various proposed case management orders. During this time and prior to filing, Huawei provided no notice to Harris or the Court that it would be filing infringement counterclaims related to any of its LTE or PoE patents, and no specifics about which if any of the listed patents or claims it might assert.

Huawei alleges in its Counterclaims (Dkt. 56 at ¶ 36) and in its Motion that it filed its claims now without advance notice to the Court or Harris because Harris failed to respond to Huawei. This is not true. In fact, Harris did respond to Huawei's March 31, 2019 letter, contrary to statements in ¶ 36 of the Counterclaims, including via email days later expressing willingness to "includ[e] the LTE patents as part of the discussions." Dkt. 65-1 (De Mory Decl.), ¶ 2, Exhibit B. In addition, when Huawei did mention its LTE patents during negotiations between the parties, it requested that they be treated on a separate negotiation track because discussions relating to a license for the Huawei patents are "not related to the pending lawsuit." *Id.*, ¶ 1, Exhibit A. Whatever strategic reasons Huawei had for filing its Counterclaims when it chose to, its unsupported assertions that Harris failed to respond or lacked good faith are wrong and should be disregarded.

Huawei's infringement counterclaims assert five distinct patents related to aspects of Power over Ethernet ("PoE") technology or of Long-Term Evolution ("LTE") mobile phone communications. Dkt. 56 at Counterclaims, ¶¶ 12-35. Huawei asserts that its asserted PoE

patent is practiced by and/or essential to aspects of IEEE 802.3af, at, or bt standards, and that its LTE patents are practiced by and/or essential to aspects of versions of 3GPP standards for LTE. *See, e.g., id.* at ¶¶ 116, 128.  Huawei does not allege any commonality or overlap between these standards or the issues raised by their application, beyond the fact that some of them fall under the umbrella of the IEEE.  Motion at 4.  On information and belief, Huawei's participation in these standards and its assertion of allegedly essential patents will subject it to FRAND obligations under the relevant patent policies of those standards organizations.  *See, e.g.*, Dkt. 56 at ¶¶ 6, 123, 134, 144, 156.  Huawei's infringement Counterclaims accuse commercial sales of various military-grade battlefield and tactical communications equipment, including the "Falcon III RF-7850A-TM001 Roll-on/Roll-off Airborne System" and several of Harris's Tactical and Vehicle Based Radios.  *Id*. at ¶¶ 37, 42.

In its single paragraph on allegedly common issues, Huawei fails to allege any common facts or overlap between these products or the markets they are sold to, and the corresponding products or markets of Harris's infringement accusations.  Motion at 4.  Huawei merely alleges that the patents are all related to "networking arrangements and communications."  *Id*.  In short, there are no identified factual issues in common between claim construction, infringement, validity, or damages for Harris's Asserted Patents and Huawei's Counterclaim patents.  There are no identified common witnesses, evidence, or claim terms to be construed.  Accordingly, there are no issues that could be reduced or avoided by treating the groups of patents together.

      **B.**      **Huawei has not identified any practical benefit to litigating the two cases together other than distraction from and limitation of Harris's claims.**

Huawei fails to support its conclusory assertion that proceeding under a common schedule will "reduce costs" or promote efficiency.  Motion at 3-4.  Indeed, because there is no overlap of issues, there is no reason to expect that Huawei's counterclaims will not simply

double the parties' collective need for access to judicial and factfinder resources to resolve all of the issues and claims.  Huawei's only alleged justification for treating the indisputably distinct allegations together in one hearing or trial, rather than two hearings or trials, is Huawei's stated hope that the additional issues derived from its counterclaims will force Harris to drop aspects of its claims in order to fit them within the briefing pages, hearing time, or trial days allotted to one case instead of two.  *Id.* at 4-5.  Put another way, Huawei expects that access to judicial and factfinder resources will not double if the two cases proceed together, and so merely by asserting counterclaims it will have reduced Harris's ability to fairly litigate and try its own claims.

Harris fully expects that both its claims, and Huawei's counterclaims, will be narrowed through the course of discovery, claim construction, and dispositive motions—in the ordinary course according to the established procedures of this Court, with which both sides' counsel are well familiar.  Huawei's attempt to apply *further* narrowing pressure through the untimely assertion and proposed joint treatment of disparate counterclaims should be rejected as prejudicial.

