**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| HARRIS CORPORATION, | ) |
|     Plaintiff / Counterclaim-Defendant, | ) ) ) No. 2:18-cv-00439-JRG |
| v. | ) ) |
| HUAWEI DEVICE USA, INC., HUAWEI DEVICE CO., LTD., HUAWEI TECHNOLOGIES USA INC., HUAWEI TECHNOLOGIES CO. LTD., and HUAWEI DEVICE (SHENZHEN) CO., LTD., | ) ) ) ) ) ) ) Jury Trial Demanded |
|     Defendants / Counterclaim-Plaintiffs. | ) ) |

**HUAWEI'S OPPOSITION TO HARRIS'S MOTION TO
<u>SEVER DEFENDANTS' INFRINGEMENT COUNTERCLAIMS</u>**

Huawei respectfully opposes Harris's Motion to Sever Huawei's Infringement Counterclaims (D.I. 65, "Mot.") because a single litigation, with a common schedule, addressing the patents covering similar technology will streamline the process, preserve judicial resources, and encourage the parties to take meaningful steps toward settlement along the way. Moreover, Harris will not be prejudiced if Huawei's counterclaims are handled on the same schedule as Harris's claims because Harris will have the full time allotted under this Court's sample docket control order to comply with P.R. 3-3 & 3-4 and all future deadlines. Indeed, the schedule proposed by Huawei (D.I. 60-1) will align Huawei's counterclaims with the existing schedule as soon as July 11, 2019, allowing for claim construction and all other deadlines to proceed on the same schedule. D.I. 60 at 2-3. Huawei is aware of no case in which the Court has severed counterclaims under the circumstances present here.

## I. Harris's and Huawei's Patent Infringement Allegations are Both Related to Networking Arrangements and Communications

Harris does not dispute that both the parties' asserted patents relate to networking arrangement and communications, or that both sets of asserted patents will involve evidence relating to the use of standardized technology by the parties' accused products. For example, Harris concedes that it accuses various types of Huawei products employing certain standards, including IEEE 802.11 Wi-Fi standards, IEEE 802.15.4 Low-Rate Wireless Personal Area Network standards, and Zigbee Alliance specifications. Mot. at 2. And Huawei's infringement contentions explain how Harris's compliance with the 3GPP LTE standard and IEEE Power over Ethernet (POE) standard infringe the asserted LTE and POE patents.

Harris argues incorrectly that "Huawei's asserted patents are subject to FRAND obligations whereas Harris's asserted patents are not." Mot. at 1, 4. While Huawei readily acknowledges that its patents are subject to FRAND obligations, Harris ignores its own

contentions in arguing that its patents are not. Indeed, Harris itself states that "***Huawei's advertised compliance*** with certain ***IEEE 802.11 Wi-Fi standard amendments***, as well as ***IEEE 802.15.4 Low-Rate Wireless Personal Area Network standards*** and ***Zigbee Alliance specifications***, provisions of which are implicated in infringement here." Mot. at 2 (emphasis added). Harris does not explain its facially inconsistent positions that (1) Huawei's products allegedly infringe Harris's patents by practicing various standards, and (2) Harris's patents are not essential to those standards. Because the parties are both asserting standard-related patents, they both implicate common damages issues and will involve similar issues, including the manner in which the standards bodies' intellectual property rights policies apply, how FRAND damages are to be calculated, and the appropriate FRAND rate in this case.[1]

Rather than acknowledge this commonality, Harris cites instead to *Huawei Technologies Co. v. T-Mobile US, Inc.*, No. 2:16-cv-52-JRG-RSP, 2016 WL 7191855 (E.D. Tex. July 11, 2016) as allegedly supporting its position in this case. But *T-Mobile* involved very distinct facts not present here. First, the party bringing the second set of claims in *T-Mobile* was not the defendant (T-Mobile), but was an intervening third party (Nokia) attempting to inject new patents into the litigation. *Id*. at *1. Second, there were in fact four different *T-Mobile* cases at issue, with a collective fourteen patents asserted by Huawei across those cases. *Id*. at *2. And third-party Nokia was attempting to inject an additional nine claims of patent infringement across them.[2] In comparison to the twenty-three patents that would have been at issue in the *T-*

---

[1] Moreover, Harris attempts to shift the burden in its opening brief, accusing Huawei of failing to allege commonality or overlap between the products accused of infringement by both Harris and Huawei. In its motion, Harris does not demonstrate that the "products" or "markets [the products] are sold to" are any different. Mot. at 4.

