**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| HARRIS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 2:18-cv-00439-JRG |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| HUAWEI DEVICE USA, INC., HUAWEI | ) | |
| DEVICE CO., LTD., HUAWEI | ) | |
| TECHNOLOGIES USA INC., HUAWEI | ) | |
| TECHNOLOGIES CO. LTD., AND | ) | |
| HUAWEI DEVICE (SHENZHEN) CO., | ) | |
| LTD. | ) | |
| | ) | |
| Defendants. | ) | |

**HARRIS CORPORATION'S ANSWER, AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS TO HUAWEI'S COUNTERCLAIMS**

Plaintiff Harris Corporation ("Harris") hereby responds to Defendants Huawei Device

USA, Inc. ("Huawei USA"), Huawei Device Co. Ltd. ("Huawei Device"), Huawei Technologies

USA Inc. ("HTUS"), Huawei Technologies Co. Ltd. ("Huawei Technologies"), and Huawei

Device (Shenzhen) Co. Ltd.'s ("Huawei Shenzhen") (collectively, "Huawei" or "Defendants")

counterclaims (Dkt. 56) as follows:

**NATURE OF ACTION**

1. To the extent a response to paragraph 1 is required, Harris admits that Huawei's

counterclaims purport to seek the stated relief.

**PARTIES**

2. Harris, on information and belief, admits the allegations in paragraph 2.

3.      Harris is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 and therefore denies the same.

4.      Harris is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 and therefore denies the same.

5.      Harris is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 and therefore denies the same.

6.      In response to paragraph 6, Harris admits that, on information and belief, Huawei Technologies is a member of ETSI and 3GPP. Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 6 and therefore denies the same.

7.      Harris is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 and therefore denies the same.

8.      Admitted.

## JURISDICTION AND VENUE

9.      In response to paragraph 9, Harris admits that Huawei's counterclaims allege claims that purport to invoke this Court's subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.  Harris denies that Huawei is entitled to any relief.  Except as expressly admitted, Harris denies the remaining allegations of paragraph 9.

10.      In response to paragraph 10, Harris responds that it will not challenge personal jurisdiction for purposes of this action only.  Except as expressly admitted, Harris denies the remaining allegations of paragraph 10.

11.     In response to paragraph 11, Harris responds that it will not challenge venue for purposes of this action only.  Except as expressly admitted, Harris denies the remaining allegations of paragraph 11.

## HUAWEI PATENTS

12.     In response to paragraph 12, Harris admits that Exhibit 1 filed at Dkt. 57-1 purports to be a true and correct copy of United States Reissue Patent No. RE44,325 ("the '325 Patent"), titled "Method of Providing a Remote Power Feed to a Terminal in a Local Area Network, and Corresponding Remote Power Feed Unit, Concentrator, Repeater, and Terminal." Harris admits that the copy of the '325 Patent attached as Exhibit 1 states on its face that it was issued by the USPTO on June 25, 2013.  Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 12, and therefore denies the same.

13.     The allegations in this paragraph contain legal conclusions that require no answer. To the extent an answer is required, Harris denies the allegations of paragraph 13.

14.     The allegations in this paragraph contain legal conclusions that require no answer. To the extent the allegations in this paragraph quote from the '325 Patent, Harris responds that the patent is the best source of the full content and denies the allegations to the extent they do not accurately represent the patent's full content and context.  To the extent any further answer is required, Harris denies the allegations of paragraph 14.

15.     In response to paragraph 15, Harris admits that Exhibit 2, filed at Dkt. 57-2, purports to be a true and correct copy of United States Patent No. 8,416,892 ("the '892 Patent"), titled "Method and apparatus of transmitting a random access preamble."  Harris admits that the copy of the '892 Patent attached as Exhibit 2 states on its face that it was issued by the USPTO

on April 9, 2013 and that Huawei Technologies was the original Assignee.  Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 15, and therefore denies the same.

16.     The allegations in this paragraph contain legal conclusions that require no answer. To the extent an answer is required, Harris denies the allegations of paragraph 16.

17.     The allegations in this paragraph contain legal conclusions that require no answer. To the extent the allegations in this paragraph quote from the '892 Patent, Harris responds that the patent is the best source of the full content and denies the allegations to the extent they do not accurately represent the patent's full content and context.  To the extent any further answer is required, Harris denies the allegations of paragraph 17.

18.     The allegations in this paragraph contain legal conclusions that require no answer. To the extent the allegations in this paragraph quote from the '892 Patent, Harris responds that the patent is the best source of the full content and denies the allegations to the extent they do not accurately represent the patent's full content and context.  To the extent any further answer is required, Harris denies the allegations of paragraph 18.

19.     In response to paragraph 19, Harris admits that Exhibit 3, filed at Dkt. 57-3, purports to be a true and correct copy of United States Patent No. 8,798,575 ("the '575 Patent"), titled "Method for improving service data flow based charging and system thereof."  Harris admits that the '575 Patent attached as Exhibit 3 states on its face that it was issued by the USPTO on August 5, 2014 and that Huawei Technologies was the original assignee. Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 19, and therefore denies the same.

20.     The allegations in this paragraph contain legal conclusions that require no answer. To the extent an answer is required, Harris denies the allegations of paragraph 20.

21.     The allegations in this paragraph contain legal conclusions that require no answer. To the extent the allegations in this paragraph quote from the '575 Patent, Harris responds that the patent is the best source of the full content and denies the allegations to the extent they do not accurately represent the patent's full content and context. To the extent any further answer is required, Harris denies the allegations of paragraph 21.

22.     The allegations in this paragraph contain legal conclusions that require no answer. To the extent the allegations in this paragraph quote from the '575 Patent, Harris responds that the patent is the best source of the full content and denies the allegations to the extent they do not accurately represent the patent's full content and context. To the extent any further answer is required, Harris denies the allegations of paragraph 22.

23.     The allegations in this paragraph contain legal conclusions that require no answer. To the extent the allegations in this paragraph quote from the '575 Patent, Harris responds that the patent is the best source of the full content and denies the allegations to the extent they do not accurately represent the patent's full content and context. To the extent any further answer is required, Harris denies the allegations of paragraph 23.

24.     In response to paragraph 24, Harris responds that Exhibit 4, filed as Dkt. 57-4, purports to be a true and correct copy of United States Patent No. 9,838,851 ("the '851 Patent"), titled "Subframe Processing Method and Device." Harris admits that the '851 Patent attached as Exhibit 4 states on its face that it was issued by the USPTO on December 5, 2017 and that Huawei Technologies was the original assignee. Harris is without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations of paragraph 24, and therefore denies the same.

25.     The allegations in this paragraph contain legal conclusions that require no answer. To the extent an answer is required, Harris denies the allegations of paragraph 25.

26.     The allegations in this paragraph contain legal conclusions that require no answer. To the extent the allegations in this paragraph quote from the '851 Patent, Harris responds that the patent is the best source of the full content and denies the allegations to the extent they do not accurately represent the patent's full content and context.  To the extent any further answer is required, Harris denies the allegations of paragraph 26.

27.     The allegations in this paragraph contain legal conclusions that require no answer. To the extent the allegations in this paragraph quote from the '851 Patent, Harris responds that the patent is the best source of the full content and denies the allegations to the extent they do not accurately represent the patent's full content and context.  To the extent any further answer is required, Harris denies the allegations of paragraph 27.

28.     The allegations in this paragraph contain legal conclusions that require no answer. To the extent the allegations in this paragraph quote from the '851 Patent, Harris responds that the patent is the best source of the full content and denies the allegations to the extent they do not accurately represent the patent's full content and context.  To the extent any further answer is required, Harris denies the allegations of paragraph 28.

29.     The allegations in this paragraph contain legal conclusions that require no answer. To the extent the allegations in this paragraph quote from the '851 Patent, Harris responds that the patent is the best source of the full content and denies the allegations to the extent they do

not accurately represent the patent's full content and context.  To the extent any further answer is required, Harris denies the allegations of paragraph 29.

30.     In response to paragraph 30, Harris responds that Exhibit 5, filed at Dkt. 57-5, purports to be a true and correct copy of United States Patent No. 10,117,226 ("the '226 Patent"), titled "Method, Apparatus, and System for Transmission Control of Multimedia Broadcast Multicast Service Data."  Harris admits that the '226 patent as attached at Exhibit 5 states on its face that it was issued by the USPTO on Oct. 30, 2018 and that the original assignee was Huawei Technologies.  Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 24, and therefore denies the same.

31.     The allegations in this paragraph contain legal conclusions that require no answer. To the extent an answer is required, Harris denies the allegations of paragraph 31.

32.     The allegations in this paragraph contain legal conclusions that require no answer. To the extent the allegations in this paragraph quote from the '226 Patent, Harris responds that the patent is the best source of the full content and denies the allegations to the extent they do not accurately represent the patent's full content and context.  To the extent any further answer is required, Harris denies the allegations of paragraph 32.

33.     The allegations in this paragraph contain legal conclusions that require no answer. To the extent the allegations in this paragraph quote from the '226 Patent, Harris responds that the patent is the best source of the full content and denies the allegations to the extent they do not accurately represent the patent's full content and context.  To the extent any further answer is required, Harris denies the allegations of paragraph 33.

34.     The allegations in this paragraph contain legal conclusions that require no answer. To the extent the allegations in this paragraph quote from the '226 Patent, Harris responds that the patent is the best source of the full content and denies the allegations to the extent they do not accurately represent the patent's full content and context.  To the extent any further answer is required, Harris denies the allegations of paragraph 34.

35.     The allegations in this paragraph contain legal conclusions that require no answer. To the extent the allegations in this paragraph quote from the '226 Patent, Harris responds that the patent is the best source of the full content and denies the allegations to the extent they do not accurately represent the patent's full content and context.  To the extent any further answer is required, Harris denies the allegations of paragraph 35.

36.     Harris denies that Huawei has offered a license to the Huawei Asserted Patents on fair, reasonable, and non-discriminatory terms.  Harris admits that on December 5, 2018 and December 21, 2018, Huawei sent Harris's licensing representative a presentation stating that Huawei had unidentified patents relating to LTE and Power over Ethernet and including no information about offered license terms.  Harris admits that on December 21, 2018, Huawei identified certain Huawei patents to Harris's licensing representative, including only one of the Huawei Asserted Patents.  Harris admits that on March 31, 2019, Huawei sent a letter to Harris stating that a worldwide FRAND license would be available but included no information about offered license terms.  Harris responded to the March 31, 2019 letter on April 3, 2019 in conjunction with communication about Harris's patents and further stated a willingness to include discussion of Huawei's patents in ongoing discussions.  Harris further arranged a phone call with Huawei representatives and further responded on April 12, 2019 that Harris would provide more details concerning Huawei's March 31, 2019 letter.  On April 22, 2019, Harris

emailed Huawei to ask if they could set up a call that week.  Huawei did not respond.  Instead,

Huawei asserted its counterclaims for infringement on April 26, 2019 despite Harris's good

faith responses and without having communicated specific offered license terms.  To the extent

not expressly admitted, Harris denies the allegations of paragraph 36.

## HARRIS'S ALLEGEDLY INFRINGING PRODUCTS AND ACTIVITIES

37.     Harris admits that it has produced for certain worldwide markets the Harris RF-

7800W-IU200 Network Interface Unit, the Harris RF-7800W-PS104 Rugged Power Supply,

and the Harris Falcon III RF-7850A-TM001 Roll-on/Roll-off Airborne System.  Harris further

responds that this paragraph contains legal conclusions that require no answer and/or language

that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and

as a result, Harris is without knowledge or information sufficient to form a belief as to the truth

of the remaining allegations in paragraph 37 and therefore denies the same.

38.     To the extent the allegations in this paragraph quote from or characterize the

referenced documents, Harris responds that the documents are the best source of the full content

and denies the allegations to the extent they do not accurately represent the documents' full

content and context.  This paragraph further contains language that is vague, ambiguous,

undefined and/or susceptible to multiple different interpretations, and as a result, Harris is

without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 38 and therefore denies the same.

39.     To the extent the allegations in this paragraph quote from or characterize the

referenced documents, Harris responds that the documents are the best source of the full content

and denies the allegations to the extent they do not accurately represent the documents' full

content and context.  This paragraph further contains language that is vague, ambiguous,

undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 39 and therefore denies the same.

40.     Harris is without knowledge or information sufficient to form a belief as to the truth of certain allegations in paragraph 40 and therefore denies the same.  Harris further responds that this paragraph contains legal conclusions that require no answer and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 40 and therefore denies the same.

