IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| HARRIS CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>HUAWEI DEVICE USA, INC.,<br>HUAWEI DEVICE CO., LTD.,<br>HUAWEI TECHNOLOGIES USA INC.,<br>HUAWEI TECHNOLOGIES CO. LTD., AND<br>HUAWEI DEVICE (SHENZHEN) CO., LTD.<br><br>    Defendants. | No. 2:18-cv-439-JRG (LEAD CASE)<br><br>Jury Trial Demanded |

**HUAWEI'S RESPONSE IN OPPOSITION TO HARRIS'S MOTION TO COMPEL
<u>PRODUCTION OF TECHNICAL DOCUMENTS AND SOURCE CODE</u>**

# TABLE OF CONTENTS

**Page(s)**

I. Introduction ........................................................................................................................ 1
II. Factual Background ........................................................................................................... 2
   A. The Patents-At-Issue ............................................................................................... 2
   B. Harris's P.R. 3-1 Contentions and Huawei's P.R. 3-4 Production ......................... 2
   C. The Accused Products ............................................................................................ 4
III. Argument ........................................................................................................................... 4
   A. The Scope of Discovery Is Informed by Harris's Contentions. ............................. 5
   B. The Requested Discovery Is Not Relevant. ........................................................... 5
   C. The Requested Discovery Is Not Proportional to this Case. ................................. 6

## I. INTRODUCTION

To inflate Huawei's litigation costs, Harris seeks needless source code and voluminous technical documents for products that are so peripheral to Harris's infringement theories that Harris's P.R. 3-1 claim charts refer to those products, generically, only with respect to the *preambles* of the asserted claims, and not with respect to any claim limitations.

Harris's Complaint describes the two related patents-at-issue here as directed to "monitoring transmissions and packets to provide intrusion detection" in a wireless network.  Dkt. 13, ¶¶ 23, 25.  That monitoring, performed in the claims by a "policing station," is the core of the patents' alleged invention.  Because the asserted claims are to a "wireless . . . network" and not the policing station standing alone, however, the claims also recite a "plurality of" generic wireless "stations" that merely communicate wirelessly.

Harris's P.R. 3-1 Contentions ("Contentions") do not contend that the phones, tablets, and laptops that are the subject of its Motion to Compel (collectively, "consumer products") perform "intrusion detection," or that they directly or indirectly infringe at all.  Rather, Harris's Contentions contend merely that these consumer products can communicate in a wireless network, while the claimed "intrusion detection" is performed *elsewhere*, by other accused products for which Huawei has provided voluminous technical discovery.  For this reason, Harris's claim charts reference the consumer products only with respect to claim preambles (which Harris contends are not limiting).  Further confirming that those consumer products are at most peripheral to Harris's contentions, Harris did not provide a claim chart for any of the dozens of "accused" phones, tablets, or laptops, even though the Patent Rules require a claim chart for each "accused product."

Despite the foregoing, and even though Harris does not identify any asserted claim limitations as "software limitations" per the Discovery Order (Dkt. 44, ¶ 3(a)(1)), Harris contends that it is entitled to additional, sweeping discovery concerning the technical operation of Huawei's

1

consumer products—including their source code—ignoring the relevance and proportionality requirements for discovery. As discussed *infra* pp. 4, 7, in another matter, this Court addressed and rejected requests for discovery of Huawei consumer products where, as here, those products were peripheral to asserted wireless network claims. The Court should do so again here.

## II.  FACTUAL BACKGROUND

### A.  The Patents-At-Issue

Harris's Motion relates to two related patents, 7,224,678 and 7,327,690, directed to detecting intrusions into a wireless network.[1] Nearly every asserted claim recites a "wireless . . . network comprising" (i) a plurality of stations, and (ii) a "policing station" for monitoring transmissions and performing the intrusion detection that is the purpose and alleged advancement of the patents.[2] *See* Dkt. 13-5 ('678 patent), 13-6 ('690 patent). The claims' alleged novelty is how they detect intrusions. Dkt. 40 (Harris §101 Opp. Br.) at 13 (". . . novel detection techniques described and claimed . . . ."). The claims are nearly identical except for the criteria the policing station uses to detect intrusions. The "plurality of stations" recited in the claims could be any devices in the network so long as they communicate wirelessly, *e.g.*, according to well-known standards, such as IEEE 802.11 (Wi-Fi). Those "stations' could be authorized/trusted devices, or unauthorized "rogue" devices that the policing station seeks to detect/exclude from the network.

