# EXHIBIT A

 **BUNSOW DE MORY**LLP

701 El Camino Real
Redwood City, CA 94063
+1 (650) 351-7248

**Corey Johanningmeier**
Direct: +1 (650) 351-7420
cjohanningmeier@bdiplaw.com

VIA ELECTRONIC MAIL

July 29, 2019

Christopher M. Bonny
Ropes & Gray LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303
Email: christopher.bonny@ropesgray.com

> **Re:**  *Harris Corporation v. Huawei Device USA, Inc., et al.,*
> **Case No. 2:18-cv-00439-JRG (E.D. Tex.)**

Dear Chris:

I write in response to your July 2, 2019 letter and July 24, 2019 email, and also to let you know that absent agreement to produce from Huawei, Harris will prepare and file a Motion to Compel production of technical documents and source code for the various Huawei phones, laptops, and tablets identified as Accused Products in Harris's Patent Local Rule 3-1 Infringement Contentions ("Contentions"), as well as a Motion to Amend those Contentions to include both the additional disclosures that you originally asked for but now contend are (in part) inoperative, and additional evidence of infringement that has come to light based on further investigations—including those stemming from our correspondence and your recent production of one technical document, HUAWEI-HARRIS_0138979.

From our correspondence it seems clear that the parties are at an impasse on these issues, such that resolution by the Court will be required to progress.  If you believe otherwise, let us know as soon as possible.  In your July 2, 2019 letter you specifically refused to schedule the lead and local conference requested in my June 20, 2019 letter—and required by Local Rule Civ-7(h) and (i), and by the Court's Standing Order Regarding "Meet and Confer" Obligations Relating to Discovery Disputes.  Subsequently, on July 24, 2019, you demanded a lead and local conference on your own desire to strike contentions, and also demanded that it occur on either Friday or Monday.  This was an unreasonable course and demand on your part, but we agreed in good faith to confer with you on Tuesday, July 30, 2019.  Accordingly, Harris will discuss its desire to compel production and also amend its contentions during the conference now scheduled.

Much of Harris's response to your July 2, 2019 letter is already contained in our lengthy prior correspondence, including as summarized in my June 20, 2019 letter at pp. 1-3, quoted in

relevant part below:

> Harris's Patent Local Rule 3-1 Infringement Contentions ("Contentions"), including as served on April 3, 2019, plainly identify specific models of Huawei phones, laptops, and tablets as Accused Products that infringe the Asserted Claims of the '678 and '690 patents. *See, e.g.*, Contentions at pp. 7-8, 10-11 ("Huawei Laptops, tablets and consumer devices that support Wi-Fi (802.11), when connected to a Huawei Wireless LAN/MAN"). The accompanying claim charts, including as served on April 3, 2019, plainly disclose multiple theories of infringement involving these Huawei phones, laptops, and tablets, as well as claim elements practiced by those devices. For example, and without limitation:

> Huawei's accused "consumer devices" (phones, laptops, and tablets) are "used in wireless local or metropolitan area networks" according to claim language claiming such networks. *See, e.g.*, Contentions, Exhibit E at 1 ('678 Claim 12 preamble), Exhibit F at 1 ('690 Claim 32 preamble). "Huawei consumer devices, including laptops, phones and tablets, are also designed to communicate with wireless networks via the IEEE 802.11 protocols." *Id.*, Exhibit E at 12, Exhibit F at 13.[1]

> Huawei's accused phones, laptops, and tablets participate in these wireless networks as claimed "stations" (also called "STAs" in cited Huawei and IEEE documents), practicing claim elements by, *inter alia*, "transmitting data [] using a media access layer (MAC)" and "having a respective MAC address associated therewith" according to asserted claim language. *See, e.g.*, *id.*, Exhibit E at 26-33. The accused phones, laptops, and tablets also practice claim elements by, *inter alia*, "transmitting data in packets each having a packet type associated therewith." *See, e.g.*, *id.*, Exhibit F at 25-33.[2]

> Huawei's accused phones, laptops, and tablets communicate with and are monitored by claimed "policing stations," including those devices that employ Huawei's "Wireless Intrusion Detection System (WIDS) and Wireless Intrusion Prevention System (WIPS) functions." *See, e.g.*, *id.*, Exhibit E at 33-40, Exhibit F at 33-41. For example, and without limitation, the phones, laptops, and tablets acting as claimed "stations" (STAs) in the claimed "network" make the claimed "attempts to authenticate a MAC address." *See, e.g.*, *id.*, Exhibit E at 50-52; *see also id.*, Exhibit F at 52-54 (STAs sending claimed "predetermined packet type").