In addition, Huawei's proposed combined schedule prejudices Harris even with respect to the Counterclaims alone, by denying Harris time to investigate and prepare defenses.  Huawei has known of Harris's specific patent infringement counts and dozens of Accused Products since October 24, 2018 when the original Complaint was filed.  Harris has known of Huawei's specific patent infringement assertions and accused products for less than three weeks.  Yet under Huawei's proposed common schedule, Harris would have to serve Invalidity Contentions less than six weeks after Huawei does.  *See* Dkt. 60-1 at 4.  Defendants in this district under this Court's procedures are not asked to proceed so quickly.  Because Harris had no prior notice of the Counterclaims, and because they assert completely factually distinct claims and raise

separate issues, Harris is in the same position as if the Counterclaims were a newly filed Complaint.[3]

Huawei's voluntary early service of contentions or disclosures, as well as its stated willingness to enter claim construction days after seeing Harris's contentions (*see* Motion at 3), fail to cure the burden it seeks to impose on Harris by compressing the ordinary early course of what is (in practical effect) a completely separate litigation. In addition, the compressed proposed schedule fails to allow time to address, and exacerbates the harm from, any deficiencies in Huawei's contentions, disclosures, or document productions. Huawei also does not mention or address the shortened period for fact discovery before claim construction that arises under its proposal with respect to the Counterclaim patents, a shortened period that would now need to accommodate discovery related to twelve patents instead of seven. The additional claims, as well as the different accused products, will likely also require that the parties negotiate new discovery limits and Protective Order provisions, whether the Counterclaims are severed or not. The need to do so immediately, whilst also preparing contentions and disclosures under Huawei's compressed proposed schedule, only increases the harm to Harris.

Huawei fails to identify any practical benefit to its proposal. Any logistical efficiency from proceedings in the same Court, with the same counsel, could just as easily be realized with Huawei's infringement Counterclaims trailing in a separate schedule or action. But the harm to

---

[3] Huawei fails to cite any authority from this district supporting litigation or trial of separate counterclaim patents together with plaintiffs' claims on the same schedule. Huawei mentions one Northern District of California case that denied a motion to sever infringement counterclaims. Motion at 4. But even there the court found that several factors favored severing. *Broadcom Corp. v. Sony Corp.*, No. SACV 16-1052-JVS (JCGx), 2016 WL 9108039, at *3-5 (N.D. Cal. Dec. 20, 2016) (noting "large factual differences," and the need for "different evidence and witnesses"). The *Broadcom* court also declined to find prejudice because defendant "disclosed its intent to pursue infringement counterclaims in the parties' Rule 26(f) discussions and in pre-suit negotiations." *Id.* at *5. But Huawei provided no such notice here.

Harris from Huawei's proposal would be substantial—due to the compressed early schedule for responding, Huawei's hoped-for reduction in access to judicial and factfinder resources, and likely jury confusion of complex distinct issues at trial. *See, e.g.*, *Huawei*, 2016 WL 7191855 at *1 ("A fact-finder's understanding of one patent will not inform her understanding of the other patent.")

### III. CONCLUSION

Where there is no commonality of issues, there is no efficiency gain from forcing those issues to be discovered, briefed, heard, or tried together. Instead there is only risk of prejudice to litigants and of factfinder confusion. Plaintiff Harris respectfully requests that the Court deny the Motion and sever Huawei's counterclaims for patent infringement (Counterclaim Nos. 15-19) into a separate action. *See* Dkt. 65.

Dated: May 15, 2019

Respectfully Submitted,

By: /s/ *Corey Johanningmeier*

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
**CAPSHAW DERIEUX, LLP**
114 E. Commerce Ave.
Gladewater, TX 75467
Telephone: 903-845-5770
Email: ccapshaw@capshawlaw.com
Email: ederieux@capshawlaw.com

Henry C. Bunsow
Denise De Mory
Christina Finn
Robin Curtis
Corey Johanningmeier
Nicolas Mancuso
**BUNSOW DE MORY LLP**
701 El Camino Real
Redwood City, CA 94063

Telephone: (650) 351-7248
Facsimile: (415) 426-4744
hbunsow@bdiplaw.com
ddemory@bdiplaw.com
cfinn@bdiplaw.com
rcurtis@bdiplaw.com
cjohanningmeier@bdiplaw.com
nmancuso@bdiplaw.com

Attorneys for Plaintiff
HARRIS CORPORATION

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) with a copy of this document via the Court's CM/ECF system.

Dated:  May 15, 2019

By: /s/ *Corey Johanningmeier*
Corey Johanningmeier