[2] Case No. 2:16-cv-52: Huawei asserted four patents, Nokia injected two patents; No. 2:16-cv-55: Huawei asserted four patents, Nokia injected three patents; No. 2:16-cv-56: Huawei asserted

*Mobile* cases, here there are only twelve. And as the Court is aware, typically not all the patents/claims asserted in complaints/counterclaims make it to trial. Indeed, in the *Huawei v. T-Mobile* litigation, this Court dismissed claims relating to two of the asserted patents prior to trial. *Huawei Techs.*, No. 2:16-cv-52-JRG-RSP (E.D. Tex. Sept. 25, 2017), D.I. 424 (attached as Ex. 13). Four days later, this Court continued the trial in that case because the Court determined that too few patents were left in suit to justify a trial on just that action. *Id.*, Sept. 29, 2017 Transcript at 41-42 (attached as Ex. 12); *see also id.*, D.I. 438 at 1 (Final Pretrial Conference Order) (attached as Ex. 2) (continuing trial in case no. 2:16-cv-52-JRG-RSP then consolidating that case with case no. 2:17-cv-56-JRG-RSP for later trial). Ultimately, the Court severed third-party Nokia's counterclaims to reduce the complexity across the multiple cases that then involved twenty-three patents, not merely because the counterclaim patents related to different technology. Mot. at 7; 2016 WL 7191855, at *1.

Harris's reliance on *Intel Corp. v. Commonwealth Scientific and Industrial Research Organisation*, Nos. 6:06-cv-551 et al., 2008 WL 5378037, at *1-2 (E.D. Tex. Dec. 23, 2008) is similarly misplaced. *See* Mot. at 9. The bifurcation in *Intel* relates solely to the split for purposes of trial between substantive issues (infringement, invalidity, etc.) and damages in a case that involved the consolidation of four distinct cases involving different defendants. As the Court noted,

> While having multiple trials will always create some inefficiency, proceeding to trial on liability and damages simultaneously in this many cases with this many parties would undoubtedly confuse the issues and the jury. There are several overlapping issues relating to liability and requiring a general understanding of the technology. However, ***the issue of damages for each defendant presents numerous individualized issues and defenses. Combining the fourteen damage***

---

three patents, Nokia injected two patents; No. 2:16-cv-57: Huawei asserted three patents, Nokia injected two patents.

3

> *cases into a single trial would create the potential for undue prejudice, confusion, and ultimately inefficiency*.

*Id.* at *5 (emphasis added). No such complexity exists here.

Finally*, ROY-G-BIV* is also inapposite. In *ROY-G-BIV*, the defendant amended its pleadings "a full year after th[e] suit was initially filed" and "mere days before the parties were to file their Joint Claim Construction and Prehearing Statement on the patents originally in suit." *ROY-G-BIV Corp. v. FANUC Ltd.*, No. 2:07-cv-418-DF, 2009 WL 10677443, at *1 (E.D. Tex. April 14, 2009) (citation omitted). During that lengthy delay, claim construction discovery and briefing was completed with regard to Plaintiff's originally asserted patents. Here, Huawei's proposed schedule will align Harris's patent claims with Huawei's counterclaims by July 11, 2019, allowing for claim construction and all other deadlines to proceed on the same schedule. D.I. 60 at 2-3. Thus, no such significant delay exists.

## II. Litigating Huawei's Counterclaims Will Reduce the Judicial Burden and Promote Faster Resolution of the Issues

Litigating both Harris's and Huawei's claims for patent infringement will reduce the costs to the parties and result in greater efficiency than would two separate litigations, and the combined litigation will promote faster resolution between the parties.[3] Huawei's motivation is *not*, as Harris claims, "that the additional issues derived from its counterclaims will force Harris to drop aspects of its claims in order to fit them within the briefing pages, hearing time, or trial days allotted to one case instead of two." Mot. at 5. Instead, as Harris apparently agrees,

---

[3] Huawei objects to Harris's statement that Huawei's counterclaims were "untimely." Harris has not alleged that Huawei's counterclaims are deficient or inappropriate for any reason. At most, Harris argues that Huawei's counterclaims should be brought in a separate action. Mot. at 8. As Huawei stated in its Opposed Motion to Amend the Docket Control Order, Huawei filed its Answer and Counterclaims on April 26, 2019—before it was required to do so—in order to ensure that the parties' competing claims could be handled efficiently and without any prejudice to Harris. D.I. 60 at 1-2.