41.     Harris admits that it has produced for certain worldwide markets certain products that may, in certain configurations, communicate with an LTE communications network.  Harris further responds that this paragraph contains legal conclusions that require no answer and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 41 and therefore denies the same.

42.     Harris admits that it has produced for certain worldwide markets certain products that may, in certain configurations, communicate with an LTE communications network.  Harris further responds that to the extent the allegations in this paragraph quote from or characterize the referenced documents, Harris responds that the documents are the best source of the full content and denies the allegations to the extent they do not accurately represent the documents' full content and context.  This paragraph further contains legal conclusions that require no answer and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient

to form a belief as to the truth of the remaining allegations in paragraph 42 and therefore denies the same.

## FIRST COUNTERCLAIM
## (ALLEGED DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '227 PATENT)

43.     Harris realleges and incorporates by reference the responses in the foregoing paragraphs.

44.     Harris admits that it has accused various Huawei products of infringing the '227 Patent.  To the extent the allegations in this paragraph quote from the Amended Complaint or Harris' Infringement Contentions, Harris responds that those documents are the best source of the full content and denies the allegations to the extent they do not accurately represent the documents' full content and context.

45.     Denied.

46.     Admitted.

47.     Harris admits that Huawei purports to seek entry of a declaratory judgment that it does not infringe any asserted claim of the '227 Patent; Harris otherwise denies the allegations in paragraph 47.

## SECOND COUNTERCLAIM
## (ALLEGED DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '986 PATENT)

48.     Harris realleges and incorporates by reference the responses in the foregoing paragraphs.

49.     Harris admits that it has accused various Huawei products of infringing the '986 Patent.  To the extent the allegations in this paragraph quote from the Amended Complaint or Harris' Infringement Contentions, Harris responds that those documents are the best source of

the full content and denies the allegations to the extent they do not accurately represent the documents' full content and context.

50.     Denied.

51.     Admitted.

52.     Harris admits that Huawei purports to seek entry of a declaratory judgment that it does not infringe any asserted claim of the '986 Patent; Harris otherwise denies the allegations in paragraph 52.

### THIRD COUNTERCLAIM
### (ALLEGED DECLARATORY JUDGMENT OF NON-INFRINGEMENT
### OF THE '537 PATENT)

53.     Harris realleges and incorporates by reference the responses in the foregoing paragraphs.

54.     Harris admits that it has accused various Huawei products of infringing the '537 Patent.  To the extent the allegations in this paragraph quote from the Amended Complaint or Harris' Infringement Contentions, Harris responds that those documents are the best source of the full content and denies the allegations to the extent they do not accurately represent the documents' full content and context.

55.     Denied.

56.     Admitted.

57.     Harris admits that Huawei purports to seek entry of a declaratory judgment that it does not infringe any asserted claim of the '537 Patent; Harris otherwise denies the allegations in paragraph 57.

## FOURTH COUNTERCLAIM
### (ALLEGED DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '426 PATENT)

58.     Harris realleges and incorporates by reference the responses in the foregoing paragraphs.

59.     Harris admits that it has accused various Huawei products of infringing the '426 Patent.  To the extent the allegations in this paragraph quote from the Amended Complaint or Harris' Infringement Contentions, Harris responds that those documents are the best source of the full content and denies the allegations to the extent they do not accurately represent the documents' full content and context.

60.     Denied.

61.     Admitted.

62.     Harris admits that Huawei purports to seek entry of a declaratory judgment that it does not infringe any asserted claim of the '426 Patent; Harris otherwise denies the allegations in paragraph 62.

## FIFTH COUNTERCLAIM
### (ALLEGED DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '678 PATENT)

63.     Harris realleges and incorporates by reference the responses in the foregoing paragraphs.

64.     Harris admits that it has accused various Huawei products of infringing the '678 Patent.  To the extent the allegations in this paragraph quote from the Amended Complaint or Harris' Infringement Contentions, Harris responds that those documents are the best source of the full content and denies the allegations to the extent they do not accurately represent the documents' full content and context.

65.     Denied.

66.     Admitted.

67.     Harris admits that Huawei purports to seek entry of a declaratory judgment that it does not infringe any asserted claim of the '678 Patent; Harris otherwise denies the allegations in paragraph 67.

## SIXTH COUNTERCLAIM
## (ALLEGED DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '690 PATENT)

68.     Harris realleges and incorporates by reference the responses in the foregoing paragraphs.

69.     Harris admits that it has accused various Huawei products of infringing the '690 Patent.  To the extent the allegations in this paragraph quote from the Amended Complaint or Harris' Infringement Contentions, Harris responds that those documents are the best source of the full content and denies the allegations to the extent they do not accurately represent the documents' full content and context.

70.     Denied.

71.     Admitted.

72.     Harris admits that Huawei purports to seek entry of a declaratory judgment that it does not infringe any asserted claim of the '690 Patent; Harris otherwise denies the allegations in paragraph 72.

## SEVENTH COUNTERCLAIM
## (ALLEGED DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '572 PATENT)

73.     Harris realleges and incorporates by reference the responses in the foregoing paragraphs.

74.     Harris admits that it has accused various Huawei products of infringing the '572 Patent.  To the extent the allegations in this paragraph quote from the Amended Complaint or Harris' Infringement Contentions, Harris responds that those documents are the best source of the full content and denies the allegations to the extent they do not accurately represent the documents' full content and context.

75.     Denied.

76.     Admitted.

77.     Harris admits that Huawei purports to seek entry of a declaratory judgment that it does not infringe any asserted claim of the '572 Patent; Harris otherwise denies the allegations in paragraph 77.

**EIGHTH COUNTERCLAIM**
**(ALLEGED DECLARATORY JUDGMENT OF INVALIDITY OF THE '227 PATENT)**

78.     Harris realleges and incorporates by reference the responses in the foregoing paragraphs.

79.     Denied.

80.     Denied.

81.     Admitted.

82.     Harris admits that Huawei purports to seek entry of a declaratory judgment that the asserted claims of the '227 Patent are invalid; Harris otherwise denies the allegations in paragraph 82.

**NINTH COUNTERCLAIM**
**(ALLEGED DECLARATORY JUDGMENT OF INVALIDITY OF THE '986 PATENT)**

83.     Harris realleges and incorporates by reference the responses in the foregoing paragraphs.

84.     Denied.

85.     Denied.

86.     Admitted.

87.     Harris admits that Huawei purports to seek entry of a declaratory judgment that the asserted claims of the '986 Patent are invalid; Harris otherwise denies the allegations in paragraph 87.

**TENTH COUNTERCLAIM**
**(ALLEGED DECLARATORY JUDGMENT OF INVALIDITY OF THE '537 PATENT)**

88.     Harris realleges and incorporates by reference the responses in the foregoing paragraphs.

89.     Denied.

90.     Denied.

91.     Admitted.

92.     Harris admits that Huawei purports to seek entry of a declaratory judgment that the asserted claims of the '537 Patent are invalid; Harris otherwise denies the allegations in paragraph 92.

**ELEVENTH COUNTERCLAIM**
**(ALLEGED DECLARATORY JUDGMENT OF INVALIDITY OF THE '426 PATENT)**

93.     Harris realleges and incorporates by reference the responses in the foregoing paragraphs.

94.     Denied.

95.     Denied.

96.     Admitted.

97.     Harris admits that Huawei purports to seek entry of a declaratory judgment that the asserted claims of the '426 Patent are invalid; Harris otherwise denies the allegations in paragraph 97.

## TWELFTH COUNTERCLAIM
## (ALLEGED DECLARATORY JUDGMENT OF INVALIDITY OF THE '678 PATENT)

98.     Harris realleges and incorporates by reference the responses in the foregoing paragraphs.

99.     Denied.

100.    Denied.

101.    Admitted.

102.    Harris admits that Huawei purports to seek entry of a declaratory judgment that the asserted claims of the '678 Patent are invalid; Harris otherwise denies the allegations in paragraph 102.

## THIRTEENTH COUNTERCLAIM
## (ALLEGED DECLARATORY JUDGMENT OF INVALIDITY OF THE '690 PATENT)

103.    Harris realleges and incorporates by reference the responses in the foregoing paragraphs.

104.    Denied.

105.    Denied.

106.    Admitted.

107.    Harris admits that Huawei purports to seek entry of a declaratory judgment that the asserted claims of the '690 Patent are invalid; Harris otherwise denies the allegations in paragraph 107.

## FOURTEENTH COUNTERCLAIM
## (ALLEGED DECLARATORY JUDGMENT OF INVALIDITY OF THE '572 PATENT)

108.   Harris realleges and incorporates by reference the responses in the foregoing paragraphs.

109.   Denied.

110.   Denied.

111.   Admitted.

112.   Harris admits that Huawei purports to seek entry of a declaratory judgment that the asserted claims of the '572 Patent are invalid; Harris otherwise denies the allegations in paragraph 112.

## FIFTEENTH COUNTERCLAIM
## (ALLEGED INFRINGEMENT OF U.S. REISSUE PATENT NO. RE44,325)

113.   Harris realleges and incorporates by reference the responses in the foregoing paragraphs.

114.   Harris admits that it has produced for certain worldwide markets the Harris RF-7800W-IU200 Network Interface Unit, the Harris RF-7800W-PS104 Rugged Power Supply, and the Harris Falcon III RF-7850A-TM001 Roll-on/Roll-off Airborne System.  Harris further responds that this paragraph contains legal conclusions that require no answer and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 114 and therefore denies the same.  To the extent an answer is required, Harris denies the remaining allegations of this paragraph.

115.   To the extent the allegations in this paragraph quote from or characterize the referenced documents, Harris responds that the documents are the best source of the full content

and denies the allegations to the extent they do not accurately represent the documents' full content and context.  This paragraph further contains legal conclusions that require no answer and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 115 and therefore denies the same.  To the extent an answer is required, Harris denies the remaining allegations of this paragraph.

116.    To the extent the allegations in this paragraph quote from or characterize the referenced documents, Harris responds that the documents are the best source of the full content and denies the allegations to the extent they do not accurately represent the documents' full content and context.  This paragraph further contains legal conclusions that require no answer and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 116 and therefore denies the same.  To the extent an answer is required, Harris denies the remaining allegations of this paragraph.

117.    To the extent the allegations in this paragraph quote from or characterize the referenced documents, Harris responds that the documents are the best source of the full content and denies the allegations to the extent they do not accurately represent the documents' full content and context.  This paragraph further contains legal conclusions that require no answer and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 117 and therefore denies the

same.  To the extent an answer is required, Harris denies the remaining allegations of this paragraph.

118.     To the extent the allegations in this paragraph quote from or characterize the referenced documents, Harris responds that the documents are the best source of the full content and denies the allegations to the extent they do not accurately represent the documents' full content and context.  This paragraph further contains legal conclusions that require no answer and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 118 and therefore denies the same.  To the extent an answer is required, Harris denies the remaining allegations of this paragraph.

119.     This paragraph contains legal conclusions that require no answer.  To the extent an answer is required, Harris responds as follows:  Denied

120.     This paragraph contains legal conclusions that require no answer.  To the extent an answer is required, Harris responds as follows:  Denied.

121.     This paragraph contains legal conclusions that require no answer.  To the extent an answer is required, Harris responds as follows:  Denied.

122.     This paragraph contains legal conclusions that require no answer.  To the extent an answer is required, Harris responds as follows:  Denied.

123.     Harris admits that on December 5, 2018, Huawei sent Harris's licensing representative a presentation stating that Huawei had unidentified patents relating to Power over Ethernet.  This paragraph contains legal conclusions that require no answer.  To the extent an answer is required, Harris denies the allegations of this paragraph.

124.     This paragraph contains legal conclusions that require no answer.  To the extent

an answer is required, Harris responds as follows:  Denied.

125.     Harris admits that Huawei purports to seek recovery of monetary damages

through this action.  Otherwise Harris denies the allegations in paragraph 125.

## SIXTEENTH COUNTERCLAIM
## (ALLEGED INFRINGEMENT OF U.S. PATENT NO. 8,416,892)

126.     Harris realleges and incorporates by reference the responses in the foregoing

paragraphs.

127.     Harris admits that it has produced for certain worldwide markets products

designated XL-185M, XL-185P, RF3590, and XL-200P.  Harris further responds that this

paragraph contains legal conclusions that require no answer and/or language that is vague,

ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result,

Harris is without knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in paragraph 127 and therefore denies the same.  To the extent an answer

is required, Harris denies the remaining allegations of this paragraph.