### B.  Harris's P.R. 3-1 Contentions and Huawei's P.R. 3-4 Production

Harris served its Contentions on April 3, 2019. The cover document identifies the accused products as "Huawei networks and products that support Wireless Intrusion Detection System (WIDS) and/or similar intrusion detection technology," followed by a list of products: Huawei

---

[1] As Harris stated in its §101 opposition brief, "[t]he various claims are each directed to particular, innovative ***detection methods*** using particular kinds of data." Dkt. 40 at 13 (emphasis added).

[2] The exceptions are '678 patent claim 51 and '690 patent claim 71, which recite a method of monitoring transmission to detect intrusions, but do not recite a "policing station" for doing so. '678 patent, 16:50-61; '690 patent, 18:1-12. Those differences are irrelevant to the issues here.

2

enterprise products used to establish/maintain a network (routers, access points, access controllers, remote units, and eSight products), and Huawei consumer products (phones, tablets, and laptops).

In the P.R. 3-1(c) claim charts, Harris refers to Huawei phones, tablets, and laptops ***only with respect to the claim preambles***, which generally recite just a wireless network, and merely to contend those products are "designed to communicate with wireless networks via the IEEE 802.11 protocols"—*i.e.*, that they have Wi-Fi capability.[3]  For all limitations in the body of the asserted claims, including those to intrusion detection, the only products referenced are Huawei enterprise products (*e.g.*, access points, access controllers, remote units, and eSight products).[4]

Confirming the consumer products are peripheral to its Contentions, Harris did not chart any accused consumer product. Instead, Harris served just one chart per patent, referring in only the preamble to Huawei "phones, tablets, and laptops" generally.  Harris's Contentions make no attempt to establish that Huawei's accused consumer products are substantially the same as Huawei's accused enterprise products.  *Cf. Alacritech Inc. v. CenturyLink, Inc.*, 2:16-cv-693, 2017 WL 3007464, at *5 (E.D. Tex. July 14, 2017) (plaintiff must chart every accused product or show no material differences between charted and uncharted products).

Huawei produced 3.82 GB (57,083 files) of source code and about 22,000 pages of technical documents, including for Huawei enterprise products and WIDS, with its P.R. 3-4 disclosures.  Aside from the present dispute, Harris has not contended that Huawei's document production is deficient.

Even though its Contentions refer generically to Huawei's consumer products only with respect to the claim preambles and do not include a claim chart for even one of the accused

---

[3] Huawei would gladly provide the Court a copy of Harris's Contentions at the Court's request.

[4] During the meet and confer on this motion, Harris's counsel acknowledged that Harris's Contentions do not chart any of the consumer products with respect to the policing station/intrusion detection limitations.  Likewise, in its Motion at 3, when arguing that it refers to Huawei consumer products in its claim charts, Harris cites specifically to the claim preambles.

3

consumer products, Harris demands that Huawei produce *all* source code and technical documents for *all* accused consumer products.  Harris expressly stated during the parties' meet and confer that, as a substitute for broad and burdensome technical discovery, it would refuse to consider a stipulation that the consumer products can communicate via 802.11 (Wi-Fi) in a network.

### C. The Accused Products

Huawei's enterprise WLAN products, such as access points, remote units, access controllers, and routers, are distributed and sold through Huawei Technologies USA, Inc.  *See* Bhatta Decl. (attached hereto) ¶ 4.  Huawei's consumer products are distributed and sold by a different company, Huawei Device USA, Inc., which focuses on the consumer market.  *See* Strong Decl. (attached hereto) ¶ 4.  Huawei enterprise products are not sold with Huawei consumer products.  Huawei Technologies does not sell consumer products, and Huawei Device (a separate company from Huawei Technologies) does not sell enterprise products.  Bhatta Decl. ¶ 4, Strong Decl. ¶ 4.  Huawei's website separates between enterprise and consumer segments.  Notably, in its claim charts, Harris does not cite any documents or information from Huawei's consumer segment.