---

[1] Harris's Amended Contentions of May 24, 2019, supplemented at your request, provided ***additional evidence*** of this aspect of Harris's infringement theories, showing consumer devices in communication with the claimed wireless networks. *See, e.g.*, Amended Contentions, Amended Exhibit E at 13.

[2] Harris's Amended Contentions of May 24, 2019, supplemented at your request, provided ***additional evidence*** of this aspect of Harris's infringement theories, showing consumer devices participating in the claimed wireless networks as claimed "stations." *See, e.g.*, Amended Contentions, Amended Exhibit E at 13.

In addition, Harris's Contentions, including as served on April 3, 2019, assert that intrusion detection functionality is directly included in Huawei's accused phones, laptops, and tablets. *See, e.g.*, Contentions at p. 7, 10 ("Huawei networks and products that support Wireless Intrusion Detection System (WIDS) and/or other similar intrusion detection technology, including: . . . Huawei Laptops, tablets and consumer devices that support Wi-Fi (802.11), when connected to a Huawei Wireless LAN/MAN, including: [list of products]"); *see also id.*, Exhibit E at 5 ("On information and belief, all Huawei WLAN products incorporate the Wireless Intrusion Detection System (WIDS) as described"), 17 ("On information and belief, all Huawei WLAN products, when combined to form a wireless local or metropolitan area network, are able to utilize the WIDS/WIPS technology.").[3]

These numerous charted citations to the practice of claim elements by Huawei's accused phones, laptops, and tablets are more than sufficient to require Huawei to make P.R. 3-4 disclosures for these accused products. Contrary to the assertion in your June 19, 2019 letter, and as detailed in part above, Harris's Contentions (including as served on April 3, 2019) disclose the performance of claim elements by Huawei's accused consumer products. Huawei is not permitted to unilaterally decide that production of specifications or source code for these products "is irrelevant to Harris's Infringement Contentions" or "is not proportional to the needs of the case." June 19, 2019 letter at 2-3.

Rather, "[t]his District's P.R. 3–4(a) requires the alleged infringer to produce any and all documents describing the operation of any aspects or elements of an accused instrumentality. P.R. 3–4(a) clearly covers source code, regardless of what additional materials may exist to disclose the functionality of the technology at issue." *Edward D. Ioli Trust v. Avigilon Corp.*, Case No. 2:10–cv–605–JRG, 2012 WL 5830711 at *2-3 (E.D. Tex. Nov. 16, 2012). Huawei has failed to produce both technical documents and source code with respect to these accused products. Please provide immediately a date certain by which Huawei will make P.R. 3-4 disclosures, including of source code, for the accused consumer products. If Huawei will not do so, please provide immediately your availability for the lead and local conference required by Local Rule Civ-7(h) and (i), and by the Court's Standing Order Regarding "Meet and Confer" Obligations Relating to Discovery Disputes.

In further response to your July 2, 2019 letter and July 24, 2019 email:

Harris did not, and does not, "confirm[] that **WIDS functionality** was Harris's **sole basis** for accusing consumer products of infringement." The Contentions themselves belie that characterization. *See, e.g.*, April 3, 2019 Contentions at 7 ("Huawei networks and products that support Wireless Intrusion Detection System *(WIDS) and/or other similar intrusion detection technology*, including: . . .") (emphasis added); Exhibit E at 52. As do our repeated objections to

---

[3] Harris's Amended Contentions of May 24, 2019, supplemented at your request, provided *additional evidence* of this aspect of Harris's infringement theories, showing the inclusion of the same or similar intrusion detection technology in consumer devices, including the identification and citation of "the Wi-Fi threat detection features of EMUI." *See, e.g.*, Amended Contentions at 7, 10, Amended Exhibit E at 45.

your repeated mischaracterization in this regard, including for example in my May 17, 2019 letter at page 2 and in my June 13, 2019 letter at page 2.