4

Huawei believes that, "in the ordinary course" (Mot. at 5) of litigating within this District, **both** parties will narrow the scope of the dispute. This narrowing is not one-sided as Harris suggests, but is a common practice that will equally affect both parties.

Harris is mistaken when it argues that "[a]ny logistical benefit from having the proceedings in the same Court, with the same counsel, could just as easily be realized with Huawei's counterclaims trailing in a separate action." Mot. at 8. Indeed, Harris fundamentally misunderstands Huawei's position that litigating both parties' infringement claims in the same suit will increase efficiency and promote settlement.

Relatedly, Harris contradicts itself throughout its Motion. Harris first claims that Huawei "has not identified any practical benefit to its proposed treatment of its Counterclaims together with and on the same schedule as Harris's claims." Mot. at 4-6. But with respect to its argument that Huawei is trying to pressure Harris to reduce issues in the dispute, Harris states that "Huawei expects that access to judicial resources will not double if the two cases proceed together . . . ." Mot. at 5. This is precisely the point—litigating Harris's and Huawei's infringement claims at the same time will reduce the burden on the Court and the parties because there will not be a need to double all of the activities across two litigations and on different—and often competing—schedules. Indeed, severing Huawei's counterclaims would result in two sets of discovery deadlines, two motions calendars, two *Markman* hearings, and two trials, creating competing deadlines, significantly increasing costs to the parties, and imposing an unnecessary burden on the Court. *See, e.g.*, *Ioane v. Spjute*, No. 1:07-CV-0620, 2016 WL 3916966, at *3 (E.D. Cal. July 19, 2016) ("As a general rule, holding multiple trials when claims could be consolidated in one trial is not conducive to judicial economy."); *Broadcom Corp. v. Sony Corp.*, No. SACV 16-1052-JVS (JCGx), 2016 WL 9108039, at *4 (C.D. Cal. Dec. 20, 2016) ("[I]f [the

Court] severs the case, then it will have to spend twice the amount of judicial resources to resolve a dispute between the same parties, who are represented by the same attorneys.").

The *Broadcom v. Sony* case is instructive. In that case, Broadcom filed suit alleging patent infringement of ten patents by Sony; Sony filed a counterclaim asserting five additional patents. *See Broadcom*, 2016 WL 9108039, at *4. In denying Broadcom's motion to sever, the Court analyzed judicial economy and rejected Broadcom's arguments that adding Sony's counterclaims would require adding new deadlines and revisiting discovery limitations, and further rejected Broadcom's argument that there was a risk of confusing the jury. *Id.* The Court ultimately determined that judicial efficiency supported denying the motion to sever since any risk of confusing the jury was premature because "there are other procedural mechanisms to address this issue" and the parties are more likely to take steps toward resolving the dispute. *Id.* These factors similarly apply here.

Harris's reliance on *Arteris* is misplaced, as that case presented a unique set of facts not present here. *See* Mot. at 8, n. 5; *Arteris S.A.S. v. Sonics, Inc.*, No. C 12–0434 SBA, 2013 WL 3052903, at * 7-8 (N.D. Cal. June 17, 2013). In particular, before the *Arteris* lawsuit, Sonics filed a patent-infringement action in which it asserted seven patents against Arteris. *Id.* at *1. In response, Arteris filed a second patent infringement action asserting two different patents. *Id.* In this second action, Sonics amended its answer and added counterclaims of infringement of the seven patents it previously asserted in the first lawsuit. *Id.* Only after Arteris voluntarily dismissed its infringement claims in the second lawsuit did the Court sever Sonics's declaratory judgment claims of Arteris's patents (in the second lawsuit) and Sonics's infringement claims that were identical to the first lawsuit. *Id.* at *6-7. These unique circumstances do not exist here.