128.     To the extent the allegations in this paragraph quote from or characterize the

referenced documents, Harris responds that the documents are the best source of the full content

and denies the allegations to the extent they do not accurately represent the documents' full

content and context.  This paragraph further contains legal conclusions that require no answer

and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different

interpretations, and as a result, Harris is without knowledge or information sufficient to form a

belief as to the truth of the remaining allegations in paragraph 128 and therefore denies the

same.  To the extent an answer is required, Harris denies the allegations of this paragraph.

129.     To the extent the allegations in this paragraph quote from or characterize the referenced documents, Harris responds that the documents are the best source of the full content and denies the allegations to the extent they do not accurately represent the documents' full content and context.  This paragraph further contains legal conclusions that require no answer and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 129 and therefore denies the same.  To the extent an answer is required, Harris denies the allegations of this paragraph.

130.     This paragraph contains legal conclusions that require no answer.  To the extent an answer is required, Harris responds as follows:  Denied.

131.     This paragraph contains legal conclusions that require no answer.  To the extent an answer is required, Harris responds as follows:  Denied.

132.     To the extent the allegations in this paragraph quote from or characterize the referenced documents, Harris responds that the documents are the best source of the full content and denies the allegations to the extent they do not accurately represent the documents' full content and context.  This paragraph further contains legal conclusions that require no answer and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 132 and therefore denies the same.  To the extent an answer is required, Harris denies the allegations of this paragraph.

133.     This paragraph contains legal conclusions that require no answer.  To the extent an answer is required, Harris responds as follows:  Denied.

134.    Harris admits that on December 5, 2018, Huawei sent Harris's licensing representative a presentation stating that Huawei had unidentified patents relating to LTE.  This paragraph contains legal conclusions that require no answer and/or allegations for which Harris is without knowledge or information sufficient to form a belief as to truth and therefore denies the allegations.  To the extent an answer is required, Harris denies the allegations of this paragraph.

135.    This paragraph contains legal conclusions that require no answer.  To the extent an answer is required, Harris responds as follows:  Denied.

136.    Harris admits that Huawei purports to seek recovery of monetary damages through this action.  Otherwise Harris denies the allegations in paragraph 136.

**SEVENTEENTH COUNTERCLAIM**
**(ALLEGED INFRINGEMENT OF U.S. PATENT NO. 8,798,575)**

137.    Harris realleges and incorporates by reference the responses in the foregoing paragraphs.

138.    Harris denies that it produces or sells products designated as "Evolved Packet Cores."  Harris is without knowledge or information sufficient to form a belief as to whether Cisco Packet Data Network (PDN) Gateway (P-GW) products or other third-party products practice and comply with the LTE standard.  Harris further responds that this paragraph contains legal conclusions that require no answer and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 138 and therefore denies the same.  To the extent an answer is required, Harris denies the allegations of this paragraph.

139.     To the extent the allegations in this paragraph quote from or characterize the referenced documents, Harris responds that the documents are the best source of the full content and denies the allegations to the extent they do not accurately represent the documents' full content and context.  This paragraph further contains legal conclusions that require no answer and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 139 and therefore denies the same.  To the extent an answer is required, Harris denies the allegations of this paragraph.

140.     This paragraph contains legal conclusions that require no answer.  To the extent an answer is required, Harris responds as follows:  Denied.

141.     This paragraph contains legal conclusions that require no answer.  To the extent an answer is required, Harris responds as follows:  Denied.

142.     To the extent the allegations in this paragraph quote from or characterize the referenced documents, Harris responds that the documents are the best source of the full content and denies the allegations to the extent they do not accurately represent the documents' full content and context.  This paragraph further contains legal conclusions that require no answer and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 142 and therefore denies the same.  To the extent an answer is required, Harris denies the allegations of this paragraph.

143.     This paragraph contains legal conclusions that require no answer.  To the extent an answer is required, Harris responds as follows:  Denied.

144.    Harris denies that Huawei sent it an email on December 5, 2012.  Harris admits that on December 5, 2018, Huawei sent Harris's licensing representative a presentation stating that Huawei had unidentified patents relating to LTE.  This paragraph contains legal conclusions that require no answer and/or allegations for which Harris is without knowledge or information sufficient to form a belief as to truth and therefore denies the allegations.  To the extent an answer is required, Harris denies the allegations of this paragraph.

145.    This paragraph contains legal conclusions that require no answer.  To the extent an answer is required, Harris responds as follows:  Denied.

146.    Harris admits that Huawei purports to seek recovery of monetary damages through this action.  Otherwise Harris denies the allegations in paragraph 146.

### EIGHTEENTH COUNTERCLAIM
### (ALLEGED INFRINGEMENT OF U.S. PATENT NO. 9,838,851)

147.    Harris realleges and incorporates by reference the responses in the foregoing paragraphs.

148.    Harris admits that it has produced for certain worldwide markets certain products referred to as Tactical 4G LTE Radios.  Harris further responds that this paragraph contains legal conclusions that require no answer and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 148 and therefore denies the same.

149.    To the extent the allegations in this paragraph quote from or characterize the referenced documents, Harris responds that the documents are the best source of the full content and denies the allegations to the extent they do not accurately represent the documents' full content and context.  This paragraph further contains legal conclusions that require no answer

and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 149 and therefore denies the same.  To the extent an answer is required, Harris denies the allegations of this paragraph.

150.    To the extent the allegations in this paragraph quote from or characterize the referenced documents, Harris responds that the documents are the best source of the full content and denies the allegations to the extent they do not accurately represent the documents' full content and context.  This paragraph further contains legal conclusions that require no answer and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 150 and therefore denies the same.  To the extent an answer is required, Harris denies the allegations of this paragraph.

151.    To the extent the allegations in this paragraph quote from or characterize the referenced documents, Harris responds that the documents are the best source of the full content and denies the allegations to the extent they do not accurately represent the documents' full content and context.  This paragraph further contains legal conclusions that require no answer and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 151 and therefore denies the same.  To the extent an answer is required, Harris denies the allegations of this paragraph.

152.    This paragraph contains legal conclusions that require no answer.  To the extent an answer is required, Harris responds as follows:  Denied.

153.     This paragraph contains legal conclusions that require no answer.  To the extent an answer is required, Harris responds as follows:  Denied.

154.     To the extent the allegations in this paragraph quote from or characterize the referenced documents, Harris responds that the documents are the best source of the full content and denies the allegations to the extent they do not accurately represent the documents' full content and context.  This paragraph further contains legal conclusions that require no answer and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 154 and therefore denies the same.  To the extent an answer is required, Harris denies the allegations of this paragraph.

155.     This paragraph contains legal conclusions that require no answer.  To the extent an answer is required, Harris responds as follows:  Denied.

156.     Harris admits that on December 5, 2018, Huawei sent Harris's licensing representative a presentation stating that Huawei had unidentified patents relating to LTE. Harris further admits that on December 21, 2018, Huawei sent Harris's licensing representative a list of patents which included a listing of the '851 patent.  This paragraph contains legal conclusions that require no answer and/or allegations for which Harris is without knowledge or information sufficient to form a belief as to truth and therefore denies the allegations.  To the extent an answer is required, Harris denies the allegations of this paragraph.

157.     This paragraph contains legal conclusions that require no answer.  To the extent an answer is required, Harris responds as follows:  Denied.

158.     Harris admits that Huawei purports to seek recovery of monetary damages through this action.  Otherwise Harris denies the allegations in paragraph 158.

-27-

## NINETEENTH COUNTERCLAIM
## (ALLEGED INFRINGEMENT OF U.S. PATENT NO. 10,117,226)

159.    Harris realleges and incorporates by reference the responses in the foregoing paragraphs.

160.    Harris admits that it has produced for certain worldwide markets certain products referred to as Tactical 4G LTE Radios.  Harris further responds that this paragraph contains legal conclusions that require no answer and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 160 and therefore denies the same.

161.    To the extent the allegations in this paragraph quote from or characterize the referenced documents, Harris responds that the documents are the best source of the full content and denies the allegations to the extent they do not accurately represent the documents' full content and context.  This paragraph further contains legal conclusions that require no answer and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 161 and therefore denies the same.  To the extent an answer is required, Harris denies the allegations of this paragraph.

162.    To the extent the allegations in this paragraph quote from or characterize the referenced documents, Harris responds that the documents are the best source of the full content and denies the allegations to the extent they do not accurately represent the documents' full content and context.  This paragraph further contains legal conclusions that require no answer and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient to form a

belief as to the truth of the remaining allegations in paragraph 162 and therefore denies the same.  To the extent an answer is required, Harris denies the allegations of this paragraph.

163.    To the extent the allegations in this paragraph quote from or characterize the referenced documents, Harris responds that the documents are the best source of the full content and denies the allegations to the extent they do not accurately represent the documents' full content and context.  This paragraph further contains legal conclusions that require no answer and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 163 and therefore denies the same.  To the extent an answer is required, Harris denies the allegations of this paragraph.

164.    This paragraph contains legal conclusions that require no answer.  To the extent an answer is required, Harris responds as follows:  Denied.

165.    This paragraph contains legal conclusions that require no answer.  To the extent an answer is required, Harris responds as follows:  Denied.

166.    To the extent the allegations in this paragraph quote from or characterize the referenced documents, Harris responds that the documents are the best source of the full content and denies the allegations to the extent they do not accurately represent the documents' full content and context.  This paragraph further contains legal conclusions that require no answer and/or language that is vague, ambiguous, undefined and/or susceptible to multiple different interpretations, and as a result, Harris is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 166 and therefore denies the same.  To the extent an answer is required, Harris denies the allegations of this paragraph.

167.     This paragraph contains legal conclusions that require no answer.  To the extent an answer is required, Harris responds as follows:  Denied.

168.     Harris admits that on December 5, 2018, Huawei sent Harris's licensing representative a presentation stating that Huawei had unidentified patents relating to LTE.   This paragraph contains legal conclusions that require no answer and/or allegations for which Harris is without knowledge or information sufficient to form a belief as to truth and therefore denies the allegations.  To the extent an answer is required, Harris denies the allegations of this paragraph.

169.     This paragraph contains legal conclusions that require no answer.  To the extent an answer is required, Harris responds as follows:  Denied.

170.     Harris admits that Huawei purports to seek recovery of monetary damages through this action.  Otherwise Harris denies the allegations in paragraph 170.

## RESPONSE TO HUAWEI'S DEMAND FOR JURY TRIAL

Huawei's demands for a trial by jury does not state any allegation that requires a response by Harris.

## RESPONSE TO HUAWEI'S PRAYER FOR RELIEF

In response to Huawei's prayer for relief, Harris denies that Huawei is entitled to any relief sought in its counterclaims.

## AFFIRMATIVE DEFENSES

171.     Pursuant to Federal Rule of Civil Procedure 8(c), Harris alleges and asserts the following defenses in response to the allegations in Huawei's counterclaims, undertaking the burden of proof only as to those defenses required by law, regardless of how such defenses are denominated herein.  To the extent each of its defenses relate to specific Harris counterclaims

on the same or similar issues, Harris repeats and incorporates by reference the allegations contained in those counterclaims as if fully set forth with respect to those defenses.  Harris reserves the right to assert any other defenses and counterclaims as discovery progresses.

## FIRST AFFIRMATIVE DEFENSE
## (FAILURE TO STATE A CLAIM)

172.    Huawei's counterclaims fail to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
## (STANDING)

173.    Huawei entities lack standing to bring suit for alleged patent infringement.

## THIRD AFFIRMATIVE DEFENSE
## (INVALIDITY)

174.    U.S. Patent Nos. RE44,325 ("the '325 Patent), 8,416,892 ("the '892 Patent), 8,798,575 ("the '575 Patent), 9,838,851 ("the '851 Patent) and 10,117,226 ("the '226 Patent) (collectively, "the Huawei Asserted Patents") are invalid, void and/or unenforceable for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, including without limitation, for example, Sections 101, 102, 103, 112, 116, and/or 132.

## FOURTH AFFIRMATIVE DEFENSE
## (NON-INFRINGEMENT)

175.    Harris does not infringe and has not infringed, induced infringement of, or contributed to infringement of any valid and enforceable claim of Huawei's Asserted Patents, literally or under the doctrine of equivalents, willfully or otherwise.

## SIXTH AFFIRMATIVE DEFENSE
## (PROSECUTION HISTORY ESTOPPEL)

176.     Huawei is estopped, based on statements, representations, and admissions made during prosecution of the applications that led to the Huawei Asserted Patents, from asserting any interpretation of the claims of those patents that would be broad enough to cover any accused equipment or methods alleged to infringe those patents, either literally or under the doctrine of equivalents.