### III. ARGUMENT

There could be no dispute that, if the patents-at-issue claimed only the allegedly inventive "policing station" for detecting intrusions, Harris would have no basis to seek discovery on the accused consumer products, since Harris's Contentions do not contend those products perform the claimed intrusion detection functions.  But Harris contends it is entitled to sweeping technical discovery of these consumer products because its claims are written as a "network" comprising the "policing station" and other generic "stations."  Just as this Court denied discovery of Huawei consumer products in *Traxcell*[5] where, like here, the asserted claims purportedly were "directed to improvements to the operation of wireless networks," *compare id.*, *with* Harris's § 101 Opp. Br.

---

[5] *Traxcell Techs. v. Huawei Tech. USA, Inc.*, 2:17-cv-042 (Dkt. 259) (E.D. Tex., Dec. 12, 2018).

4

[Dkt. 40] at 13 ("The '678 and '690 patent claims are directed to specific improvements in the operation of wireless networks . . . ."), so should the Court deny Harris's motion here.

### A. The Scope of Discovery Is Informed by Harris's Contentions.

A plaintiff must "set forth specific theories of infringement at the outset of the case" utilizing all publicly available information. *Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 817 (E.D. Tex. 2006) (citation omitted). "[I]nfringement contentions are intended to frame the scope of the case in order to provide for 'full, timely discovery and [to] provide parties with adequate notice and information with which to litigate their case.'" *Realtime*, 2009 WL 2590101, at *8-9 (citation omitted). Accordingly, Harris's April 3 Contentions frame discovery.

### B. The Requested Discovery Is Not Relevant.

The broad technical discovery Harris demands about Huawei consumer products is irrelevant to Harris's infringement theory for the '678 and '690 patents, as set forth in Harris's Contentions. Only information "relevant" to a party's claims or defenses may be discoverable. Fed. R. Civ. P. 26(b)(1). Harris's Contentions do not chart a single consumer product and, to the extent those claim charts reference those products at all, it is exclusively in relation to the claims' preamble, and then only to assert that those products have Wi-Fi capability. Harris's only operative infringement theory is based on Huawei's enterprise products acting as the alleged "policing stations" for monitoring network intrusions—the purported innovation of these two patents. Technical discovery on the consumer products is irrelevant to that sole theory.

Indeed, Harris does not, and could not, contend the consumer products directly or indirectly infringe asserted claims, despite applying the label "Accused Products" to them. They cannot directly infringe because the claims are to multi-component systems that include, at a minimum, a "policing station," which those products are not. The consumer products cannot indirectly infringe because they indisputably have substantial non-infringing uses, such as not using Wi-Fi or using

Wi-Fi in a network that does not include Huawei enterprise devices with its WIDS.[6] Moreover, as set forth above, the accused consumer products are not sold together with accused enterprise products; they are sold by different companies, precluding any argument that Huawei sells an accused system comprised of those two different categories of products. This fact was also before the Court in the *Traxcell* case. *Traxcell*, *supra*, Dkt. 227 at 9-10, Dkt. 227-6. For all of these reasons, the requested technical discovery is irrelevant.

        **C.**        **The Requested Discovery Is Not Proportional to this Case.**

The broad discovery of technical documents and source code Harris now demands also is not proportional to the needs of the case in light of Harris's Contentions, which purport to accuse the consumer products based on their mere ability to communicate over a wireless network—something that any wireless device can do. Discovery of source code and technical specifications is not needed to establish, as Harris's Contentions state, that those products are "designed to communicate with wireless networks via the IEEE 802.11 protocols." And Huawei has provided extensive source code and technical discovery for the enterprise products that Harris's Contentions contend perform the claimed intrusion detection monitoring.