Your July 2, 2019 letter contains several bolded assertions that certain functionality is not present in certain accused products.  But of course, assertions by counsel do not relieve their clients of discovery obligations.  Harris is not required to simply take your word for it in conflict with our reasonable pre-suit investigation of publicly available materials.  Frankly, Huawei's repeated attempts to confine Harris's allegations to a particular implementation of WIDS (see, *e.g.*, your May 14, 2019 letter) or to exclude "similar intrusion detection technology" or "the Wi-Fi threat detection features of EMUI" from the scope of the case—while simultaneously refusing to produce relevant technical documents and code—are not suggestive of non-infringement.  Huawei's approach is more consistent with an attempt to avoid discovery based on a belief that Harris has not yet precisely named the existing infringing functionality under Huawei's private lexicon.

Further, in your email of July 24, 2019, you allege that a particular technical document, produced in isolation on July 22, 2019, should be taken to demonstrate that the accused functionality is not present in any of the accused devices.  While substantial portions of that document are not in English, it appears to be a bug report related to an older version of EMUI from early 2016.[4]  It identifies a number of source code files from the Android Manifest, presumably related to the accused functionality.

It should go without saying that Harris is not required to abandon its legitimate discovery efforts in response to counsel's assertions about a single isolated email concerning an old version of accused code.  But this document and the manner of its production do demonstrate a number of things.  For instance, that you can obtain and produce technical documents concerning Huawei's accused consumer products when it serves Huawei's purposes to do so.  Also, that Huawei developed the accused functionality and has made it available in at least some parts of the world.  Presumably Huawei could, would like to, did, or plans to make the feature available in the United States.

Finally, the produced document identifies source code files admittedly relevant to the accused functionality.  Examination of a Huawei Mate phone, purchased in the United States and running EMUI version 9.1.0, reveals that its Android Manifest includes some of the same, and similar, files as mentioned in the produced document.  The manifest includes at least the following elements of interest (emphasis added):

com.huawei.systemmanager_9.1.3.350_900103350_AndroidManifest.xml:

<service name="com.huawei.netassistant.wifisecure.WifiSecureService" process=":wifisecure" exported="false"/>
-<receiver name="com.***huawei.netassistant.wifisecure.WifiSecureReceiver***"

---

[4] As you know, the English portions of the document do not "confirm" the statements made in your email of July 24, 2019.  If Huawei wished Harris to evaluate your claims about the Chinese language content of the document in an expedited fashion, Huawei could easily have provided a translation.

```
process=":service" exported="false">
-<intent-filter><action name="com.huawei.systemmanager.action.wifisec.notification"/>
</intent-filter></receiver>
```

Harris is entitled to examine technical documents and source code for the accused phones, tablets, and laptops to determine for itself whether the accused products each practice each asserted claim.  Even if your statements about the import of the Chinese language portions of the one technical document produced on July 22, 2019 turned out to be true—those statements would not be dispositive with respect to products and source code existing after years of subsequent development, repair, and rollout of features.

For months Huawei has attempted to avoid production of technical documents and code for its phones, tablets, and laptops by arguing that the scope of discovery should be limited based on its interpretation of particular feature names included in our contentions.  But Huawei's discovery obligations exist regardless of whether Huawei refers to infringing functionality as part of the Wireless Intrusion Detection System, WiFi Threat Detection feature, or something else, or merely incorporates the infringing functionality into the ordinary operation of the device without giving it a name.  The Accused Products infringe because they perform the elements of the Asserted Claims.

Further examination and testing of the Huawei Mate phone mentioned above confirms that it identifies and reacts to induced MAC address collisions, including when operating as a WiFi hotspot.  This provides additional evidence that the accused consumer devices perform elements of the asserted claims—such as the elements of claims 36 and 40 of the '690 patent involving monitoring transmissions to detect collisions of a same MAC address and generating an alert.  This testing provides additional evidence of infringement consistent with Harris's reasonable pre-suit investigation and its contentions, including as they were originally served.  We have included this additional evidence in the contemplated additional amendments.  See attached Amended Contentions and charts, redlined to Harris's original contentions.

As explained in my June 20, 2019 letter, above, and in the motion that we will prepare, Harris's contentions (including as originally served) allege infringement, including performance of specific claim elements, by Huawei's phones, tablets, and laptops.  Huawei is obligated under the Federal and local rules to produce technical documentation and source code for those products.  That obligation persists "regardless of what additional materials may exist to disclose the functionality of the technology at issue." *Edward D. Ioli Trust*, 2012 WL 5830711 at *2-3.

Regards,

Corey Johanningmeier

cc: All Counsel of Record

Page 5