6

Finally, jointly litigating both parties' claims will promote earlier settlement. "[L]ogic dictates that holding two trials, as opposed to one, will inevitably cause delay in resolution" of the parties' disputes. *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992).

## III.  Harris Will Not Be Prejudiced by Trying the Parties' Claims Together

Harris will not be prejudiced by Huawei's proposed amended schedule because it will be given the full period to provide its invalidity contentions, and all other subsequent deadlines have already been approved by the Court. *See* D.I. 45. Harris concedes in its opening brief that it "is in the same position as if the Counterclaims were a newly filed Complaint" (Mot. 5-6), yet Harris's arguments here suggest that it wants something more than that. As proposed by Huawei (D.I. 60-1 at 4), Harris will have the same amount of time (56 days) to serve its P.R. 3-3 & 3-4 invalidity contentions after receipt of Huawei's P.R. 3-1 & 3-2 infringement contentions[4] as Huawei had with respect to Harris's asserted patents. Notably, although 56 days is the standard time provided under the Court's sample docket control order, this *exceeds* the 45-day period prescribed by P.R. 3-1 & 3-2. *See* P.R. 3-3 (requiring a party accused of infringement to make its P.R. 3-3 and 3-4 disclosures "[n]ot later than 45 days after service upon it of the 'Disclosure of Asserted Claims and Infringement Contentions'"). Courts routinely allow a case to proceed without severing counterclaims where, as here, the inclusion of counterclaims does not disrupt the schedule, and both parties have sufficient time to satisfy their discovery obligations. *See, e.g.*, *Broadcom*, 2016 WL 9108039, at *4 (finding no prejudice and denying to sever counterclaims where trial was more than 18 months away, the close of fact discovery was nearly eleven months away, and the issues would be streamlined before trial); *Metaswitch Networks v.*

---

[4] Huawei served its P.R. 3-1 & 3-2 infringement contentions on May 13, 2019. *See* D.I. 64.

*Genband US LLC*, No. 2:14-cv-744-JRG (E.D. Tex. Nov. 24, 2014), D.I. 48 (Docket Control Order) (attached as Ex. 3); *Invensys Sys., Inc. v. Emerson Elec. Co.*, No. 6:12-CV-00799-JRG (E.D. Tex. Aug. 6, 2013), D.I. 58 (Docket Control Order) (attached as Ex. 4) (adding infringement counterclaims nine months after the original complaint and litigating all claims according to the same schedule).

Because Harris will have a full eight weeks to prepare its invalidity contentions, and all other deadlines are unaffected by Huawei's proposed schedule amendment, Harris argues instead that it will not have sufficient *additional* time to prepare invalidity contentions beyond the time between Huawei's filing of counterclaims and service of infringement contentions. *See* Mot. at 3. In this regard, Harris alleges that Huawei had additional time to prepare its invalidity contentions because Harris gave notice of its patents in letters prior to this litigation, and in its Complaint before it provided its infringement contentions. *Id.* Not so. Harris did not identify any claims in its pre-suit letters, and identified only a single claim per patent in its Complaint. *See* D.I. 1, ¶¶ 46, 59, 72, 86, 98, 110, 122. It was not until April 3, 2019—8 weeks before Huawei is due to serve its invalidity contentions—that Harris for the first time identified the 129 claims it is asserting. Thus, even though Huawei had been aware of Harris's high-level allegations, any prior art searching or detailed analysis before Harris served its "700 pages of claim charts" (Mot. at 3) would have been futile.

Moreover, this Court has declined to sever counterclaims in circumstances where a counterclaim defendant is given similar notice. For example, in *TiVo Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:15-cv-01503-JRG (E.D. Tex.), Samsung filed infringement counterclaims asserting patents with its Second Amended Answer on February 11, 2016 (*Id.*, D.I. 34 at 17-29 (attached as Ex. 8)), three days after the deadline for filing infringement contentions in that case. *Id.,* D.I.