## SEVENTH AFFIRMATIVE DEFENSE
## (EQUITABLE DEFENSES)

177.     Huawei's claims are barred, either whole or in part, by the doctrine of laches, waiver, estoppel, patent misuse, and/or unclean hands.

## EIGHTH AFFIRMATIVE DEFENSE
## (STATUTORY LIMITATION ON DAMAGES)

178.     Any claim by Huawei for damages is limited by 35 U.S.C. §§ 252, 286, 287, or 307. Huawei is barred by 35 U.S.C. § 288 from recovering costs associated with this action.

## NINTH AFFIRMATIVE DEFENSE
## (NO WILLFUL INFRINGEMENT)

179.     Huawei is not entitled to enhanced damages under 35 U.S.C. § 284 because Huawei has failed to meet, and cannot meet as a matter of law, the requirements for willful infringement.

## TENTH AFFIRMATIVE DEFENSE
## (STATUTORY LIMITATION)

180.     To the extent certain equipment or software accused of infringing the Huawei Asserted Patents are used by and/or manufactured for the United States Government, Huawei's claims involving Harris equipment or software supplied to the Government and for authorized

Foreign Military Sales may not be pursued in this Court and are subject to other limitations pursuant to 28 U.S.C. § 1498.

## ELEVENTH AFFIRMATIVE DEFENSE
### (NON-COMPLIANCE WITH SSO UNDERTAKINGS AND OBLIGATIONS)

181.    Huawei's claims for relief are limited and/or barred, in whole or in part, by its undertakings and obligations to standards-setting organizations.

## TWELFTH AFFIRMATIVE DEFENSE
### (CONTRACTUAL LIMITATION ON DAMAGES – FRAND)

182.    Huawei's claims for monetary relief are limited by its obligation to license the Huawei Asserted Patents on fair, reasonable, and non-discriminatory terms.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (PATENT EXHAUSTION AND LICENSE)

183.    Upon information and belief, Huawei's claims for relief are barred, in whole or in part, as a result of patent exhaustion and/or a license to the Huawei Asserted Patents.  To the extent Harris's vendors have entered into patent license agreements with Huawei, Harris's use of network equipment or software from those vendors during the terms of those agreements is authorized under those agreements.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (NON-COMPLIANCE WITH LICENSING OBLIGATION)

184.    Huawei's claims for relief are barred, in whole or in part, by its failure to comply with its obligation to offer to license the Huawei Asserted Patents on FRAND terms, including its refusal to offer licensing terms for each of the Huawei Asserted Patents.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (UNENFORCEABILITY)

185.     One or more of Huawei's Asserted Patents are unenforceable against Harris under the equitable doctrines of estoppel, waiver, implied waiver, patent misuse, unclean hands, or other equitable doctrines.

186.     Upon information and belief, Huawei's actions, including but not limited to those set forth herein regarding Huawei's breach of what—according to Huawei's own admissions— are its FRAND commitments, equitably estop Huawei from asserting, and/or constitute waiver or implied waiver of, any rights to enforce any allegedly standard-essential patents against any entity allegedly practicing the standard, including Harris.

187.     Huawei's actions, including but not limited to those set forth herein regarding Huawei's breach of what—according to Huawei's own assertions—are its FRAND commitments, render Huawei's allegedly standard-essential patents unenforceable on grounds of unclean hands (or other equitable doctrines) against any entity allegedly practicing the standard, including Harris.

188.     Huawei is a member of, and an active participant in, standards setting organizations such as 3GPP, ETSI, and IEEE.  Huawei counterclaims at ¶ 6.  Huawei admits that it is obligated to license the Huawei Asserted Patents on FRAND terms.  Dkt. 68 at 1 (". . . Huawei readily acknowledges that its patents are subject to FRAND obligations . . .").  Harris was and remains a willing licensee, to the extent the Huawei Asserted Patents are valid, enforceable, and infringed standard-essential patents.  Harris responded to Huawei's March 31, 2019 letter on April 3, 2019, stating a willingness to include discussion of Huawei's patents in ongoing discussions.  Harris further arranged a phone call with Huawei representatives and further responded on April 12, 2019 that Harris would provide more details concerning

Huawei's March 31, 2019 letter.  On April 22, 2019, Harris emailed Huawei to ask if they could set up a call that week.  Huawei did not respond.  Instead, Huawei asserted its counterclaims for infringement on April 26, 2019 despite Harris's good faith responses and without having communicated specific offered license terms.  Filing counterclaims for infringement against a willing licensee without having communicated terms of a FRAND offer breached Huawei's obligations and constituted standard-setting misconduct.  Further facts detailing Huawei's standard-setting misconduct are given below with respect to Harris's counterclaims.

189.    The described actions and conduct by Huawei constitute standard-setting misconduct, threatening continued harm to Harris and relevant third-parties, rendering the patents unenforceable.

### SIXTEENTH AFFIRMATIVE DEFENSE
### (NO INJUNCTIVE RELIEF)

190.    Huawei's remedies at law are adequate, and its alleged injury is not immediate or irreparable, such that equitable relief would be inappropriate for any determined infringement of Huawei's Asserted Patents.  Further, according to Huawei's admissions, it has made binding commitments to license Huawei's Asserted Patents on FRAND terms and conditions, thereby knowingly surrendering its right to injunctive or other exclusionary relief.  By virtue of not having offered Harris, a willing licensee, a license on FRAND terms and condition, Huawei has no legal right to injunctive relief.

### HARRIS CORPORATION'S COUNTERCLAIMS

Plaintiff and Counterclaimant Harris Corporation ("Harris") hereby asserts the following counterclaims in response to the counterclaims filed by Defendants Huawei Device USA, Inc. ("Huawei USA"), Huawei Device Co. Ltd. ("Huawei Device"), Huawei Technologies USA Inc. ("HTUS"), Huawei Technologies Co. Ltd. ("Huawei Technologies"), and Huawei Device

(Shenzhen) Co. Ltd.'s ("Huawei Shenzhen") (collectively, "Huawei" or "Defendants") counterclaims (Dkt. 56) as follows:

## PARTIES

191.    In its counterclaims, Huawei avers that Huawei USA is a Texas corporation with a place of business in Plano, Texas; Huawei Device is a Chinese company with a place of business in Dongguan, People's Republic of China; HTUS is a Texas corporation with a place of business in Plano, Texas; Huawei Technologies is a Chinese company with a place of business in Shenzhen, People's Republic of China; Huawei Shenzhen is a Chinese company with a place of business in Shenzhen, People's Republic of China.

192.    Harris Corporation is a Delaware corporation duly organized and existing under the laws of the state of Delaware with its principal place of business at 1025 West NASA Boulevard, Melbourne, Florida.

## JURISDICTION AND VENUE

193.    This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), 1338(b), 1367 as Harris counterclaims against Huawei pursuant to the patent laws of the United States, Title 35, United States Code, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. An actual, substantial and continuing justiciable controversy exists between Harris and Huawei based on Harris having filed an Amended Complaint against Huawei alleging infringement of the '227 Patent, the '986 Patent, the '537 Patent, the '426 Patent, the '678 Patent, the '690 Patent, and the '572 Patent, and Huawei having filed counterclaims for declaratory judgment of non-infringement and invalidity, and counterclaims alleging infringement of the Huawei Asserted Patents.

194.    Huawei has submitted to personal jurisdiction of this Court through the filing of its counterclaims against Harris, and is additionally subject to personal jurisdiction of this Court for the reasons given in Harris's Amended Complaint, Dkt. 13 at ¶ 8.

195.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§1391(b), (c), (d) and 1400(b) because Huawei USA and HTUS are Texas corporations located in this judicial district, and additionally for the reasons given in Harris's Amended Complaint, Dkt. 13 at ¶ 9.

## STANDARDS SETTING ORGANIZATIONS

196.    Standard development organizations and/or Standards Setting Organizations ("SSOs") are any organizations (e.g., Institute of Electrical and Electronics Engineers or IEEE, Third Generation Partnership Project or 3GPP, or European Telecommunications Standards Institute or ETSI) which are active in the development of standards.  Standards play an important role in the development of wireless data and telecommunications.  Standards facilitate the development, improvement, and advancement of technology and products that interoperate with one another.

197.    Industry standards are typically drafted by members of a standard's organization as a matter of consensus.

198.    Because standardization promotes a market-wide use of SEPs, patent owners are incentivized to propose technologies covered by their patent rights such that every implementer who wishes to utilize interoperability must take a license to their patents to avoid infringement liabilities.

199.    Once a standard has been adopted, patents that are essential to the adopted standard, *i.e.*, those that claim technologies selected by the participants in the standards

development process for inclusion in a standard, gain undue significance that they would not have had but for the adoption of the standard.

200.     The inclusion of patented technology into a standard enables the holders of the patented technology essential to the standard, if not otherwise constrained, to extract monopoly rents from implementers of a standard and/or prevent others from implementing the standard by refusing to license the patents on terms that would enable its implementation.

201.     In order to reduce the likelihood that implementers of standards will be subject to abusive practices by patent holders, SSOs have adopted rules, policies, and procedures that control the disclosure and licensing of patents that implementers may require in order to practice the standard under consideration.  These rules, policies, and/or procedures are set out in the intellectual property rights policies ("IPR policies") of the SSOs.  IPR policies generally require patent owners of essential patents to commit to license those patents on fair, reasonable, and non-discriminatory terms ("FRAND").  These FRAND terms are intended to prevent patent owners of essential patents from acquiring too much of the market power that would otherwise be inherent in owning an essential patent.

202.     It is important for SSOs to consider whether an entity that claims rights over a proposed technology has committed to make that technology available on FRAND terms and conditions.

203.     IPR policies facilitate an informed comparison of the members of the SSOs and their technologies.

## IEEE STANDARDS BODY AND IPR POLICY

204.     The Institute of Electrical and Electronics Engineers Standards Association ("IEEE-SA") is the standard setting arm of the Institute of Electrical and Electronics Engineers

("IEEE"), the IEEE-SA promulgates technical standards in a variety of fields, including telecommunications.  Under the IEEE-SA's IPR policy, when individuals participating in IEEE standards development come to believe that a company, university, or other patent holder owns patents or patent applications that might be essential to implement IEEE standard under development, IEEE-SA requests Letters of Assurance ("LOA") from those entities.

205.    The letters of assurance sought by IEEE provide either a general disclaimer that the patentee would not enforce the patent(s), or a promise by the patentee that it would license the patent(s) to an unrestricted number of applicants at either no cost or under reasonable terms and conditions that are demonstrably free of any unfair discrimination (*i.e.*, on FRAND terms). Moreover, letters of assurances, once provided, are irrevocable and shall be in force at least until the standard's withdrawal.  Moreover, any subsequence assignee and transferee of the patent(s) must agree to abide by any assurances in place.

206.    Further, according to IEEE's IPR policy, if the letters of assurance have not been provided for essential patents, the IEEE working group either will revise the standard so that compliance can be achieved without infringing the patent(s), or would discontinue work on the standard altogether.

## ETSI AND 3GPP STANDARDS BODIES AND IPR POLICIES

207.    ETSI is an independent, non-profit SSO that produces globally-accepted standards for the telecommunications industry.  ETSI has more than 700 members from more than 60 countries across five continents.  In addition to its own activities, ETSI is also one of the SSOs that are organizational partners of the 3rd Generation Partnership Project ("3GPP"), which exists to unite the SSOs in the development of worldwide standards for the telecommunications industry. Together, ETSI and its members have developed common technical standards that

often become mandatory as, in some cases, national or international regulatory bodies require adherence to particular ETSI standards.  3GPP produces and maintains the world's most widely adopted cellular standards such as the Long Term Evolution ("LTE") standard.

208.    3GPP develops these standards through an open voluntary consensus-based process.

209.    Mobile standards, such as for third-generation ("3G") technologies and fourth generation ("4G") technologies, consist of voluminous sets of requirements and protocols that must be followed for mobile devices to connect to the mobile network.

210.    On information and belief, Huawei employees participate in 3GPP standardization, at least in part, through Huawei's membership in ETSI.

211.    ETSI recognizes that standards rely on technical contributions from various sources that may contain patented technologies and other protected rights which are commonly known as Intellectual Property Rights ("IPRs").

212.    3GPP produces technical specifications that are adopted as standards by Organizational Partners, such as ETSI.   3GPP was created to oversee work on global 3G cellular specifications and has subsequently worked on creating 4G specifications.  The 3GPP Organizational Partners agreed that members of a particular Organizational Partner would be bound by the IPR policy of that Organizational Partner when participating at 3GPP.