Harris argues that it is entitled to the requested discovery because the consumer products also act as claimed generic "stations" by doing three things: "transmitting [] data using a MAC layer," "having a respective MAC address associated therewith," and "transmitting data packets each having a packet type associated therewith." Mot. at 3-4. But Harris's Contentions ***do not chart*** those claim elements against any of the accused consumer products, which are referenced only in claim preambles. Further, ***any*** Wi-Fi device does those three things to communicate in a

---

[6] *See, e.g.*, *Google Inc. v. Beneficial Innovations, Inc.*, No. 2:11-cv-229-JRG-RSP, 2014 WL 4227366, at *27 (E.D. Tex. Aug. 21, 2014) ("The Federal Circuit held that '[e]specially where a product has substantial non-infringing uses, intent to induce infringement cannot be inferred even when the defendant has actual knowledge that some users of its product may be infringing the patent.'") (citation omitted).

wireless network—those are generic, conventional attributes of a Wi-Fi device. Broad technical discovery is not proportional to that allegation, even if it were part of Harris's Contentions.[7]

Moreover, Harris's Motion does not contend that Harris is entitled to discovery on the consumer products because those products allegedly have the accused WIDS functionality. To the contrary, Harris is careful to say that the phones/tablets/laptops can communicate with *other* products that incorporate WIDS.[8] Mot. at 4. Harris does not assert that the consumer products have the accused WIDS technology, which is consistent with its claim charts.

As noted above, this Court dealt with a similar issue in *Traxcell*, when it denied a motion to compel Huawei to produce information related to wireless consumer products in the context of wireless network patent claims. *Traxcell*, *supra*, Dkt. No. 259. This Court stated: "The asserted patents deal with improvements to the operation of wireless networks. Plaintiff has not shown that design or manufacture of the cell phones and wireless communication devices operating within the network is implicated." *Id.* The broad technical discovery requested here is even more burdensome than the discovery requested, and denied, in *Traxcell*.[9]

Harris appears to be either (1) seeking to increase Huawei's litigation costs or (2) fishing for technical information about the consumer products, hoping to find fodder to assert other patents against them. This Court should condone neither tactic, and it should deny Harris's motion.

---

[7] Footnote 4 of Harris's Motion also asserts other purported infringement theories for the consumer products, but Harris raised those theories only in recent correspondence, not in its Contentions.

[8] In other words, Harris's Contentions allege that the accused phones/tablets/laptops are merely devices whose communications are being monitored by other devices (policing stations) in the network. This highlights just how ancillary and irrelevant the consumer products are to the claims, because those products could be the very rogue devices that the claimed intrusion detection system is attempting to *exclude* from the claimed network.

[9] Harris's reliance on *Ioli* is misplaced. There, the issue was about the scope of technical discovery—*i.e.*, whether source code was required in addition to other technical documents—for products squarely accused of infringement in the plaintiff's contentions. *Edward D. Ioli Trust v. Avigilon Corp.*, No. 2:10-cv-605-JRG, 2012 WL 5830711 at *2-3 (E.D. Tex. Nov. 16, 2012). That is not the issue here: Huawei consumer products are peripheral to Harris's Contentions.

7

Dated: August 13, 2019

*/s/ Andrew T. Radsch*
Melissa R. Smith
**GILLAM & SMITH, LLP**
Texas Bar No. 24001351
303 S. Washington Ave.
Marshall, Texas 75670
Telephone: (903) 934-8450
melissa@gillamsmithlaw.com

James R. Batchelder
California Bar No. 136347
James L. Davis, Jr.
California Bar No. 304830
Andrew T. Radsch
California Bar No. 303665
Christopher M. Bonny
California Bar No. 280554
**ROPES & GRAY LLP**
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303-2284
Telephone: (650) 617-4000
james.batchelder@ropesgray.com
james.l.davis@ropesgray.com
andrew.radsch@ropesgray.com
christopher.bonny@ropesgray.com

Jolene L. Wang
New York Bar No. 5462619
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036
Telephone: (212) 596-9000
jolene.wang@ropesgray.com

Attorneys for Defendants
*HUAWEI DEVICE USA, INC., HUAWEI DEVICE CO., LTD., HUAWEI TECHNOLOGIES USA INC., HUAWEI TECHNOLOGIES CO. LTD., and HUAWEI DEVICE (SHENZHEN) CO., LTD.*

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 13th day of August, 2019, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ *Melissa R. Smith*