8

42 at 5 (attached as Ex. 9).  In the counterclaims, Samsung alleged that TiVo had notice of the asserted patents "[b]y way of at least this Second Amended Answer."  *Id.*, D.I. 34 (attached as Ex. 8) (Counterclaims) at ¶¶ 33, 42, 51, 60.  Even though TiVo did not receive notice of Samsung's patents until February 2016, while Samsung had received notice of TiVo's patents in September 2015 (*Id.*, D.I. 1 (attached as Ex. 5)), the parties both served infringement contentions in February 2016.  *Id.*, D.I. 31, 32 (attached as Exs. 6-7), and served invalidity contentions in April of that year.  *Id.*, D.I. 57, 58 (attached as Exs. 10-11).  And although Samsung did not give notice of its asserted patents until two months before TiVo's invalidity contentions were due (and even though TiVo had given notice of its patents five months before Samsung), the Court did not sever the counterclaims or determine that the schedule was in any way unfair.

Finally, Harris makes a series of arguments for severing the counterclaims (Mot. at 6) that are unsupported and should be rejected.  First, Harris argues that the "compressed proposed schedule" exacerbates the harm from any deficiencies in Huawei's contentions, disclosures, or document productions.  Mot. at 6.  But Harris has not identified any actual deficiency in Huawei's contentions, disclosures or document productions.  The only issue Harris raises is the assertion that Huawei "appears to only cite to three Harris documents in one of the five claim charts," but this statement is misleading.  *Id.* at 6, n.4; D.I. 65-1, ¶ 4.  In fact, Huawei cited to numerous documents in the cover document of its contentions that demonstrate that the accused products practice the LTE and POE standards.  *See* Ex. 1 (P.R. 3-1 Infring. Contentions) at 4-6.  In light of this stated standards compliance in the cover document, the charts themselves include the necessary citations to the relevant portions of the LTE and POE standards.

Second, Harris's claimed "shortened period for fact discovery before claim construction" is irrelevant.  *See* Mot. at 6.  Harris does not explain how this could prejudice Harris, especially

9

since claim construction primarily relies upon intrinsic evidence, which has been addressed as part of each party's compliance with P.R. 3-2. Moreover, fact discovery is not currently set to close until January 13, 2020, and expert discovery is not set to close until February 24, 2020, giving the parties more than sufficient time to complete discovery. *See* D.I. 45.

Third, with respect to negotiation of discovery limits and the Protective Order (Mot. at 6), Harris does not identify how it will be burdened. But even if the discovery limits and the Protective Order need to be modified, the burden will be minimal and shared equally between the parties.[5]

## IV. Conclusion

Defendants respectfully request that this Court deny Harris's Motion to Sever Huawei's counterclaims.

Dated: May 24, 2019

Respectfully submitted,

*/s/ Melissa R. Smith*
Melissa R. Smith
TX State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 S. Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
melissa@gillamsmithlaw.com

---

[5] Huawei is surprised that apparently Harris believes that the Protective Order needs to be amended. To the extent that Harris believes that the assertion of patents against itself somehow requires modification to the restrictions in the Protective Order, this calls into question why these protections were not proposed previously when considering Harris's claims against Huawei. Huawei does not believe at this time that the Protective Order will require further negotiation and modification, but Huawei remains open and willing to negotiate fairly and in good faith to the extent that Harris believes that it must be modified.

James R. Batchelder
(CA Bar No. 136347, admitted to E.D. Tex.)
James L. Davis, Jr.
(CA Bar No. 304830, admitted to E.D. Tex.)
Andrew T. Radsch
(CA Bar No. 303665, admitted to E.D. Tex.)
Christopher M. Bonny
(CA Bar No. 280554, admitted to E.D. Tex.)
**ROPES & GRAY LLP**
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303-2284
Telephone: (650) 617-4000
Facsimile: (650) 617-4090
james.batchelder@ropesgray.com
james.l.davis@ropesgray.com
andrew.radsch@ropesgray.com
christopher.bonny@ropesgray.com

Kevin J. Post
(NY Bar No. 4382214, admitted to E.D. Tex.)
Alexander E. Middleton
(NY Bar No. 4797114, admitted to E.D. Tex.)
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
kevin.post@ropesgray.com
alexander.middleton@ropesgray.com

*Attorneys for Defendants-Counterclaimants*
HUAWEI DEVICE USA, INC.,
HUAWEI DEVICE CO., LTD.,
HUAWEI TECHNOLOGIES USA INC.,
HUAWEI TECHNOLOGIES CO. LTD., and
HUAWEI DEVICE (SHENZHEN) CO., LTD.

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 24th day of May, 2019, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Melissa R. Smith*
Melissa R. Smith