213.    ETSI has adopted an Intellectual Property Rights ("IPR") Policy, incorporated as Annex 6 of the ETSI Rules of Procedure.   The ETSI IPR Policy is governed by the laws of France, and provides that "[a]ny right granted to, and any obligation imposed on, a MEMBER which derives from French law and which are not already contained in the national or

supranational law applicable to that MEMBER is to be understood as being of solely a

contractual nature."

214.    Among other requirements, the ETSI IPR Policy imposes on members an

obligation to disclose patents and patent applications to ETSI and its members that a member

believes are or may become essential to an ETSI standard.  Once such a disclosure is made, the

member is requested to submit an irrevocable undertaking confirming its willingness to license

the IPRs it has disclosed on FRAND terms and conditions.

215.    Specifically, Clause 4.1 of the ETSI IPR Policy provides as follows regarding the

disclosure obligation at ETSI:

> Subject to Clause 4.2 below, each MEMBER shall use its
> reasonable endeavors, in particular during the development of
> a STANDARD or TECHNICAL SPECIFICATION where it
> participates, to inform ETSI of ESSENTIAL IPRs in a timely
> fashion. In particular, a MEMBER submitting a technical
> proposal for a STANDARD or TECHNICAL
> SPECIFICATION shall, on a bona fide basis, draw the
> attention of ETSI to any of that MEMBER's IPR which might
> be ESSENTIAL if that proposal is adopted.

216.    In its second sentence, Clause 4.1 imposes a "particular" requirement on members

submitting a technical proposal to disclose the existence of any potentially essential IPR before

the proposal is adopted.

217.    The disclosure requirement under Clause 4.1 of the ETSI IPR Policy is intended to

ensure that when ETSI members (or participants at 3GPP) are deciding upon the functionality to

include in a standard specification, they have an understanding of the existence of IPR that may

potentially be implicated by the standard.    This knowledge allows members to make choices

about the standard with a better understanding of the consequences of their choices for

implementation of the standard.  ETSI and its members rely on the safeguards of the disclosure

and FRAND licensing obligation to ensure the viability and commercial potential of the

standards adopted by ETSI.

218.     The ETSI IPR Policy further requests that SEP owners submit an irrevocable

written undertaking that they are prepared to grant irrevocable licenses on "fair, reasonable, and

non-discriminatory" or FRAND terms and conditions.  Clause 6.1 states:

> When an ESSENTIAL IPR relating to a particular STANDARD or
> TECHNICAL SPECIFICATION is brought to the attention of ETSI, the
> Director-General of ETSI shall immediately request the owner to give
> within three months an irrevocable undertaking in writing that it is
> prepared to grant irrevocable licenses on fair, reasonable and non-
> discriminatory ("FRAND") terms and conditions under such IPR to at
> least the following extent:
>
> ● MANUFACTURE, including the right to make or have made
> customized components and sub-systems to the licensee's own design for
> use in MANUFACTURE;
> ● sell, lease, or otherwise dispose of EQUIPMENT
> so MANUFACTURED;
> ● repair, use, or operate EQUIPMENT; and
> ● use METHODS.
>
> The above undertaking may be made subject to the condition that those
> who seek licences agree to reciprocate.

219.     ETSI's IPR Policy was designed to benefit all ETSI members, as well as all other

parties that implement an ETSI standard.  In particular, the Policy described in Clause 3.1 that it

has the objective to "reduce the risk" to those implementing the standards or other technical

specifications "that investment in the preparation, adoption and application of the

STANDARDS could be wasted as a result of an ESSENTIAL IPR for a STANDARD or

TECHNICAL SPECIFICATION being unavailable."

220.     Through disclosure of potentially essential IPRs and obtaining FRAND

commitments for them, ETSI is able to include technology in its standards that may be covered

by IPRs with confidence that hold-up tactics by owners of declared SEPs will not undermine the subsequent widespread adoption of the standards.  If a FRAND undertaking is not made, the IPR Policy provides ETSI an opportunity, during the development of the standard, to ensure that the standard avoids the patent or patent application in question.

## ALCATEL LUCENT DISCLOSURES TO IEEE

221.    On May 19, 2008, Barbara Landmann, acting on behalf of the corporation known as Alcatel Lucent, submitted a Letter of Assurance ("LOA") to the IEEE-SA, publicly available at https://standards.ieee.org/content/dam/ieee-standards/standards/web/governance/patcom/loas/loa-802_3at-alcatel-19May2008.pdf.  The letter of assurance was specifically limited to the 802.3at standard for "Local & Metropolitan Area Networks – Specific Requirements Part 3: - CSMA/CD Access Method & Phy Layer Spec Amendment: DTE Power via the MDI Enhancements."

222.     Pursuant to the letter of assurance, Alcatel Lucent declared that it "may own, control, or have the ability to license Patent Claims that might be or become Essential Patent Claims," and whereby it agreed to "grant a license under reasonable rates to an unrestricted number of applicants . . . with reasonable terms and conditions that are demonstrably free of unfair discrimination."

223.    The Alcatel Lucent LOA is a "Blanket Letter of Assurance.  As such, all Essential Patent Claims that the Submitter may currently or in the future have the ability to license shall be available under the terms as indicated in part D.1"  At the time Alcatel Lucent submitted this LOA, Alcatel-Lucent was the owner of U.S. Patent No. 6,715,087 which later reissued as the asserted '325 patent.

224.    The Alcatel Lucent LOA further agreed:

The Submitter agrees (a) to provide notice of a Letter of Assurance either through a Statement of Encumbrance or by binding any assignee or transferee to the terms of such Letter of Assurance; and (b) to require its assignee or transferee to (i) agree to similarly provide such notice and (ii) to bind its assignees or transferees to agree to provide such notice as described in (a) and (b).

225.     According to assignment records from the USPTO public database, Huawei acquired the rights to the '325 Patent on December 31, 2015.

226.     In this litigation, Huawei has taken the position that the '325 patent is essential to the IEEE 802.3at standard.  In this litigation, Huawei has also admitted that it is obligated to license the Huawei Asserted Patents on FRAND terms.  Dkt. 68 at 1 (". . . Huawei readily acknowledges that its patents are subject to FRAND obligations . . .").  Accordingly, Huawei has a contractual obligation to license the '325 patent on FRAND terms in accordance with Alcatel-Lucent's LOA and the IEEE-SA policy.

## HUAWEI DISCLOSURES TO 3GPP

227.     Harris is informed and believes that Huawei is a member of, and an active participant in, standards setting organizations such as 3GPP and ETSI.  Huawei counterclaims at ¶ 6.  Huawei admits that it is obligated to license the Huawei Asserted Patents on FRAND terms.  Dkt. 68 at 1 (". . . Huawei readily acknowledges that its patents are subject to FRAND obligations . . .").

228.     Huawei violated its obligation as a member of ETSI to timely disclose the Huawei Asserted Patents (or patents or patent applications within the same families) in accordance with the requirements of the ETSI IPR Policy.

229.     As early as 1994, Clause 4.1 of the Policy required that "[e]ach MEMBER shall use its reasonable endeavours to timely inform ETSI of ESSENTIAL IPRs it becomes aware of. In particular, a MEMBER submitting a technical proposal for a STANDARD shall, on a bona fide basis, draw the attention of ETSI to any of that MEMBER's IPR which might be ESSENTIAL if that proposal is adopted."

230.     Huawei was bound by the ETSI IPR Policy during its participation at ETSI and also at the 3rd Generation Partnership Project (3GPP), of which ETSI is an organizational member.  ETSI and its members rely on the disclosure requirements to safeguard the standard-setting process and ensure that decisions regarding what technology to standardize are made with an understanding of the potential implications for those decisions on licensing patents that may be claimed essential to those technologies.

231.     Huawei failed to disclose the existence of its Huawei Asserted Patents or family members of its Huawei Asserted Patents during the standardization of cellular standards at ETSI and 3GPP, while participating in the development of technologies that it apparently believed were covered by patents now asserted against Harris.

232.     Huawei's failure to timely disclose IPRs constitutes at least a waiver of its rights to enforce any claimed-essential patents against any entity practicing the standard and renders the patents unenforceable.  Alternatively, this conduct estops Huawei from asserting the patents and/or bars Huawei's infringement counterclaims through the doctrine of unclean hands.

**'892 PATENT**

233.     On, November 8, 2011 Huawei filed U.S. patent application 13/291,727, which issued on April 9, 2013 as U.S. Patent No. 8,416,892.  The '892 patent claims priority to Chinese Patent Application No. 200710074200 filed on April 30, 2007 and PCT Application

No. PCT/CN2008/070768 filed on April 22, 2008.  The '892 patent lists Oskar Mauritz as the named inventor.

234.     Huawei has alleged that the '892 patent is essential to practicing 3GPP technical specification 3GPP TS 36.211 version 8.1.0 and later, which was developed by 3GPP working group RAN 1.  Huawei participated in working group RAN 1 and the development of 3GPP TS 36.211, including participation in various discussions related to Zadoff-Chu sequences.  For example, on information and belief, Huawei submitted R1-071408 at the RAN WG1 meeting #48bis, from Mar. 26-30, 2007.  At RAN Working Group 1, Meeting #49, from May 7-11, 2007, Huawei submitted R1-072325 and submitted R1-072324 with Panasonic.  Huawei submitted proposal R1-072899 at RAN Working Group 1 Meeting #49bis, from June 25-29, 2007.  Huawei further participated in email discussions through at least Oct. 8-12, 2007 as noted in R1-074026.  Huawei further participated in TSG RAN1#50bis meeting in Shanghai, China between Oct. 8-12, 2007, where discussions continued regarding changes to version 8.0.0 of the standard.

235.     At the opening of the TSG RAN1#50bis meeting, the Chairman drew attention to Members' obligations under the 3GPP Partner Organizations' IPR policies.  Noting that every Individual Member organization is obliged to declare to the Partner Organization or Organizations of which it is a member any IPR owned by the Individual Member or any other organization which is or is likely to become essential to the work of 3GPP.

236.     On information and belief, the named inventor of the '892 patent, Oskar Mauritz, was present at the TSG RAN1#50bis meeting.  See R1-07504 attendee list.

237.     On November 21, 2007, Change Request 0002 to version 8.0.0 of the 36.211 standard was submitted by Ericsson to reflect decisions taken at RAN1#50bis, including

changes to sections 5.7.2.  This change request was adopted and became part of the 36.211 version 8.1.0 which was uploaded on Dec. 20, 2007.

238.    Despite the inventor's presence and participation at the RAN1#50bis meeting, Huawei did not submit any IPR declaration related to the '892 patent family until March 4, 2009, more than a year after the RAN1#50bis meeting and nearly two years after Huawei filed its Chinese application.  ISLD-200904-001.

## '575 PATENT

239.    On November 10, 2006, Huawei filed U.S. patent application 11/558,774, which issued on August 5, 2014 as U.S. Patent No. 8,798,575.  The '575 patent claims priority to Chinese Patent Application No. 200410044433 filed on May 12, 2004 and PCT Application No. PCT/CN2005/000665 filed on May 12, 2005.  The '575 patent lists Xiaoqin Duan and Yajuan Wu as the named inventors.

240.    In its infringement contentions in this case, Huawei has alleged that the '575 patent is essential to practicing 3GPP technical specification 3GPP TS 23.203 versions 8.4.0 and later.  Huawei has only submitted IPR declarations that claim the '575 patent is or may be essential to 3GPP TS 23.125, which is a parent specification to the 3GPP TS 23.203 and was developed by 3GPP working group SA2.  Huawei and the named inventors of the '575 patent participated in working group SA2 and the development of 3GPP TS 23.125.  Minutes of the SA2 #40 meeting, Draft 01, 3GPP TSG-SA2 #40, May 17-21, 2004 (June 4, 2004); Minutes of the SA2 #40 meeting, Draft 04, 3GPP TSG-SA2 #40, May 17-21, 2004 (Aug. 25, 2004); Minutes of the SA2 #41 meeting, Draft 01, 3GPP TSG-SA2 #41, August 16-20, 2004 (Aug. 26, 2004); Minutes of the SA2 #41 meeting, 3GPP TSG-SA2 #41, August 16-20, 2004 (Oct. 25, 2004); List of Registered Attendees at 3GPP TSG-SA2 #40; List of Registered Attendees at

3GPP TSG-SA2 #41; List of tdocs from 3GPP TSG-SA2 #40; List of tdocs from 3GPP TSG-SA2 #41; Tdoc S2-041930, 3GPP TSG-SA2 #40, May 17-21, 2004; Tdoc S2-042781, 3GPP TSG-SA2 #41, August 16-20, 2004.  3GPP froze TS 23.125 on December 16, 2004.

241.     At least one of the named inventors on the '575 patent, Yajuan Wu, attended 3GPP TSG-SA2 #40 meeting in Sophia Antipolis, France between May 17-21, 2004, where Huawei proposals were made, and where the chair drew the attention of 3GPP Individual Members (IMs) organizations to their obligations under the 3GPP Partner Organizations' IPR policies.  Every IM is obliged to declare to the 3GPP Partner Organization or Organizations of which it is a member, any IPR owned by the respective IM or by any other organization which is or is likely to become essential to the work of 3GPP.

242.     Both named inventors on the '575 patent, Yajuan Wu and Xiaoqin Duan, attended 3GPP TSG-SA2 #41 meeting in Montreal between August 16-20, 2004, where Huawei proposals were made, and the Chairman reminded Individual Members and the persons making the technical proposals about their obligations under their respective Organizational Partners IPR Policy.

243.     Huawei did not disclose the '575 patent or any member of the '575 patent's family to ETSI or 3GPP prior to the freeze date for TS 23.125.  In fact, Huawei failed to disclose that any member of the '575 patent family was believed to be essential to TS 23.125 until August 29, 2005, (ISLD 200509-005) over a year after Huawei inventors attended 3GPP TSG-SA2 meeting #41, over eight months after the freeze date of TS 23.125 and over 15 months after Huawei filed its Chinese application.

## '851 PATENT

244.    On July 1, 2014, Huawei filed U.S. patent application 14/321,550, which issued

on Dec. 5, 2017 as U.S. Patent No. 9,838,851.  The '851 patent claims priority to Chinese

Patent Application No. 20091110717 filed on Sept. 29, 2009 and PCT Application No.

PCT/CN2010/077371 filed on Sept. 27, 2010.  The '851 patent lists Qufang Huang, Wenji Liu,

and Qinghai Zeng as the named inventors.

245.    Huawei has alleged that the '851 patent is essential to practicing 3GPP technical

specification 3GPP TS 36.300, versions 9.3.0 and later, which was developed by 3GPP RAN

Working Group 2.  Huawei and the named inventors of the '851 patent participated in the RAN

WG2 and the development of 3GPP TS 36.300.

246.    On November 9, 2009, Huawei submitted a Change Request 0160, R2-096534 to

the 3GPP TSG-RAN WG2 Meeting #68, proposing changes to clause 15.3.3 of the 3GPP TS

36.300 specification version 9.1.0.  After discussion at the meeting, on November 11, 2009,

Huawei and LG Electronics Inc. submitted a Change Request R2-097264 to the 3GPP TSG-

RAN WG2 Meeting #68, proposing changes to clause 15.3.3, among others, of the 3GPP TS

36.300 specification version 9.1.0.

247.    During the 3GPP TSG-RAN WG2 Meeting #68, the TSG RAN WG2 chairman

made the following call for IPRs and reminded the delegates of their obligations with respect to

IPRs:

> The attention of the delegates of this Working Group is drawn to the fact that 3GPP
> Individual Members have the obligation under the IPR Policies of their respective
> Organizational Partners to inform their respective Organizational Partners of
> Essential IPRs they become aware of.
> The delegates were asked to take note that they were hereby invited:
> •       to investigate whether their organization or any other organization owns
> IPRs which were, or were likely to become Essential in respect of the work of the
> work of 3GPP.
> •       to notify their respective Organizational Partners of all potential IPRs, e.g.,

for ETSI, by means of the IPR Statement and the Licensing declaration forms (http://webapp.etsi.org/Ipr/).

248.     Eleven Huawei delegates, including one of the named inventors, Dr. Qinghai (Steven) Zeng, attended the 3GPP TSG-RAN WG2 Meeting #68 where the above proposals from Huawei were discussed and approved and where the chairman made the call for IPRs.  *See* R2-100826 Participants list.

249.     On January 20, 2010, Huawei, Nokia Corporation, Nokia Siemens Networks and ZTE submitted CR 0185 to 36.300 ver. 9.2.0, requesting "correction" to 15.3.3.

250.     Huawei did not submit an IPR declaring the '851 or its patent family as allegedly essential until July 13, 2010, (*see* ISLD-201007-004) nearly 10 months after Huawei filed its Chinese application.

## '226 PATENT

251.     On July 1, 2016, Huawei filed U.S. patent application 15/200,352, which issued on Oct.30, 2018 as U.S. Patent No. 10, 117, 226.  The application claims to be a continuation of U.S. application Ser. No. 14/175,303 filed on Feb. 7, 2014, which is a continuation of International Application No. PCT/CN2012/079808, filed on Aug. 8, 2012, which claims priority to Chinese Patent Application No. 201110226133.7, filed on Aug. 8, 2011.  The '226 patent lists Qufang Huang and Mingzeng Dai as named inventors.

252.     The 3GPP technical specification TS 36.300 version 10.4.0 was released at least by June 24, 2011 and is prior art to the '226 patent.

253.     In August 22, 2011, Huawei and Samsung submitted a change request (CR 0403) at the 3GPP TSG-RAN WG2 #5 meeting in Athens, Greece.  See R2-114827.  This proposed modification was a "correction" to section 15.3.7 of the TS 36.300 version 10.4.0 standard. *See*

R2-114827.  The proposed correction was approved at the TSG RAN WG2 meeting #53 in

Fukuoka, Japan.  *See* RP-111287, RP-111723.  At the TSG RAN WG2 meeting #53, the RAN

chairman made a call for IPRs and reminded the delegates of their obligations with respect to

IPRs.  *See* RP-111723 Report at 14.  At least four representatives from Huawei were at the TSG

RAN WG2 meeting #53 where R2-114827 was approved.  *See* RP-111723 Report Participant

List.

254.    Although the "correction" in CR 0403 was incorporated into the TS 36.300

version 10.5.0 standard, the 3GPP technical specification TS 36.300 version 10.4.0 is the

current version for release 10.  Thus, the "correction" incorporated by CR 0403 is not part of the

functional freeze for Release 10.  *See* https://portal.3gpp.org/#/55934-releases Release 10 end

date "2011-06-08 (SA#52)".

255.    Huawei, nonetheless, through briefing in this case and through its infringement

contentions served on Harris, alleges that products complying with TS 36.300 version 10.5.0

and later infringe the '226 patent, including by compliance with section 15.3.7 of that standard.

256.    Despite its apparent contribution to the change request to section 15.3.7, and

despite its allegation here that the '226 patent is allegedly essential to practicing TS 36.300

version 10.5.0, released in October of 2011, Huawei, on information and belief, has not

submitted a declaration to 3GPP or ETSI alleging this patent, or any member of its family, to be

standard essential in accordance with the 3GPP or ETSI IPR policies.

## HUAWEI'S NEGOTIATIONS WITH HARRIS AND BREACH OF FRAND OBLIGATIONS

257.    Harris is informed and believes that Huawei is a member of, and an active

participant in, standards setting organizations such as 3GPP, ETSI, and IEEE.  Huawei

counterclaims at ¶ 6.  Huawei admits that it is obligated to license the Huawei Asserted Patents

on FRAND terms.  Dkt. 68 at 1 (". . . Huawei readily acknowledges that its patents are subject to FRAND obligations . . .").

258.    A party that has made a FRAND commitment has committed that it will be prepared to license its patents.  That requires being prepared to propose specific licensing terms to a potential licensee.

259.    On information and belief, Huawei was aware of the impropriety of bringing an action for infringement after a party had expressed willingness to negotiate for a license on FRAND terms, but before offering such a license with specific terms including a royalty rate.

260.    In ITC litigation with Complainant InterDigital in 2012 (337-TA-800), Huawei recognized that FRAND-committed patents could be declared "void and unenforceable" where the patent holder initiated litigation against a party without proposing FRAND terms, arguing in its Response to the Third Amended Complaint: "The Asserted Patents are void and unenforceable by reason of the equitable doctrine of unclean hands based (among other things) on . . . their failure to comply with the rules and obligations of ETSI, 3GPP, and other SSOs including TIA by undertaking to grant but failing to propose RAND or FRAND terms for licensing the Asserted Patents they claim are essential."   Likewise, in the same litigation, Huawei recognized and argued in Respondents' July 15, 2013 Petition for Review that "a FRAND obligation requires more than good faith efforts, and actually requires an SEP holder to grant FRAND licenses."

261.    In a decision in litigation between Huawei and ZTE in the European Court of Justice, the Court required that "after the alleged infringer has expressed its willingness to conclude a licensing agreement on FRAND terms, it is for the proprietor of the SEP to present to that alleged infringer a specific, written offer for a license on FRAND terms, in accordance

with the undertaking given to the standardisation body, specifying, in particular, the amount of the royalty and the way in which that royalty is to be calculated." *Huawei Tech. v. ZTE Corp.*, C-170/13 (E.C.J. July 16, 2015) at ¶ 63.

262.    In recent litigation with PanOptis in this Court, Huawei argued that a patent owner could be barred from asserting its ETSI and 3GPP standard FRAND-committed patents for "failing to offer and grant FRAND terms and conditions for licensing the Asserted Patents." *Optis Wireless Tech., LLC v. Huawei Techs. Co.*, No. 2:17-CV-00123-JRG-RSP, Dkt. 70 at 31-32.  Huawei further argued that: "The Asserted Patents are void and unenforceable by reason of the equitable doctrine of unclean hands based on (among other things) PanOptis' (or its predecessors-in-interest's) participation in ETSI and 3GPP, its commitments to license the Asserted Patents on FRAND terms and conditions, and its failure to offer FRAND terms and conditions for licensing the Asserted Patents." *Id.*, Dkt. 70 at 32.  Huawei argued for (*id.* at Dkt. 179 at 17) and obtained a ruling from this Court that trial was needed to resolve factual questions, such as whether "offers made during negotiations … are consistent with the FRAND obligation." *Optis Wireless Tech., LLC v. Huawei Techs. Co.*, No. 2:17-CV-00123-JRG-RSP, 2018 WL 3375192, at *6 (E.D. Tex. July 11, 2018).  Huawei argued that pre-litigation offers there were inconsistent with FRAND obligations despite the patent owner having negotiated with Huawei over the royalty rate for three years before filing suit.  *Optis*, No. 2:17-CV-00123-JRG-RSP, Dkt. 153 at 1.  On information and belief, Huawei was aware of the impropriety of bringing its counterclaims for infringement prior to having even proposed a royalty rate to Harris.

263.    Harris was and remains a willing licensee of the Huawei Asserted Patents to the extent they are valid, enforceable, and infringed standard-essential patents.

264.   On December 5, 2018 and December 21, 2018, Huawei sent Harris's licensing representative a presentation stating that Huawei had unidentified patents relating to LTE and Power over Ethernet and including no information about offered license terms.  On December 21, 2018, Huawei identified certain Huawei patents to Harris's licensing representative, including only one of the Huawei Asserted Patents.  On March 31, 2019, Huawei sent a letter to Harris stating that a worldwide FRAND license would be available but included no information about offered license terms and no further identification of patents (that would be asserted or otherwise).

265.   Harris responded to Huawei's March 31, 2019 letter on April 3, 2019 stating a willingness to include discussion of Huawei's Asserted Patents in ongoing discussions.  Harris further arranged a phone call with Huawei representatives and further responded on April 12, 2019 that Harris would provide more details concerning Huawei's March 31, 2019 letter.  On April 22, 2019, Harris emailed Huawei to ask if they could set up a call that week.  Huawei did not respond.  Instead, Huawei asserted its counterclaims for infringement on April 26, 2019 despite Harris's good faith responses and without having communicated specific offered license terms.  On May 1, 2019, after Huawei's counterclaims were filed, Harris again emailed Huawei seeking to set up the requested call.

266.   Contrary to the obligations expressed in its representations to Harris, Huawei did not make an offer to license Huawei's Asserted Patents on FRAND terms and conditions to Harris or otherwise negotiate a FRAND license in good faith before filing its counterclaims for patent infringement and to date it has not done so.  Huawei did not communicate terms, including economic terms, to Harris.  Huawei brought its counterclaims before even making any

offer to Harris to license the Huawei Asserted Patents, and since initiating this suit Huawei has

yet to provide FRAND terms to Harris for the Huawei Asserted Patents.

## THE FEDERAL TRADE COMMISSION'S ENFORCEMENT ACTIONS FOR SSO MISCONDUCT

267.    The Federal Trade Commission ("FTC") has recognized that the type of SSO

misconduct Huawei has committed violates Section 5 of the Federal Trade Commission Act, 15

U.S.C. § 45 ("FTC Act") which prohibits "unfair or deceptive acts or practices in or affecting

commerce."

268.    First, the FTC has recognized that an SSO member's failure to disclose the

existence of intellectual property rights relevant to an industry standard violates Section 5 of the

FTC Act.  For example, in a complaint against Dell Computer Corporation, the FTC alleged that

Dell's deception of an SSO regarding the existence of patents relating to the standard and

subsequent assertion of those patents against implementers of the standard constituted unfair

methods of competition that "restrained competition" in violation of Section 5.

269.    Second, the FTC has recognized that reneging on FRAND commitments can

violate Section 5 of the FTC Act.  In 2008, the FTC filed a complaint against Negotiated Data

Solutions LLC in which it alleged that Negotiated Data "and its predecessor in interest, Vertical

Networks, Inc. ('Vertical'), engaged in unfair acts or practices and unfair methods of

competition through which it sought to break a licensing commitment that its predecessor,

National Semiconductor ('National'), made to the Institute of Electrical and Electronics

Engineers ('IEEE'), a standard setting organization, in 1994."  Specifically, the FTC alleged

that although National had committed to license patents essential to an IEEE standard for

$1,000, Vertical sought to rescind that commitment and sought licensing royalties at a

"substantial increased over National's commitment to license the NWay technology for a one-time fee of one thousand dollars."

270.     The FTC concluded that this breach of a licensing commitment caused or threatened to cause substantial harm to competition and consumers, including "increased royalties (or other payments) associated with the manufacture, sale, use or importation of products that implement an IEEE standard enabling autonegotiation by or with 802.3 compliant products," "increases in price and/or reductions in the use or output of products that implement an IEEE standard enabling autonegotiation by or with 802.3 compliant products," "decreased incentives on the part of semiconductor chip and LAN equipment manufacturers to produce products that implement IEEE standards enabling autonegotiation by or with 802.3 compliant products," "decreased incentives on the part of semiconductor chip and LAN equipment manufacturers and others to participate in IEEE or other standard setting activities," and "both within and outside the semiconductor chip and LAN equipment industries decreased reliance, or willingness to rely, on standards established by industry standard setting organizations."

## COUNT I
### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF '892 PATENT)

271.     Harris repeats and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

272.     On April 26, 2019, Huawei filed counterclaims naming Harris as counter-defendant.

273.     Huawei's counterclaims allege that Huawei infringes the '892 Patent, even though Harris has not infringed, contributed to the infringement of, or induced infringement of any valid and enforceable claim of the '892 Patent.

274.     An actual, continuing and justiciable controversy exists between Harris and Huawei as to Harris's non-infringement of the '892 Patent as evidenced by Huawei's counterclaims and Harris's Answer, as set forth above.  Absent a declaration of non-infringement, Huawei will continue to wrongfully assert the '892 Patent against Harris and will continue to cause Harris injury and damage.

275.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Harris requests a judicial determination and declaration that Harris does not and has not infringed, contributed to the infringement of, or induced infringement of any valid and enforceable claim of the '892 Patent either literally or under the doctrine of equivalents, willfully, or in any other manner.

## COUNT II
## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF '575 PATENT)

276.     Harris repeats and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

277.     On April 26, 2019, Huawei filed counterclaims naming Harris as counter-defendant.

278.     Huawei's counterclaims allege that Huawei infringes the '575 Patent, even though Harris has not infringed, contributed to the infringement of, or induced infringement of any valid and enforceable claim of the '575 Patent.

279.     An actual, continuing and justiciable controversy exists between Harris and Huawei as to Harris's non-infringement of the '575 Patent as evidenced by Huawei's counterclaims and Harris's Answer, as set forth above.  Absent a declaration of non-infringement, Huawei will continue to wrongfully assert the '575 Patent against Harris and will continue to cause Harris injury and damage.

280.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Harris requests a judicial determination and declaration that Harris does not and has not infringed, contributed to the infringement of, or induced infringement of any valid and enforceable claim of the '575 Patent either literally or under the doctrine of equivalents, willfully, or in any other manner.

## COUNT III
## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF '851 PATENT)

281.     Harris repeats and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

282.     On April 26, 2019, Huawei filed counterclaims naming Harris as counter-defendant.

283.     Huawei's counterclaims allege that Huawei infringes the '851 Patent, even though Harris has not infringed, contributed to the infringement of, or induced infringement of any valid and enforceable claim of the '851 Patent.

284.     An actual, continuing and justiciable controversy exists between Harris and Huawei as to Harris's non-infringement of the '851 Patent as evidenced by Huawei's counterclaims and Harris's Answer, as set forth above.  Absent a declaration of non-infringement, Huawei will continue to wrongfully assert the '851 Patent against Harris and will continue to cause Harris injury and damage.

285.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Harris requests a judicial determination and declaration that Harris does not and has not infringed, contributed to the infringement of, or induced infringement of any valid and enforceable claim of the '851 Patent either literally or under the doctrine of equivalents, willfully, or in any other manner.

## COUNT IV
## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF '226 PATENT)

286.     Harris repeats and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

287.     On April 26, 2019, Huawei filed counterclaims naming Harris as counter-defendant.

288.     Huawei's counterclaims allege that Huawei infringes the '226 Patent, even though Harris has not infringed, contributed to the infringement of, or induced infringement of any valid and enforceable claim of the '226 Patent.

289.     An actual, continuing and justiciable controversy exists between Harris and Huawei as to Harris's non-infringement of the '226 Patent as evidenced by Huawei's counterclaims and Harris's Answer, as set forth above.  Absent a declaration of non-infringement, Huawei will continue to wrongfully assert the '226 Patent against Harris and will continue to cause Harris injury and damage.

290.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., Harris requests a judicial determination and declaration that Harris does not and has not infringed, contributed to the infringement of, or induced infringement of any valid and enforceable claim of the '226 Patent either literally or under the doctrine of equivalents, willfully, or in any other manner.

## COUNT V
## (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF '325 PATENT)

291.     Harris repeats and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

292.     On April 26, 2019, Huawei filed counterclaims naming Harris as counter-defendant.

293.     Huawei's counterclaims allege that Huawei infringes the '325 Patent, even though Harris has not infringed, contributed to the infringement of, or induced infringement of any valid and enforceable claim of the '325 Patent.

294.     An actual, continuing and justiciable controversy exists between Harris and Huawei as to Harris's non-infringement of the '325 Patent as evidenced by Huawei's counterclaims and Harris's Answer, as set forth above.  Absent a declaration of non-infringement, Huawei will continue to wrongfully assert the '325 Patent against Harris and continue to cause Harris injury and damage.

295.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Harris requests a judicial determination and declaration that Harris does not and has not infringed, contributed to the infringement of, or induced infringement of any valid and enforceable claim of the '325 Patent either literally or under the doctrine of equivalents, willfully, or in any other manner.

## COUNT VI
## (DECLARATORY JUDGMENT OF INVALIDITY OF '892 PATENT)

296.     Harris repeats and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

297.     An actual, continuing and justiciable controversy exists between Harris and Huawei as to the validity of the claims of the '892 Patent as evidenced by Huawei's counterclaims and Harris's Answer, as set forth above.  Absent a declaration of invalidity, Huawei will continue to wrongfully assert the '892 Patent against Harris and will continue to cause Harris injury and damage.

298.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Harris requests a judicial determination and declaration that the claims of the '892 Patent are invalid for failure to comply with one or more of the statutory requirements for patentability set forth in Title 35 of the United States Code, including without limitation §§ 101, 102, 103, 112, 116, 119 and/or 120, and the requirements of The Code of Federal Regulations.

## COUNT VII
## (DECLARATORY JUDGMENT OF INVALIDITY OF '575 PATENT)

299.     Harris repeats and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

300.     An actual, continuing and justiciable controversy exists between Harris and Huawei as to the validity of the claims of the '575 Patent as evidenced by Huawei's counterclaims and Harris's Answer, as set forth above.  Absent a declaration of invalidity, Huawei will continue to wrongfully assert the '575 Patent against Harris and will continue to cause Harris injury and damage.

301.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Harris requests a judicial determination and declaration that the claims of the '575 Patent are invalid for failure to comply with one or more of the statutory requirements for patentability set forth in Title 35 of the United States Code, including without limitation §§ 101, 102, 103, 112, 116, 119 and/or 120, and the requirements of The Code of Federal Regulations.

## COUNT VIII
## (DECLARATORY JUDGMENT OF INVALIDITY OF '851 PATENT)

302.     Harris repeats and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

303.     An actual, continuing and justiciable controversy exists between Harris and Huawei as to the validity of the claims of the '851 Patent as evidenced by Huawei's counterclaims and Harris's Answer, as set forth above.  Absent a declaration of invalidity, Huawei will continue to wrongfully assert the '851 Patent against Harris and will continue to cause Harris injury and damage.

304.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Harris requests a judicial determination and declaration that the claims of the '851 Patent are invalid for failure to comply with one or more of the statutory requirements for patentability set forth in Title 35 of the United States Code, including without limitation §§ 101, 102, 103, 112, 116, 119 and/or 120, and the requirements of The Code of Federal Regulations.

## COUNT IX
## (DECLARATORY JUDGMENT OF INVALIDITY OF '226 PATENT)

305.     Harris repeats and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

306.     An actual, continuing and justiciable controversy exists between Harris and Huawei as to the validity of the claims of the '226 Patent as evidenced by Huawei's counterclaims and Harris's Answer, as set forth above.  Absent a declaration of invalidity, Huawei will continue to wrongfully assert the '226 Patent against Harris and will continue to cause Harris injury and damage.

307.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Harris requests a judicial determination and declaration that the claims of the '226 Patent are invalid for failure to comply with one or more of the statutory requirements for patentability set forth in Title 35 of the United States Code, including without limitation §§ 101, 102, 103, 112, 116, 119 and/or 120, and the requirements of The Code of Federal Regulations.

## COUNT X
## (DECLARATORY JUDGMENT OF INVALIDITY OF '325 PATENT)

308.    Harris repeats and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

309.    An actual, continuing and justiciable controversy exists between Harris and Huawei as to the validity of the claims of the '325 Patent as evidenced by Huawei's counterclaims and Harris's Answer, as set forth above.  Absent a declaration of invalidity, Huawei will continue to wrongfully assert the '325 Patent against Harris and will continue to cause Harris injury and damage.

310.    Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., Harris requests a judicial determination and declaration that the claims of the '325 Patent are invalid for failure to comply with one or more of the statutory requirements for patentability set forth in Title 35 of the United States Code, including without limitation §§ 101, 102, 103, 112, 116, 119 and/or 120, and the requirements of The Code of Federal Regulations.

## COUNT XI
## (BREACH OF CONTRACT)

311.    Harris repeats and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

312.    Harris is informed and believes that Huawei has declared at least the '892, '575, and '851 patent families as allegedly essential to the 3GPP and/or ETSI standards and has agreed to license these patents and the other Huawei Asserted Patents on FRAND terms.

313.    Harris is informed and believes that Huawei has submitted a general IPR licensing declaration whereby it has agreed to license any IPRs that it believes are essential to any ETSI Standards and Technical Specifications in accordance with Clause 6.1 of the ETSI IPR Policy.

314.    Huawei has a contractual obligation to license the '325 patent on FRAND terms in accordance with Alcatel-Lucent's LOA and the IEEE-SA policy.

315.    Harris is informed and believes that Harris has entered into express or implied contractual commitments, in accordance with the applicable rules and intellectual property rights policies of the applicable SSOs, to grant licenses to each of the Huawei Asserted Patents on fair, reasonable and nondiscriminatory ("FRAND") terms and conditions.  These FRAND obligations are found in Intellectual Property Policies adopted by ETSI, 3GPP and the bylaws adopted by IEEE-SA, including but not limited to clause 6.1 of the ETSI IPR Policy, Article 5, and Clause 6.2 of the IEEE-SA IPR Policy.

316.    Initially, as an independent breach of its contractual obligations to ETSI, 3GPP, and to Harris, Huawei failed to timely disclose its allegedly essential patents in accordance with the requirements of the ETSI IPR Policy.

317.    As described above, by eventually committing to license its declared-essential patents on FRAND terms to all parties practicing the ETSI/3GPP standards, Huawei entered into contractual commitments with ETSI and/or 3GPP obligating it to license 3GPP and/or ETSI's members and suppliers of products that support the standard (as third-party beneficiaries) on FRAND terms.  Huawei's FRAND commitments impose ongoing, continuing contractual obligations on Huawei.

318.    By initiating litigation against Harris before making any FRAND compliant licensing offer, Huawei has breached its FRAND commitment to be prepared to license the Huawei Asserted Patents.

319.     In addition, by failing to provide Harris with FRAND license terms for each of the Asserted Patents—even after bringing its counterclaims for infringement—Huawei has breached its FRAND commitments specific to each of the Huawei Asserted Patents.

320.     As a result of these multiple contractual breaches, Harris has been injured, including in its business or property.   Harris has been forced to defend groundless infringement claims and has incurred substantial expense in doing so.

## COUNT XII
## (DECLARATORY JUDGMENT THAT HUAWEI HAS NOT MADE A FRAND OFFER)

321.     Harris repeats and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

322.     There is a dispute between the parties concerning whether Huawei has complied with its FRAND obligations to offer Harris a license on fair, reasonable and nondiscriminatory terms.  The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

323.     Huawei has failed to offer license terms conforming to applicable legal and equitable requirements or provide a date certain by which it will make such an offer.

324.     Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Harris requests a judicial determination and declaration that Huawei has not offered license terms to Harris conforming to applicable legal and equitable requirements.

## COUNT XIII
## (BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING)

325.     Harris repeats and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

326.     There is an implied duty of good faith and fair dealing in every contract.  This duty applies to FRAND commitments no less than to any other contract.

327.     Huawei has failed to comport with the implied duty of good faith and fair dealing inherent in every contract, including by failing to make a FRAND offer conforming to applicable legal and equitable requirements and by filing suit against Harris before making any FRAND offer.

328.     As a result of Huawei's breach of the implied covenant of good faith and fair dealing, Harris has been injured in its business and is threatened by loss of profits, customers, goodwill and product image.

## COUNT XIV
## (PROMISSORY ESTOPPEL)

329.     Harris repeats and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

330.     Harris is informed and believes that Huawei has entered into express or implied contractual commitments, in accordance with the applicable rules and IPR policies of the applicable SSOs, to grant licenses to the Huawei Asserted Patents on FRAND terms and conditions.

331.     Huawei's declarations and representations of essentiality constitute an express or implied contractual commitment with ETSI, 3GPP, IEEE-SA and its members, affiliates and adopters.

332.     Each third party that would potentially implement the technologies covered by those standards was and is an intended beneficiary to those contracts.

333.     The intended purpose of Huawei's (and/or its predecessor in interest's) promises was to induce reliance.  Huawei (and/or its predecessor in interest, Alcatel Lucent) knew or

should have reasonably expected that this promise would induce companies producing products incorporating the standards to develop products compliant with the relevant standards.

334.     Huawei asserts that Harris, Harris's vendors, and third-parties have developed, marketed and/or used products and services that allegedly incorporate the standards.  Any such demonstrated incorporation was done in reliance on Huawei's promises.

335.     Huawei is estopped from reneging on these promises to 3GPP, ETSI, IEEE-SA and/or their Organizational Partners and third-party beneficiaries under the doctrine of promissory estoppel.

336.     Harris has been and continues to be harmed as a result of its reasonable reliance on Huawei's (and/or its predecessor in interest, Alcatel Lucent's) promises and is threatened by the imminent loss of profits, loss of customers and potential customers, and loss of goodwill and product image.

337.     Harris will suffer irreparable injury by reason of the acts and conduct of Huawei alleged above unless and until the court enjoin such acts, practices and conduct.

## COUNT XV
## (WAIVER)

338.     Harris repeats and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

339.     Harris is informed and believes that Huawei has entered into express or implied contractual commitments, in accordance with the applicable rules and IPR policies of the applicable SSOs, to grant licenses to the Huawei Asserted Patents on FRAND terms and conditions.

340.    Huawei's declarations and representations of essentiality constitute an express or implied contractual commitment with ETSI, 3GPP, IEEE-SA and its members, affiliates and adopters.

341.    Each third party that would potentially implement the technologies covered by those standards was and is an intended beneficiary to those contracts.

342.    Through this express statement, Huawei (and/or its predecessor in interest, Alcatel Lucent) voluntarily and intentionally waived its rights to obtain compensation for any allegedly essential patents for 3GPP, ETSI, and IEEE Standards other than at reasonable rates and on non-discriminatory terms.

343.    Harris will suffer irreparable injury by reason of the acts and conduct of Huawei alleged above until and unless the court enjoins such acts, practices, and conduct.

## COUNT XVI
## (DECLARATORY JUDGMENT THAT PATENTS ARE UNENFORCEABLE)

344.    Harris repeats and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

345.    There is a dispute between the parties concerning whether Huawei has complied with its FRAND obligations to offer Harris a license on fair, reasonable and nondiscriminatory terms.  The dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

346.    Under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Harris requests a judicial determination and declaration that Huawei's Asserted Patents are unenforceable due to its conduct with respect to SSO standardization efforts described above and/or its conduct with respect to Harris described above.

## COUNT XVII
## (VIOLATION OF TEXAS UNFAIR COMPETITION LAW)

347.    Harris repeats and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

348.    The FTC has recognized that reneging on FRAND commitments can violate Section 5 of the FTC Act.  *In re Motorola Mobility LLC*, Docket No. C-4410;  *In re Negotiated Data Solutions LLC*, Docket No. C-4234.

349.    Huawei has reneged on the FRAND commitments to which its Huawei Asserted Patents are subject.

350.    Huawei's unfair and fraudulent business acts and practices are a direct and proximate cause of injury to the public and Harris.

351.    Huawei's unlawful, anticompetitive, and unfair conduct constitutes unfair competition under Texas law and has interfered or threatens to interfere with competition and Harris's ability to conduct its business.

352.    Huawei has committed unlawful and unfair acts that constitute violations of Section 5 of the FTC Act, including: (a) failing to timely disclose the existence of patent or patent applications related to the Huawei Asserted Patents in accordance with the requirements of the 3GPP and/or ETSI IPR Policy, and (b) failing to abide by its FRAND commitments, including initiating this lawsuit without negotiating with Harris and refusing to license the Huawei Asserted Patents on FRAND terms and conditions.

353.    For example, Huawei's failure to disclose the existence of patents or patent applications in accordance with the IPR policies is an unfair and deceptive trade practice that violates at least Tx. Bus. & Com. Code §17.46(b)(24) for failing to disclose information concerning services which was known at the time of the transaction because such failure to

disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

354.   As a direct, proximate, and foreseeable result of Huawei's unfair and wrongful conduct, as alleged above, there is a significant threat of injury to downstream price, quality, innovation, and consumer choice for cellular services and products, thereby causing injury to consumers in Texas and elsewhere.  These threatened injuries include the inevitable passing on to consumers of improper royalties demanded by Huawei and decreases in innovation, quality, and consumer choice for products and services that support the standards, as well as decreased incentives to participate in standard setting generally and to support products that rely on standards.

355.   As a direct, proximate, and foreseeable result of Huawei's unfair and wrongful conduct, as alleged above, Huawei has interfered with Harris's ability to do business in Texas and elsewhere by, among other things: (a) causing Harris to face a threat of loss of profits and loss of customers; and (b) being forced to expend money and other resources defending against Huawei's actions notwithstanding that Huawei has committed to license the Asserted Patents on FRAND terms.  As a result, Harris is entitled to damages, and is additionally entitled to attorneys' fees, including pursuant to Tx. Bus. & Com. Code §17.50(d).

## COUNT XVIII
### (VIOLATION OF FLORIDA UNFAIR COMPETITION LAW)

356.   Harris repeats and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

357.   Florida's Consumer protection act, including FLA. STAT. § 501.204 states that "Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  And

further explains: "It is the intent of the Legislature that, in construing subsection (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017."

358.    The FTC has recognized that reneging on FRAND commitments can violate Section 5 of the FTC Act. *In re Motorola Mobility LLC,* Docket No. C-4410; *In re Negotiated Data Solutions LLC,* Docket No. C-4234.

359.    Huawei has reneged on the FRAND commitments to which its Huawei Asserted Patents are subject.

360.    Huawei's unfair and fraudulent business acts and practices are a direct and proximate cause of injury to the public and Harris.

361.    Huawei's unlawful, anticompetitive, and unfair conduct constitutes unfair competition under Florida law and has interfered or threatens to interfere with competition and Harris's ability to conduct its business.

362.    Huawei has committed unlawful and unfair acts that constitute violations of Section 5 of the FTC Act, including: (a) failing to timely disclose the existence of patent or patent applications related to the Huawei Asserted Patents in accordance with the requirements of the 3GPP and/or ETSI IPR Policy, and (b) failing to abide by its FRAND commitments, including refusing to license the Huawei Asserted Patents on FRAND terms and conditions.

363.    As a direct, proximate, and foreseeable result of Huawei's unfair and wrongful conduct, as alleged above, there is a significant threat of injury to downstream price, quality, innovation, and consumer choice for cellular services and products, thereby causing injury to consumers in Florida and elsewhere.  These threatened injuries include the inevitable passing on

to consumers of improper royalties demanded by Huawei and decreases in innovation, quality, and consumer choice for products and services that support the 4G standard, as well as decreased incentives to participate in standard setting generally and to support products that rely on standards.

364. As a direct, proximate, and foreseeable result of Huawei's unfair and wrongful conduct, as alleged above, Huawei has interfered with Harris's ability to do business in Florida and elsewhere by, among other things: (a) causing Harris to face a threat of loss of profits and loss of customers; and (b) being forced to expend money and other resources defending against Huawei's actions notwithstanding that Huawei has committed to license the Asserted Patents on FRAND terms. As a result, Harris is entitled to damages, and is additionally entitled to attorneys' fees, including pursuant to FLA. STAT. § 501.2105.

## RESERVATION OF RIGHTS

Harris Corporation expressly reserves the right to assert counterclaims or any additional defenses which may now exist or in the future may be available based on discovery and further factual investigation in this case, including doctrine of acquiescence, patent misuse, inequitable conduct, waiver, unclean hands and/or other applicable equitable doctrines.

## PRAYER FOR RELIEF

Harris respectfully requests this Court grant relief on Huawei's counterclaims and Harris's counterclaims as follows:

A. Judgment that Huawei's counterclaims in their entirety be dismissed with prejudice;

B. Judgment that Huawei takes nothing by its counterclaims, including that Huawei is not entitled to an award of compensatory damages, attorneys' fees, costs,

prejudgment or post-judgment interest under 35 U.S.C. §§ 284 or 285, or any

applicable law;

C.  Denial of any and all of Huawei's requests for relief;

D.  Judgment that Harris has not infringed, and is not infringing, any valid and

enforceable claim of the Huawei Asserted Patents.

E.  Judgment that the asserted claims of the Huawei Asserted Patents are invalid;

F.  Judgment that Huawei and/or any of its successors and attorneys, and all persons

in active concert or participation with any of them, are enjoined from directly or

indirectly asserting infringement or instituting any further action for infringement

of the Huawei Asserted Patents against Harris, or any of Harris's customers, end-

users, agents, suppliers, contractors, consultants, successors, and assigns;

G.  Judgment that Huawei has breached its contractual obligations to IEEE, ETSI and

3GPP to offer the Huawei Asserted Patents on FRAND terms;

H.  Judgment that the Huawei Asserted Patents are unenforceable;

I.  Judgment requiring Huawei to pay Harris's costs and expenses, along with pre-

judgment and post-judgment interest;

J.  Judgment requiring Huawei to pay Harris's attorneys' fees pursuant to Tx. Bus. &

Com. §17.50, FLA. STAT.  §501.2105, or any other applicable statute;

K.  Grant to Harris such other and further relief as the Court deems just and proper.

Dated:  June 7, 2019       Respectfully Submitted,

By: /s/ *Denise De Mory*

Henry C. Bunsow
Denise De Mory
Christina M. Finn
Robin K. Curtis
Corey Johanningmeier
Nicolas Mancuso
**BUNSOW DE MORY LLP**
701 El Camino Real
Redwood City, CA 94063
Telephone: (650) 351-7248
Facsimile: (415) 426-4744
Email: hbunsow@bdiplaw.com
Email: ddemory@bdiplaw.com
Email: cfinn@bdiplaw.com
Email: rcurtis@bdiplaw.com
Email: cjohanningmeier@bdiplaw.com
Email: nmancuso@bdilaw.com

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75467
Telephone: 903-845-5770
Email: ccapshaw@capshawlaw.com
Email: ederieux@capshawlaw.com

**ATTORNEYS FOR PLAINTIFF
HARRIS CORPORATION**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served electronically on all counsel who are deemed to have consented to electronic service.

Dated:  June 7, 2019

By:  /s/ *Denise De Mory*
    Denise De Mory